UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-CV-12249-DPW

| | |
|---|---|
| HARVARD REAL ESTATE–ALLSTON, INC.,<br>Plaintiff,<br><br>v.<br><br>KMART CORPORATION, KMART STORE 9424,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | MEMORANDUM IN SUPPORT OF<br>PLAINTIFF'S MOTION TO<br>REMAND TO THE BOSTON<br>MUNICIPAL COURT, BRIGHTON<br>DIVISION, AND FOR COSTS<br>AND ATTORNEY'S FEES |

Pursuant to 28 U.S.C. § 1447(c), the Plaintiff, Harvard Real Estate-Allston, Inc.

("Harvard"), by its attorneys, hereby submits this Memorandum in support of its Motion to

Remand to the Boston Municipal Court, Brighton Division, in this summary process commercial

eviction action which was improperly removed to this Court by the Defendant, Kmart

Corporation, Kmart Store 9424 ("Kmart").   Harvard also seeks its costs and attorney's fees

incurred in bringing this motion, pursuant to 28 U.S.C. § 1447(c).

## INTRODUCTION

In this commercial summary process eviction case brought in the state court, Kmart on

removal has failed to meet its burden of establishing that the amount in controversy exceeds the

sum of $75,000.00 exclusive of interests and costs, pursuant to 28 U.S.C. § 1332.  Therefore,

federal diversity jurisdiction is clearly lacking.  Moreover, this Court clearly lacks federal

question jurisdiction under 28 U.S.C. § 1331, because Kmart bases such alleged jurisdiction

solely upon the alleged res judicata effect of prior orders of the Bankruptcy Court, a wholly

inadequate basis to establish this Court's jurisdiction.  Furthermore, Kmart failed to inform this

Court that it has a prior pending action in an Adversary Proceeding in the United States

Bankruptcy Court, in which it has pled that the Bankruptcy Court has exclusive jurisdiction over

this matter.

Harvard commenced this summary process commercial eviction pursuant to M.G.L. c. 239, § 1 in the state court based upon Kmart's sale of groceries in the commercial premises in default of its commercial lease. Harvard's claim for possession is based upon Kmart's prohibited sale of groceries in the premises; Kmart's failure to timely cure its default; and, based upon the default, Harvard's election to treat as null and void a purported extension of the lease by Kmart.

As the Defendant has improperly removed this case from the state court, the Court should remand the case, and further, should award the Plaintiff costs and attorney's fees for bringing this motion, pursuant to 28 U.S.C. § 1447(c).

## STATEMENT OF FACTS

In or about August 2003, Harvard discovered that Kmart was selling groceries in the commercial premises located in the Brighton Mills Shopping Center in Brighton, owned by Harvard, in clear violation of its lease. The commercial lease contains strong prohibitions against selling groceries in the premises due to the fact that a grocery store in the shopping center is another tenant of Harvard. Moreover, Kmart did not have a role in drafting the lease since it purchased an assignment of the lease in 1999 from the original lessee, Caldor's Inc., upon Caldor's bankruptcy. As a result, on or about September 5, 2003, Harvard served Kmart with a Notice of Default informing Kmart that it was in default of the commercial lease by (among other things) its continued sale of groceries in the commercial premises.[1] (Copies of the Commercial Lease and the Notice of Default are attached hereto as Exhibit 1 and 2, respectively, and are

_____

[1] Although the Notice of Default alleged several other lease violations, the continued sale of groceries in the premises, and Harvard's election to treat Kmart's purported extension of the lease as null and void, resulted in the expiration of the lease.

2

hereby incorporated by reference).  Paragraph 2(B) of the Commercial Lease prohibits the sale of

groceries in the premises, as it states in pertinent part:

> *"[N]either the demised premises nor any part thereof will be used for the*
> *operation of (i) a so called supermarket or grocery store; (ii) a grocery store or*
> *department; (iii) a meat market or department, (iv) a produce market or*
> *department, (v) a milk and ice cream store; (vi) a bakery store or department;*
> *(vii) a delicatessen or department devoting more than 2000 square feet of floor*
> *area to the sale of food for consumption off the premises, or (viii) any*
> *combination of the foregoing.  Nothing hereinabove contained, however, shall be*
> *deemed to prohibit the demised premises from being used for the sale of candy,*
> *cookies and/or confections."*

(See attached Exhibit 1) (Emphasis supplied).  Under certain circumstances, the tenant may elect

to extend the original term of the Lease for an additional period; however, ***where the tenant is in***

***continuing default, Paragraph 4(B) unambiguously permits the landlord to elect to nullify any***

***purported extension of the Lease by the tenant:***

> *" Notwithstanding the foregoing provisions of this Section (B), if at the time of the*
> *exercise of any of the aforesaid elections to extend the original term of this lease,*
> *or at the time of the commencement of the aforesaid extension periods Tenant*
> *shall be in default of any of its obligations or agreements in this lease contained*
> *beyond any period herein provided for the curing of such default, then if Landlord*
> *shall so elect, the exercise of such election by Tenant shall be deemed null and*
> *void or the extension period shall not commence, as the case may be, and the term*
> *of the lease shall expire upon the date herein provided for such expiration absent*
> *the exercise of such election by Tenant."* [2]

---

[2]   A portion of Paragraph 4(B) provides: "The tenant shall have the right, at its election, to extend the original term of this lease for an additional period of five (5) years commencing upon the expiration of the original term provided that Tenant shall give Landlord notice of the exercise of its election at least twelve (12) months prior to the expiration of the original term." However, this provision is expressly overridden in the case where, because of the tenant's default, the landlord elected to declare the tenant's purported extension null and void.  Thus, although Kmart on or about January 23, 2003 purported to extend the term of the Lease by sending Harvard a notice of election to extend the Lease for an additional five (5) year term, because of its continuing default Harvard elected to declare the purported extension null and void, and as a result the lease expired.

3

When the tenant remains in default of the Lease, Paragraph 13(A) (ii) allows Harvard to

terminate the Lease:

> " . . . [I]f Tenant shall default in the performance or observance of any other
> obligation of any other agreement or condition on its part to be performed or
> observed and if Tenant shall fail to cure said default within thirty (30) days after
> receipt of notice of said default from Landlord (or if said default shall reasonably
> require longer than thirty (30) days to cure, if Tenant shall fail to commence to
> cure said default within a reasonable time after receipt of notice thereof and
> prosecute said default within a reasonable time after receipt of notice thereof and
> prosecute the curing of the same to completion with due diligence ). . . then in any
> of said cases and without waiving any claim for breach of agreement Landlord
> may send written notice to Tenant of the termination of the term of this lease, and,
> on the fifth day next following the date of the sending of the notice the term of this
> lease shall terminate, Tenant waiving all rights of redemption."

After the Notice of Default was sent, Kmart failed to cure its violation of the lease within

thirty (30) days or within a reasonable period thereafter as it continued to sell groceries in the

premises. Therefore, on April 23, 2004 Harvard sent Kmart a Notice to Vacate/Notice of

Termination.[3]  (A copy of the Notice to Vacate/Notice of Termination is attached hereto as

Exhibit 3 and incorporated herein).  The Notice to Vacate/Notice of Termination notified Kmart

that: (1) Kmart had failed to cure its default under the Lease, after notice; that (2) due to its

default Harvard was exercising its right under the lease to elect to declare null and void Kmart's

purported extension of the term of the lease, which expired on January 31, 2004; and that,

alternatively, (3) Harvard was exercising its election to terminate the Lease within thirty (30)

days of the Notice to Vacate/Notice of Termination, and Kmart was required to vacate the

premises within that period.  The Defendant remains in possession of the premises as a tenant at

---

[3]    The Notice to Vacate/Notice of Termination was delayed several months pending a
ruling by the Bankruptcy Court pertaining to Harvard's ability to proceed with an eviction in
state court.

sufferance only, as a result of Harvard's election to treat Kmart's purported extension as null and void, which caused the lease to expire.

On or about October 6, 2004, Harvard commenced a summary process eviction action pursuant to M.G.L. c. 239, § 1, in the Boston Municipal Court, Brighton Division, after it served a summary process summons and complaint upon Kmart. On October 25, 2004 the Defendant filed a Notice of Removal removing the case to this Court pursuant to 28 U.S.C. §1441. On or about November 2, 2004, the Defendant served an Answer and Counterclaims, alleging three (3) claims: (1) Declaratory Judgment (First Counterclaim); (2) "Violation of Kmart's Confirmed Plan of Reorganization and the Bankruptcy Court's Order Confirming Kmart's Plan of Reorganization" (Second Counterclaim); and (3) "Violation of the Bankruptcy Court's Order Allowing Lease Assumption" (Third Counterclaim).

Kmart's three counterclaims duplicate the claims it already has pending pursuant to Kmart's Complaint for Declaratory and Injunctive Relief brought in the United States Bankruptcy Court for the Northern District of Illinois, Adversary Proceeding No. 04A-02256, Kmart Corporation v. Harvard Real Estate-Allston, Inc.[4] (Copies of Kmart's Complaint for Declaratory and Injunctive Relief and Harvard's Answer thereto are attached hereto as Exhibit 4 and 5, respectively, and incorporated herein). In the currently ongoing Bankruptcy Court proceeding, Kmart has alleged substantially identical res judicata claims as the ones it alleges here. In addition, Kmart alleged that the Adversary Proceeding is a core matter under 28 U.S.C. §157(b)(2). Moreover, Kmart alleged that the Bankruptcy Court has exclusive jurisdiction over

---

[4] The Adversary Proceeding arises out of Kmart's Chapter 11 Bankruptcy Case No. 02-B02474 brought in the United States Bankruptcy Court, Northern District of Illinois, Easter Division.

its claims, even though it now alleges that the Federal District Court has jurisdiction over its

substantially identical claims.

On September 29, 2004, the Bankruptcy Court (Sonderby, J.) issued an oral ruling

denying Kmart's motion for a preliminary injunction, which sought to enjoin Harvard "from

evicting Kmart based upon defaults alleged, or that could have been alleged in the Assumption

Objection" and from allegedly "violating the discharge injunction and the Confirmation Order."

(See attached Exhibit 4, Prayer for Relief ¶¶ D and E). As the Bankruptcy Judge found, in

pertinent part:

> "[T]his court's jurisdiction over Count I, which seeks a declaration concerning the
> res judicata effect of the assumption order, is questionable at best [because,
> among other reasons], the res judicata effect of an order entered in the first case is
> usually for the judge presiding in the second case to decide, citing Pettibone 935
> F.2d at 123. Reorganized Kmart is certainly free to raise *res judicata as a defense
> in the state court.* After confirmation, the reorganized firm is like any other
> business that protects its interest by pleading appropriate defenses to actions, Id."

(See transcript of proceedings in the United States Bankruptcy Court, attached hereto as Exhibit

6 and incorporated herein, at page 12) (Emphasis supplied). The Bankruptcy Court's ruling

allowed Harvard to pursue the state court eviction action. However, at the same time Kmart's

substantially identical claims for declaratory judgment remain pending in the Bankruptcy Court.

## ARGUMENT

**I.  AS THE COURTS HAVE CONSISTENTLY EMPHASIZED, THE REMOVAL
STATUTE IS TO BE STRICTLY CONSTRUED, AND ANY DOUBTS SHOULD
BE RESOLVED IN FAVOR OF REMAND.**

As the United States Supreme Court has emphasized, the right to removal is statutory and

is to be strictly construed. Shamrock Oil and Gas Corp. v. Sheets, 313 U.S. 100, 108-109, 61

S.Ct. 868 (1941). The First Circuit has repeatedly stressed that the removal statutes "are to be

strictly construed against removal and all doubts should be resolved in favor of remand."
Coventry Sewage Associates v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995) ("a federal court
should rigorously enforce the jurisdictional limits that Congress chooses to set in diversity
cases"). "The removal statute does not in itself create jurisdiction. Indeed, removal statutes are
strictly construed, and defendants have the burden of showing the federal court's jurisdiction."
Gattegno v. Sprint Corp., 297 F.Supp.2d 372, 375 (D. Mass. 2003) and Murphy v. Newell
Operating Co., 245 F.Supp.2d 316, 318 (D. Mass. 2003), citing Danca v. Private Health Care
Systems, Inc., 185 F.3d 1, 4 (1st Cir. 1999).

Indeed, a restrictive interpretation of removal jurisdiction is "consistent with several
principles generally invoked with respect to jurisdictional issues: (1) the plaintiff is the 'master of
his complaint,' see Danca, 185 F.3d at 4; (2) the borders of federal jurisdiction are to be
watchfully policed, see Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001); and (3) the
removal statutes are to be strictly construed, see Danca, 185 F.3d at 4." Radlo v. Rhone-Poulenc,
S.A., 241 F.Supp.2d 61, 63 (D. Mass. 2002) (based upon all of these principles, the removing
defendant should have the burden of showing that there is "*legal certainty*" that the Plaintiff, if
successful, will recover more than the jurisdictional minimum) (Emphasis supplied).

Strictly construing the jurisdictional standard for amount in controversy, where Harvard
as the "master of [its] complaint" seeks only possession, not monetary damages, Kmart cannot
possibly demonstrate to a *legal certainty* that if Harvard prevails on its claim for possession
Kmart will suffer more than $75,000.00 in damages, exclusive of interests and costs.

Moreover, the underlying policies favoring remand include important considerations of federal-state comity. "'Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the [removal] statute has defined.'" <u>Shamrock Oil and Gas Corp.</u>, 313 U.S. at 109, 61 S.Ct. at 872 (citations omitted). "A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts." <u>University of South Alabama v. American Tobacco Co.</u>, 168 F.3d 405, 411 (11th Cir. 1999).

> "[I]t has been universally held that any removal attempt should be viewed with suspicion and that the case should be remanded if there is any doubt as to whether the federal court has subject matter jurisdiction . . . [T]he case law encourages federal judges to remand a case to state court – where it may always be heard – rather than risk erroneously exercising jurisdiction and having an appellate court vacate all of their decisions and dismiss the case several years down the road."

"Removal, Remand and Reimbursement Under 28 U.S.C. § 1447(c)", 87 Marq. L. Rev. 123 (2003). *See* 87 Marq. L. Rev. at 123. 6.[5]

## II.    MASSACHUSETTS HAS A STRONG INTEREST IN LITIGATION OF LANDLORD-TENANT ISSUES, TRADITIONALLY AN AREA OF STATE JURISDICTION, IN ITS STATE COURTS.

Reinforcing, and consistent with, these principles favoring remand to the state court, the

---

[5]    "If the propriety of removal is doubtful, the case is to be remanded . . . The basis for this rule is 'the inexpediency, if not unfairness, of exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined [on appeal] that the court lacked jurisdiction. <u>DeBoer v. State of South Dakota</u>, 1993 WL 603761 (D.S.D. 1993), citing Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction 2d §3721 at 218 (and cases cited therein). *See* 87 Marq. L. Rev. at 165, n. 6).

Court must consider the purposes underlying the state law that a plaintiff seeks to enforce.

"While determining the amount in controversy is a federal question requiring the application of

federal standards, the Court must look to state law to determine the nature and extent of the right

to be enforced in a diversity case." Levet Properties Partnership v. Bank One, N.A., 2003 WL

21715010, citing Horton v. Liberty Mutual Insurance Co., 367 U.S. 348, 352-353 (1961); Stewart

v. Tupperware Corp., 356 F.3d 335, 338 (1st Cir. 2004); Dickal 770 L.L.C. v. PRN Corp., 2002

WL 1285813 (N.D. Ill. 2002), citing 14B Wright, Federal Practice and Procedure §3702 (3d ed.

1998). Therefore, this Court should appropriately look to Massachusetts law, specifically the

Summary Process Statute, M.G.L. c. 239, § 1 et seq. to determine the nature and extent of the

right that Harvard seeks to enforce by terminating Kmart's tenancy.

Eviction under the Massachusetts Summary Process Statute is intended to be "a process

giving the landlord a quick remedy for possession." Daher & Chopp, 33A Massachusetts

Practice, Landlord and Tenant Law, § 16:1 at 257 (2000). Indeed, to promote this policy, the

Massachusetts Uniform Summary Process Rules which govern eviction actions in the state court

contain elaborate and strict timetables. Moreover, the Massachusetts Summary Process Statute

and Rules contemplate an early trial date in eviction cases; "time is of the essence" because "real

estate constitutes unique property." *See* Hodge v. Klug, 33 Mass. App. Ct. 746, 755, 604 N.E.2d

1329, 1335 (quoting Commentary to Massachusetts Uniform Summary Process Rule 1). As the

case law has repeatedly emphasized, the overriding purpose and "[t]he object of summary

process is to restore possession." Davis & O'Connor Co v. Shell Oil Co., 311 Mass. 401, 41

N.E.2d 287 (1942); G. Warshaw, Massachusetts Landlord-Tenant Law, §7:4 at 253 (2001) ("The

object of summary process is to restore possession to a person wrongfully excluded."), citing

Davis & O'Connor Co.

As is apparent from the face of Harvard's complaint, ***Harvard is seeking only possession of the premises. Harvard does not seek rent or damages in this action.*** Accordingly, Harvard has not claimed any amount owing in the "Account Annexed" portion of the complaint. Moreover, the Notice to Vacate/Notice of Termination makes no mention of any claim for rental payment or other damages. This is a classic action for possession only, so that consistent with the primary underlying purpose of the summary process statute, expeditious recovery of possession of the premises is the "nature and extent of the right to be enforced" by Harvard in this action.

Therefore, consistent with both the principles of strictly construing the remand statute, federal-state comity, and the policies underlying the Massachusetts Summary Process Statute, Harvard is entitled to a compelling presumption in favor of remand of this action for recovery of possession to the state court.

## III. KMART HAS FAILED TO SATISFY ITS BURDEN ON REMOVAL THAT HARVARD'S CLAIM FOR POSSESSION EXCEEDS THE $75,000.00 AMOUNT IN CONTROVERSY, WHERE HARVARD SEEKS ONLY POSSESSION OF THE PREMISES.

As Kmart admits in its Notice of Removal, "Harvard's complaint is silent as to the numerical value of the amount in controversy." (Notice of Removal at 3). Harvard's summary process complaint is "silent" as to amount in controversy for two key reasons: (1) Harvard seeks only possession of the premises, not rent or damages; (2) Harvard elected to nullify Kmart's purported extension of the Lease such that Kmart's lease expired as of January 31, 2004.

A.   KMART, AS THE REMOVING DEFENDANT, MUST DEMONSTRATE
FACTS SUFFICIENT TO SUSTAIN ITS BURDEN TO SHOW THAT
HARVARD'S CLAIM FOR POSSESSION INVOLVES MORE THAN THE
JURISDICTIONAL AMOUNT.

Consistent with the foregoing principles of strictly construing the removal statute, it is

well-settled that when the plaintiff has claimed damages of less than $75,000.00, the removing

defendant bears the burden of demonstrating that the minimum amount in controversy is met.

Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001), citing Department of Recreation and

Sports v. World Boxing Association, 94 F.2d 84, 88 (1st Cir. 1991); Coventry Sewage Associates

v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995). Although the First Circuit has not clearly

enunciated the quantum of proof that applies when the removing defendant argues that the

plaintiff has understated its claim for damages, Satterfield v. F.W. Webb, Inc., 334 F.Supp.2d 1,

3 (D. Me. 2004), one Court has reasoned that the defendant should have the burden of showing

that there is *legal certainty* that the Plaintiff, if successful, will recover more than the

jurisdictional minimum. Radlo v. Rhone-Poulenc, S.A., 241 F.Supp.2d 61, 63 (D. Mass. 2002).

In the present case, if Harvard prevails it will not recover more than the jurisdictional minimum

as it does not seek any monetary damages.

As the Court in Radlo reasoned, normally, when the Plaintiff alleges that its damages

exceed the jurisdictional minimum, "the sum claimed by the plaintiff controls if the claim is

apparently made in good faith." Radlo, 241 F. Supp.2d at 63, citing Spielman, 251 F.3d at 5

(quoting St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288, 58 S.Ct. 586, 82

L.Ed. 845 (1938)). The defendant then has the burden of showing that there is legal certainty

that the plaintiff will *not* recover damages above the jurisdictional threshold. Spielman, 251 F.3d

11

at 5. The Court in dicta argued that "a removing defendant [should be required] to show that

there is a *legal certainty* that the plaintiff's damages, if the claims succeed fully, would rise

above the threshold.":

> In addition to being consistent with the rule applicable to original complaints,
> applying the 'legal certainty' standard in removal cases would also be consistent
> with other principles generally invoked with respect to jurisdictional issues: (1)
> the plaintiff is the 'master of his complaint,' see <u>Danca v. Private Health Care
> Systems, Inc.</u>, 185 F.3d 1, 4 (1st Cir. 1999); (2) the borders of federal jurisdiction
> are to be watchfully policed, see <u>Spielman v. Genzyme Corp.</u>, 251 F.3d 1, 4 (1st
> Cir. 2001); and (3) the removal statutes are to be strictly construed, see <u>Danca</u>,
> 185 F.3d at 4."

<u>Radlo</u>, 241 F.Supp.2d at 64 (Emphasis supplied). *Accord* 46 Massachusetts Practice, Federal

Civil Practice, § 3.15.

As Harvard is the master of its complaint in which it seeks only possession, not monetary

damages, based on the expiration of Kmart's lease, and as the Court must strictly construe the

removal statute, Kmart cannot demonstrate to a *legal certainty* that either Harvard will recover,

or that Kmart will be subjected to, more than $75,000.00 exclusive of interest and costs.

    B.    FAR FROM ESTABLISHING THE JURISDICTIONAL MINIMUM, KMART
HAS ALLEGED ONLY SPECULATIVE AND/OR COMPLETELY INVENTED
DAMAGES.

Here, diversity jurisdiction is lacking as Kmart fails, both as a matter of fact and as a

matter of law, to satisfy its burden of showing that Harvard's claim for possession involves more

than the jurisdictional amount, i.e., in excess of the sum or value of $75,000.00, exclusive of

interest and costs, as required under 28 U.S.C. §1332.

Kmart makes vague allegations as to various costs that it purportedly might suffer "[i]f

Harvard is allowed to terminate the Lease . . . as evidenced by relocation costs, lost profits and

the difference between the fair rental value of the demised premises and the annual minimum rental payment obligation of Kmart to Harvard of $225,000." (Notice of Removal, at 4). However, the damages that Kmart asserts it will suffer are at best speculative, and at worst merely invented. First of all, Kmart's assertions are based upon the false factual assumption that the lease has not already terminated ("If Harvard is allowed to terminate the lease . . . "), or that if it has, Harvard is entitled to seek the balance of four years of rent payments, completely ignoring the fact that this action was brought for possession only. However, *the Lease expired by its own terms as Harvard exercised its election to treat as null and void Kmart's purported election to extend the lease term, such that the lease expired on January 31, 2004.* (See Exhibit 3, Notice to Vacate/Notice of Termination).[6] Ignoring the fact that the gravamen of the summary process complaint is that Kmart's lease expired on January 31, 2004, Kmart engages in mere speculation that if the lease did not terminate on that date, it would be subject to damages "in an amount exceeding the value of four years of future rent payments."[7]

Secondly, Kmart completely mischaracterizes the nature of this summary process action

---

[6] *As alternative grounds*, the summary process complaint states that in the event Harvard's election was deemed insufficient, Kmart was notified that if failed to cure its default and the lease would terminate after thirty (30) days of Kmart's receipt of the Notice of Termination.

[7] Kmart apparently depends upon Section 13(B) of the Lease, which provides that upon termination of the Lease, Kmart "will indemnify [Harvard] against all loss of rent and other payments provided [in the Lease] to be paid by [Kmart] to [Harvard] *between the time of termination and the expiration of the term of this lease*." (Emphasis supplied). Clearly, the basis for this provision is the landlord's early termination of the lease. This lease provision is inapplicable to the facts in this case, where the gravamen of Harvard's complaint is that the lease expired on January 31, 2004. In any case, the fact remains that Harvard has not made a claim for such liquidated damages, so there is no basis for Kmart to manufacture such claim out of thin air.

when it asserts: "The annual minimum rent payable by Kmart to Harvard under the Lease is

$225,000. Therefore, it is apparent on the face of Harvard's complaint that the amount in

controversy exceeds $75,000." (Notice of Removal at 4). However, the Summary Process

Complaint on its face obviously shows nothing of the kind. To the contrary, it is apparent on the

face of Harvard's complaint that this is an action for possession only, not damages. Harvard does

not claim any amount owing in the "Account Annexed" of the summary process complaint;

moreover, the Notice to Vacate/Notice of Termination itself makes no mention of any claim for

rental payments or other damages. As the plaintiff landlord, and as master of its own complaint,

Harvard is fully entitled to determine whether to bring a claim for possession only, or a claim for

possession and damages, in a summary process case in the Commonwealth of Massachusetts.

Clearly, Harvard has elected to take the former route in this action and claim possession only.

Next, Kmart makes another completely spurious and obviously unsupported claim, that

"Harvard is presently claiming that Kmart owes Harvard in excess of $75,000 in common area

maintenance charges under the Lease which, to the extent proven, would be recoverable by

Harvard upon any termination of the Lease." (Notice of Removal at 4) Neither the Notice to

Vacate/Notice of Termination, nor the statement of "Reasons" attached to the Summary Process

Summons and Complaint (which mirror the grounds stated in the Notice to Vacate/Notice of

Termination) demonstrate any such claim on the part of Harvard in this action which seeks only

possession of the premises. The summary process complaint and the Notice to Vacate/Notice of

Termination are what govern here, despite Kmart's attempt to confuse this issue with its own

invented claims.[8]

---

[8]     In the Bankruptcy Court there is a continuing dispute with regard to Kmart's failure
to pay common area maintenance charges to Harvard, but that has nothing to do with the present

Furthermore, as a matter of law, courts have clearly held that a removing defendant cannot use the amount of the annual minimum rent, or future rents, under a lease to establish jurisdiction, holding that these amounts are irrelevant to measuring the amount in controversy. For instance, in <u>Levet Properties Partnership v. Bank One, N.A.</u>, 2003 WL 217150010 (E.D. La. 2003), an action seeking only possession, where the annual rent under the lease was almost $250,000, the court found that the plaintiff was "entitled to at least the amount of monthly rent currently due under the lease, whether or not it terminates the Lease and obtains possession of the leased premises." It held that the defendant failed to prove the jurisdictional minimum by a preponderance of the evidence where it "only made the conclusory argument that the plaintiff stands to 'gain significantly' from having the property free to rent to other tenants"). Similarly, in this case Kmart offers nothing more than conclusory allegations along the same lines regarding the base rent under the lease and alleged below-market rents.

Indeed, in another commercial eviction case, <u>Dickal 770 L.L.C. v. PRN Corp.</u>, 2002 WL 1285813 (N.D. Ill. 2002), the court rejected the defendant's argument that future rent payments under the lease of more than even $1,000,000.00 could be used for removal purposes where the plaintiff sought only possession of the premises, and not rent. The court stressed that *"the method of determining the value of a lease must be consistent with . . . the fact that the primary remedy under [state law] is the recovery of possession . . . [and] the purpose of the [state's eviction statute* is] to provide summary proceedings with a quick resolution on the issue of

---

summary process eviction action for possession of the premises. If anything, it is a reason why Harvard would be precluded from collecting such damages in this summary process action, consistent with the fact that Harvard has not claimed them in this action but only seeks possession.

possession only . . . " (Emphasis supplied). Therefore, the court concluded that "the amount of future rents" was not pertinent, nor were speculative alleged damages of relocation costs and lost profits. In particular, "costs associated with relocation would be a collateral effect of eviction and thus should not be considered in determining the amount in controversy."

Accordingly, in this case, alleged future rents, lost profits, and possible relocation costs are *not* relevant in determining the amount in controversy. In fact, Kmart fails to provide any support whatsoever for its claim that it would suffer any damages based upon relocation costs, lost profits and/or the difference between the alleged "below market rent" and an alleged "fair market rent." Therefore, Kmart has failed to establish the required jurisdictional minimum amount in controversy of $75,000.00.

Courts have held that such collateral effects as relocation costs and lost profits are totally speculative items which cannot be used to satisfy the minimum amount in controversy. Levet Properties Partnership, 2003 WL 21715010 ("[O]nly the value of the right directly in issue in the particular suit, not the collateral effect of the judgment, may be considered in making up the necessary jurisdictional amount."), citing Burks v. Texas Co., 211 F.2d 443, 445 (5th Cir. 1954); Dickal 770 L.L.C., 2002 WL 1285813; Rubel-Jones Agency, Inc v. Jones, 165 F.Supp. 652, 655 (W.D. Mo. 1958) (in state unlawful detainer action, any contingent losses which might be suffered by either party, such as injury to business interests, could not be considered for amount in controversy purposes; "only the matter which is directly disputed is considered, and any contingent loss which may be suffered by either of the parties through the probative effect of an adverse judgment is not to be included."). *See also* Hairston v. Home Loan and Investment Bank, 814 F.Supp. 180 (D. Mass. 1993) (motion to remand granted where potential damage to

All of the damages that Kmart alleges are either completely unsupported, or worse, simply manufactured out of thin air. In any case, it is clear that this action is for possession only, based upon an expired lease due to Harvard's election to declare Kmart's purported extension of the lease as null and void. Therefore, Kmart has failed to establish the required jurisdictional minimum amount in controversy of $75,000.00.

## IV. KMART FAILS TO ESTABLISH FEDERAL QUESTION JURISDICTION BECAUSE THE UNITED STATES SUPREME COURT HAS HELD THAT REMOVAL JURISDICTION CANNOT BE BASED UPON THE ALLEGED *RES JUDICATA* EFFECT OF PRIOR BANKRUPTCY COURT ORDERS.

Not only has Kmart failed to establish federal diversity jurisdiction, its invocation of federal question jurisdiction is completely unfounded. The unanimous holding of the United States Supreme Court in Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 476, 118 S.Ct. 921, 925-926 (1998) decisively forecloses a defendant such as Kmart from asserting as a basis for removal jurisdiction the alleged res judicata (or alleged claim preclusion) effect of a prior federal judgment. *See* Metheny v. Becker, 352 F.3d 458, 460 (1st Cir. 2003), citing Rivet. Completely ignoring the controlling precedent of Rivet, Kmart asserts federal question jurisdiction in this case solely on the basis of an alleged res judicata and collateral estoppel effect of prior orders of the Bankruptcy Court. (See Kmart's Notice of Removal, at 4-6). Therefore, federal question jurisdiction is completely lacking to support removal in this case.

In Rivet, the defendant removed his state claims to federal district court, invoking federal question jurisdiction under 28 U.S.C. § 1441(b), based upon an affirmative defense of *res judicata* because, he alleged (as does Kmart here), prior Bankruptcy Court orders had extinguished the plaintiff's rights. The Court held that "claim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal under § 1441(b). Such a

17

defense is properly made in the state proceedings, and the state courts' disposition of it is subject to this Court's ultimate review." <u>Rivet</u>, 522 U.S. at 478, 118 S.Ct. at 926.

The instant case is controlled by the United States Supreme Court's holding in <u>Rivet</u>. Moreover, there is no suggestion in Harvard's well-pleaded complaint of any federal question because this is a classic case of eviction brought under a state law statute, the type of case that is heard every week in the trial courts of the Commonwealth. Therefore, remand to the state court is required based upon the lack of federal question jurisdiction.

Moreover, Kmart's Notice of Removal is extremely misleading because it completely fails to inform this Court that it has a pending complaint for declaratory and injunctive relief in an adversary proceeding against Harvard in the Bankruptcy Court for the Northern District of Illinois, in which Kmart alleges the same claims based upon res judicata that are substantially identical to the claims in favor of removal that it raises here. (See Exhibits 4 and 5 attached hereto). In the present action, Kmart relies upon the purported *res judicata* effect of prior orders of that Bankruptcy Court to assert the federal jurisdiction of this Court.[9]

Kmart has improperly invoked this Court's federal question jurisdiction (1) while concealing from this Court the fact that it has a declaratory judgment action pending in the Bankruptcy Court; and (2) by making an end run around the Bankruptcy Court, which has

---

[9] Furthermore, Kmart completely fails to mention the equally important fact that the United States Bankruptcy Court on September 29, 2004 <u>denied Kmart's request for injunctive relief to prevent Harvard from bringing the summary process eviction action in the state court</u>. The Bankruptcy Court noted that its "jurisdiction . . . concerning the res judicata effect of the assumption order, is questionable at best". Indeed, the United States Bankruptcy Court found that Kmart failed to substantiate any of its assertions that Harvard had acted improperly in terminating Kmart's tenancy. (See transcript of proceedings in the Bankruptcy Court, attached hereto as Exhibit 6 and incorporated herein).

refused to enjoin Harvard from bringing the state court commercial eviction action. As the

Bankruptcy Judge indicated, any res judicata *defense* of Kmart's should be for the state court to

determine. (See Exhibit 6 attached hereto, at 12).  For these reasons, this Court should decline to

exercise jurisdiction here and remand the case to the state court.

**V.    UPON REMAND, THE COURT SHOULD AWARD COSTS AND ATTORNEY'S FEES TO HARVARD INCURRED IN MAKING THIS MOTION, PURSUANT TO 28 U.S.C. § 1447(c).**

The Court should award of costs and attorney's fees to Harvard for making this Motion to

Remand, as permitted by the remand statute, because Kmart's purported basis for removal

jurisdiction is entirely unreasonable as a matter of law and unsupported by the facts, both as to

federal question jurisdiction and diversity jurisdiction.  The fee-shifting provision of 28 U.S.C. §

1447(c) has the "three related but distinct goals of: (1) discouraging removal except in cases

where federal subject matter jurisdiction clearly is present; (2) protecting the rights of plaintiffs

to choose the forum of the litigation; and (3) compensating plaintiffs for their costs of responding

to the jurisdictional arguments raised by defendants."  "Removal, Remand and Reimbursement

Under 28 U.S.C. § 1447(c)", 87 Marq. L. Rev. 123 (2003).[10]

## CONCLUSION

For all the foregoing reasons, the Plaintiff submits that the Defendant has improperly

removed this matter from the state court, and that this Court has neither federal question

jurisdiction nor diversity jurisdiction, based upon the Defendant's failure to satisfy the minimum

---

[10]    The author argues for the regular imposition of fees under the statute, using a
straightforward test: "[I]f the defendant is responsible for the ineffective removal, then he should
be forced to bear the costs of his actions–costs that are felt nor only by the plaintiff but also by
the entire judicial system, which suffers from the added delays and burdens of resolving the
jurisdictional issues raised in a myriad of cases brought before the court."

amount in controversy. Therefore, the Plaintiff respectfully requests that this Honorable Court remand this matter to the state court, and further that the Court award costs and reasonable attorney's fees to the Plaintiff in connection with this motion.

### REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1 (D), the Plaintiff hereby requests oral argument of this Motion.

> Respectfully submitted,
> Plaintiff,
> Harvard Real Estate Allston-Inc.
> By its attorneys,
>
> Frank A. Flynn, Esq. (BBO# 551668)
> Randolph C. English, Esq. (BBO# 628647)
> Downing & Flynn
> 85 Devonshire Street, Suite 1000
> Boston, MA 02109
> (617) 720-3535

DATED:    November 22, 2004

CERTIFICATE OF SERVICE

I, Frank A. Flynn, Esquire, Attorney for the Plaintiff, hereby certify that I have served the Defendant this date with a copy of this Memorandum in Support of Plaintiff's Motion to Remand to the Boston Municipal Court, Brighton Division, and for Costs and Attorney's Fees, Pursuant to 28 U.S.C. § 1447(c), by hand delivering a copy of same to its counsel of record as follows:

> William R. Moorman, Esq.
> Kathleen A. Rahbany, Esq.
> Craig and Macauley Professional Corporation
> Federal Reserve Plaza
> 600 Atlantic Avenue
> Boston, MA 02210

this 24th day of November, 2004.

Frank A. Flynn, Esq.