UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HARVARD REAL ESTATE-ALLSTON, INC.

Plaintiff,

v.

KMART CORPORATION,

Defendant.

Civil Action No. 04-12249-DPW

**REQUEST FOR ORAL ARGUMENT**

**OPPOSITION OF KMART CORPORATION TO PLAINTIFF'S MOTION TO REMAND TO THE BOSTON MUNICIPAL COURT, BRIGHTON DIVISION, AND FOR COSTS AND ATTORNEY'S FEES, PURSUANT TO 28 U.S.C. § 1447(c)**

Pursuant to Local Rule 7.1(B)(2) of the United States District Court for the District of Massachusetts, defendant Kmart Corporation ("Kmart") hereby opposes the Motion to Remand to the Boston Municipal Court, Brighton Division, and for Costs and Attorney's Fees Pursuant to 28 U.S.C. § 1447 (c) (the "Motion") filed by plaintiff, Harvard Real Estate-Allston, Inc. ("Harvard"). For the reasons set forth herein, the Motion should be denied in its entirety.

**PRELIMINARY STATEMENT**

Harvard misrepresents Kmart's bases for removing this proceeding from state court to this Court and misinterprets the law it cites in arguing that this Court lacks subject matter jurisdiction over this case.

In its Motion, Harvard disputes Kmart's assertion that the amount in controversy in this action exceeds $75,000, exclusive of interest and costs. Harvard further alleges that this Court lacks subject matter jurisdiction over this controversy because, by its

complaint, Harvard seeks possession of the demised premises but not monetary damages from Kmart. Harvard is wrong. The amount in controversy in this action far exceeds the $75,000 jurisdictional minimum, despite the fact that Harvard purports to seek only equitable, and not monetary, remedies.

In regard to this Court's federal question jurisdiction over this matter, Harvard contends in its Motion that the only basis alleged by Kmart for such jurisdiction is the *res judicata* or collateral estoppel effect of a prior federal judgment. Harvard completely fails to address the fact that this Court has federal question jurisdiction over this case because resolution of this controversy requires the interpretation of a federal statute, namely the Bankruptcy Code.

As Kmart demonstrated in its Notice of Removal and as it re-establishes in this opposition, this Court has subject matter jurisdiction over this proceeding. Therefore, this Court should deny Harvard's Motion in its entirety and retain jurisdiction over this case. For the same reasons, Harvard's attempts to recover costs and attorney's fees should be denied.

**STATEMENT OF FACTS**

Kmart is a Michigan corporation with its principal place of business in Troy, Michigan. Harvard is a Massachusetts corporation with a principal place of business in Cambridge, Massachusetts.

Kmart currently leases the premises (the "Premises") from Harvard pursuant to a commercial lease dated January 26, 1978, formerly between Paul A. Faraca and Marvin Shiller, Trustees, as landlord and Caldor, Inc. Mass.

("Caldor"), as predecessor in interest to Kmart as tenant.[1] The Premises are located within the shopping center commonly known as the Brighton Mills Shopping Center, located in Brighton, Massachusetts (the "Shopping Center"). Kmart assumed Caldor's lease in or about July 1999 and has since that date been operating a retail store at the Premises. The Premises consist of approximately 70,000 square feet of rentable space.

***Kmart's Bankruptcy Proceeding***

On January 22, 2002, Kmart and certain of its affiliates and subsidiaries filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois. Pursuant to the Lease, Kmart could, at its option, renew the Lease for an additional five year period by giving notice to Harvard one year in advance of the conclusion of the original Lease term. Lease, § 4(B). Accordingly, on or about January 24, 2003, Kmart notified Harvard that it was exercising its option to renew the Lease for the additional five year period provided therein. Harvard raised no objection to the exercise by Kmart of the extension option.

Thereafter, on March 28, 2003, Kmart notified Harvard, in connection with its plan of reorganization under the Bankruptcy Code, that Kmart intended to seek court authority under Section 365 of the Bankruptcy Code to assume the Lease. On April 4, 2003, Harvard filed an initial objection to Kmart's assumption

[1] A copy of the Lease is attached to Harvard's Motion as Exhibit 1.

of the Lease (the "Assumption Objection"). A copy of the Assumption Objection is attached to the accompanying Declaration of Kathleen A. Rahbany, dated December 13, 2004 (the "Rahbany Decl."), as Exhibit A-1 thereto. Harvard's objection resulted in a contested matter (the "Assumption Proceeding") before the Bankruptcy Court.

In its Assumption Objection, Harvard claimed that Kmart could not assume the Lease because it was purportedly in default under the Lease as of January 24, 2003 and that accordingly, Kmart's exercise on that date of its option to extend the Lease for five years beyond January 31, 2004 was ineffective. Harvard further alleged that the Lease had terminated prior to Kmart's filing for bankruptcy so that there was no lease left for Kmart to assume as part of its bankruptcy reorganization. Kmart and Harvard conducted discovery in the Assumption Proceeding between July and September 2003, including depositions of both parties' witnesses, document production and written discovery exchanges.

***<u>Harvard Raises the Grocery Store Objection</u>***

On August 29, 2003, Kmart filed an opposition to Harvard's Assumption Objection (the "Opposition"). A copy of the Opposition is attached to the Rahbany Decl. as Exhibit A-2. In the Opposition, Kmart argued (i) that under Section 365 of the Bankruptcy Code, it could assume the Lease so long as it cured any defaults under the Lease, and (ii) that it validly exercised its right to extend the term of the Lease. On or about September 5, 2003, during the pendency of the

Assumption Proceeding, Harvard sent Kmart a notice of default based on Kmart's alleged sale of certain "grocery items" in purported violation of Section 2(B) of the Lease. Section 2(B) of the Lease provides that:

> ...neither the demised premises nor any part thereof will be used for the operation of (i) a so-called supermarket or self-service grocery store; (ii) a grocery store or department; (iii) a meat market or department; (iv) a produce market or department; (v) a milk and ice cream store or department; (vi) a bakery store or department; (vii) a delicatessen or department devoting more than 2,000 square feet of floor area to the sale of food for consumption off the premises; or (viii) any combination of the foregoing. Nothing hereinabove contained, however, shall be deemed to prohibit the demised premises from being used for the sale of candy, cookies and/or confections...

(the "Grocery Clause").

On September 30, 2003, Harvard filed a reply to the Opposition (the "Reply"). A copy of the Reply is attached to the Rahbany Decl. as Exhibit B. In the Reply, Harvard alleged additional defaults that it had not previously raised in the Assumption Objection, including an allegation that Kmart had violated the Grocery Clause of the Lease. After receiving the September 5, 2003 notice of default, out of an abundance of caution, Kmart began the process of reducing the variety of food offered in the store. By December 2003, Kmart had completed its program of permanently and substantially reducing the variety of food items available for sale in the store.

***<u>The Assumption Objection Is Dismissed With Prejudice</u>***

Harvard's Assumption Objection was set for an evidentiary hearing before the Bankruptcy Court on March 18-19, 2004. However, on January 29, 2004,

Harvard filed a Withdrawal of Assumption Objection (the "Withdrawal"). A copy of the Withdrawal is attached to the Rahbany Decl. as Exhibit C. The Withdrawal states: "[Harvard], having filed with the [Bankruptcy] Court on April 4, 2003 the 'Objection of [Harvard] To [the Plan of Reorganization]...And Assumption Objection of [Harvard]...', hereby WITHDRAWS the Assumption Objection. This Withdrawal does not constitute a waiver of Harvard's Cure Claim filed June 20, 2003, as the same may be amended."

Kmart was concerned that the Withdrawal, which arrived without notice or explanation after so much energy and cost had been devoted to litigating the assumption of the Lease in the Bankruptcy Court, evidenced an intent by Harvard to seek a different, and presumably in Harvard's opinion, more favorable forum to adjudicate the very same matters it had raised in the Bankruptcy Court. Accordingly, on February 5, 2004, Kmart filed a Motion to Dismiss with Prejudice Harvard's Assumption Objection, in which Kmart argued that any dismissal of Harvard's Assumption Objection should be with prejudice. A copy of Kmart's Motion to Dismiss Harvard's Assumption Objection is attached to the Rahbany Decl. as Exhibit D.

On April 2, 2004, the Bankruptcy Court granted Kmart's Motion to Dismiss, issued an order dismissing Harvard's Assumption Objection with prejudice, and allowed Kmart to assume the Lease (the "Assumption Order"). A copy of the Assumption Order is attached to the Rahbany Decl. as Exhibit E. In the Assumption Order, the Bankruptcy Court ordered "that (i) the Motion to

Dismiss is granted as set forth herein, (ii) the [Assumption] Objection is dismissed with prejudice as of the [effective date of the Plan of Reorganization], May 6, 2003, (the "Effective Date"), and (iii) Kmart is deemed to have assumed the Lease as of the Effective Date."

***Harvard Notifies Kmart of Its Intention to Terminate The Lease***

Just weeks after entry of the Assumption Order, on or about April 23, 2004, Harvard issued to Kmart a notice to vacate/notice of termination (the "Vacate Notice"). A copy of the Vacate Notice is attached to the Rahbany Decl. as Exhibit F. The Vacate Notice alleged two grounds for terminating Kmart's rights under the Lease. First, the Vacate Notice asserted that Kmart's rights under the Lease had terminated on February 1, 2004 (the first day of the new term of the Lease) because Kmart was allegedly in violation of the Grocery Clause on and after September 5, 2003. Second, the Vacate Notice asserted that Kmart's election on January 24, 2003 to renew the Lease was "null and void." Harvard then moved the Bankruptcy Court to "confirm its authority to pursue its state law remedies" with respect to Kmart's alleged post-Effective Date Lease defaults. The Bankruptcy Court denied Harvard's motion without prejudice. A copy of Harvard's Motion to Confirm is attached to the Rahbany Decl. as Exhibit G, and a copy of the Bankruptcy Court's order denying Harvard's Motion to Confirm is attached to the Rahbany Decl. as Exhibit H.

Shortly thereafter, Kmart commenced the Adversary Proceeding, in which Kmart initially sought a preliminary injunction to prevent Harvard from

terminating the Lease.[2] Without deciding the ultimate issue, on September 29, 2004, the Bankruptcy Court issued an order denying Kmart's motion for a preliminary injunction. However, the Court clearly stated that Kmart was free to raise in another court the *res judicata* effect of the April 2, 2004 dismissal of the Assumption Objection if and when Harvard sought to evict Kmart:

> Reorganized Kmart is certainly free to raise res judicata as a defense in state court. After confirmation, the reorganized firm is like any other business that protects its interest by pleading appropriate defenses to actions...

See Bankruptcy Court Transcript at 12, ll. 17-21, a copy of which is attached to the Rahbany Decl. as Exhibit I.

On or about October 18, 2004, Harvard commenced a summary process proceeding against Kmart in the Commonwealth of Massachusetts Trial Court, Boston Municipal Court Department, Brighton Division, County of Suffolk, styled *Harvard Real Estate-Allston, Inc. v. Kmart Corporation, Kmart Store 9424,* docket number 200408SU000065 (the "State Court Action"). In the State Court Action, Harvard (i) alleged that Kmart is in default of the Lease because of purported violations of the Grocery Clause, and (ii) sought to evict Kmart from the Premises.

---

[2] Harvard seems to insinuate that since Kmart alleged that the Bankruptcy Court had exclusive jurisdiction over the issues presented in the Adversary Proceeding, that Kmart should be barred from invoking this Court's jurisdiction to hear this Action. The Adversary Proceeding was brought in response to the eviction notice Kmart received just weeks after the Bankruptcy Court had dismissed Harvard's Assumption Objection with prejudice. Initially, Kmart sought a preliminary injunction preventing Harvard from evicting it from the Premises. At the time, Kmart believed the most appropriate forum for seeking relief was from the very court whose order Harvard was violating. The Bankruptcy Court, however, deemed that its post-confirmation jurisdiction was limited and denied preliminary relief, in effect stating that issues related to Harvard's efforts to evict Kmart in Massachusetts should be determined in the Massachusetts courts.

Section 13(B) of the Lease provides that, upon termination of the Lease, Kmart

> ...will indemnify [Harvard] against all loss of rent and other payments provided [in the Lease] to be paid by [Kmart] to [Harvard] between the time of termination and the expiration of the term of this lease. It is understood and agreed that at the time of the termination or at any time thereafter [Harvard] may rent the demised premises and for a term which may expire after the expiration of the term of this lease, without releasing [Kmart] from any liability whatsoever; that [Kmart] shall be liable for any expenses incurred by [Harvard] in connection with obtaining possession of the demised premised [sic] and in connection with any reletting, including, but without limitation, reasonable remodeling expenses, reasonable attorneys' fees and reasonable brokers' fees, and that any monies collected from any reletting shall be applied first to the foregoing expenses and then to payment of rent and all other payments due from [Kmart] to [Harvard]. However, [Harvard] is to be entitled to and may sue for each month['s] payment as provided herein the day after the same remains unpaid, or at any later time, at [Harvard's] option, as if no termination had occurred...

**Amount in Controversy Satisfied by Damages**
**Potentially Recoverable by Harvard**

The term of the Lease was extended for a five year period beginning February 1, 2004 and ending January 31, 2009. By its complaint, Harvard states that the Lease was terminated by default thirty days after Harvard issued its April 23, 2004 Vacate Notice. If the Lease was so terminated, Harvard would be entitled to assert a damages claim against Kmart in an amount exceeding the value of four years of future rent payments. The present adjusted annual minimum rent payable by Kmart to Harvard under the Lease for the period February 1, 2004 through January 31, 2005 is $315,756. See Affidavit of S. Jeffrey Stollenwerck, dated December 13, 2004 ("Stollenwerck Affidavit") at ¶ 6.

Additionally, on October 25, 2004, when Kmart removed this proceeding to this Court, Harvard claimed that Kmart owed it $113,687.47 in Common Area Maintenance

charges.[3] See Affidavit of Anne O'Neill, dated December 13, 2004 ("O'Neill Affidavit) at ¶ 4. Of this amount, $38,367.75 is part of the "cure claim" brought by Harvard in Kmart's bankruptcy proceeding and therefore is subject to the jurisdiction of the Bankruptcy Court. See O'Neill Affidavit at ¶ 4. To the extent Harvard could prove Kmart owed these amounts, they would be recoverable by Harvard upon any termination of the Lease.

**Amount in Controversy Satisfied by Value of Leasehold Rights being Litigated**

Perhaps most importantly, the rent payable by Kmart under the Lease is substantially below market rental rates. See Stollenwerck Affidavit at ¶ 10. Assuming that Kmart continues to exercise its options under the Lease, it has the right to remain at the demised premises at least twenty-four (24) more years through January 31, 2029. If Harvard is allowed to terminate the Lease, Kmart will suffer damages well in excess of $75,000, as evidenced by the difference between the present fair rental value of the demised premises and the rental payment obligation of Kmart to Harvard. Conversely, although Kmart denies that Harvard has the right to terminate the Lease, the inability of Harvard to terminate the Lease and recover the demised premises will cause Harvard in excess of $75,000 in lost benefits as a result of, among other things, the substantial difference between the current market rent and the rent payable by Kmart. In fact, in or about August of 2004, Harvard offered to pay Kmart cash and other consideration

[3] After October 25, 2004, Kmart remitted to Harvard payments totaling $26,587.30 towards these charges.

valued by Harvard to be worth $4,500,000 in exchange for Kmart's voluntary termination of the Lease. See Stollenwerck Affidavit at ¶ 9.

On October 25, 2004, Kmart removed the State Court Action to this Court and filed its Answer and Counterclaims.[4] On November 24, 2004, Harvard filed its Motion seeking remand of this case to state court.

**ARGUMENT**

Kmart properly removed this case to this Court pursuant to 28 U.S.C. § 1441 because this Court has both diversity jurisdiction under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331 over the dispute.

**Diversity Jurisdiction**.

This Court has "original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between...citizens of different States." 28 U.S.C. § 1332(a).

Harvard does not dispute that diversity of citizenship exists between it and Kmart. Harvard does contest, though, that the amount in controversy exceeds $75,000, exclusive of interest and costs.

**Harvard's Assertion that it Seeks Only Equitable Relief is not Determinative of the "Amount In Controversy" Issue**

Harvard claims that the amount in controversy is $0 because it does not seek monetary damages from Kmart in this proceeding. However, "[c]ourts measure the amount in controversy based on a reasonable reading of the value of the rights being

[4] On November 22, 2004, Kmart filed an Amended Answer in which it included additional affirmative defenses.

litigated at the time of removal." 16 Moore's Federal Practice 3d ¶ 107.14[2][g][i]. "[D]etermination of the value of the matter in controversy for purposes of federal jurisdiction is a federal question to be decided under federal standards, although the federal courts must, of course, look to state law to determine the nature and extent of the right to be enforced in a diversity case." *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352-53 (1961). "The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is some way shown that the amount stated in the complaint is not claimed "in good faith." *Id.* at 353.

Here, Harvard's complaint is silent as to the value of the right it seeks to enforce. It is clear from the complaint itself, however, that Harvard is seeking to recover the leased premises. By its Motion, Harvard concludes that, since it is only seeking equitable relief (repossession of the leased premises and termination of the Lease), but not money damages, there is no amount in controversy. Pursuant to Harvard's logic, federal district courts would be barred from hearing any diversity case where only equitable relief is sought by the plaintiff. However, in accordance with *Horton*, if the value of the right which Harvard seeks to enforce exceeds the jurisdictional minimum, then this Court's subject matter jurisdiction may be properly invoked, despite the fact that Harvard chooses not to seek monetary damages. *See Lee-Wilson, Inc. v. General Electric Co.*, 222 F.2d 850, 852 (1st Cir. 1955) (where plaintiff seeks equitable relief, "the amount in controversy is the value of [plaintiff's] asserted right against the defendant for which plaintiff [seeks] protection by injunction"); *Food Fair Stores, Inc. v. Food Fair, Inc.*, 177 F.2d 177, 183 (1st Cir. 1949) (federal diversity jurisdiction depends upon the

"value of the object to be gained" in plaintiff's suit for injunctive relief); *Textron, Inc. v. American Woolen, Co.*, 122 F.Supp. 305, 308 (Mass. 1954) (to find federal diversity jurisdiction, "the matter in dispute must be money, or some right, the value of which in money can be calculated and ascertained"); *Libby, McNeill & Libby v. Libby*, 103 F.Supp. 968, 969 (Mass. 1952) (even where plaintiff waives any claim for damages, the court determines the amount in controversy by looking at "the value of the thing involved...and the value of the thing involved is not the amount that is sought to be recovered but the value of thing about which the controversy exists").

**The Value of the Leasehold Rights is**
**Determinative of the "Amount in Controversy" Issue**

Harvard seeks to recover possession of the leased premises. Therefore, the value of the leasehold rights at issue must be measured in order to properly determine the "amount in controversy." As set forth in Kmart's notice of removal, the value of the Lease and the demised premises to Harvard is in excess of $75,000, exclusive of interest and costs: the current minimum annual rent owing by Kmart to Harvard is $315,756, see Stollenwerck Affidavit at ¶ 6; and because the Lease rate is substantially below current market rates, Harvard's inability to terminate the Lease will cause it to suffer in excess of $75,000 in lost benefits that it would otherwise be able to enjoy by re-letting the premises to a new tenant at a market rate, see Stollenwerck Affidavit at ¶ 10. Therefore, the amount in controversy, measured by the nature and extent of the rights that Harvard seeks to enforce, is far in excess of the $75,000 jurisdictional minimum. The fact that Harvard has offered Kmart consideration valued by Harvard at $4,500,000 in

exchange for Kmart's voluntary termination of the Lease only lends support to the fact that the $75,000 minimum amount in controversy test is satisfied.

Harvard relies on unreported decisions for the proposition that rents "are irrelevant to measuring the amount in controversy." However, the decision in *A. Levet Properties Partnership* actually supports Kmart's position. A copy of the *A. Levet Properties Partnership* decision is attached to the Rahbany Decl. as Exhibit L. In that case, the court stated that if the landlord "were able to re-lease the premises to another tenant at a monthly rental amount greater than it would receive from [the evicted tenant], then the value of possession could be measured as the difference between the rent received from the new tenant and the rent [the landlord] would have received from [the evicted tenant]." *A. Levet Properties Partnership v. Bank One, N.A.*, 2003 U.S. Dist. LEXIS 12777, *8 (E.D. La. 2003). Alternatively, the value of the right of repossession may be measured by the amount of rent that the evicting landlord "could collect from a new tenant" in the event that the current tenant was unable to pay rent under the lease. *Id.* at *8-9. Here, the current market lease rate for the demised premises, on an annualized basis, is in excess of $750,000. See Stollenwerck Affidavit at ¶ 7. Therefore, if Harvard were to re-lease the premises, it could gain an annual benefit of more than $400,000 (the annualized market rate minus the adjusted minimum annual rent payment of $315,7560 under the Lease for the year 2004). Using the tests set forth in *A. Levet Properties Partnership*, the amount in controversy clearly exceeds $75,000, exclusive of interest and costs.

Likewise, in its citation to *Dickal 770 L.L.C.*, Harvard completely omits the court's central determination that, in using a lease to calculate the amount in controversy in a summary process proceeding, the lease has value that is included in the amount in controversy "to the extent that the rent specified in the lease is below market value." *Dickal 770 L.L.C. v. PRN Corporation*, 2002 U.S.Dist. LEXIS 10478, *9 (N.D. Ill. 2002). A copy of the *Dickal* decision is attached to the Rahbany Decl. as Exhibit M. Where the removing defendant shows that a lease is below market value, then "[t]he value to the landlord in terminating [the Lease] would be that it could re-let the premises for a higher rent. The value to the tenant in keeping such a lease would be in paying a lower rent than it would otherwise." *Id.* at n3. From any perspective, the amount in controversy in this matter far exceeds $75,000, exclusive of interest and costs. This Court accordingly has jurisdiction over this matter and Harvard's Motion should be denied.

<u>**Damages Potentially Recoverable if Harvard Prevails Exceed $75,000**</u>

In addition, Harvard has asserted claims against Kmart under the Lease aggregating $113,687.47 in past due Common Area Maintenance charges[5]. See O'Neill Affidavit at ¶ 4. Of this amount $38,367.75 is part of the "cure claim" brought by Harvard in Kmart's bankruptcy proceeding and therefore is subject to the jurisdiction of the Bankruptcy Court. See O'Neill Affidavit at ¶ 4. To the extent Harvard could prove Kmart owed these amounts, they would be recoverable by Harvard upon any termination of the Lease. Furthermore, pursuant to the terms of the Lease, if Harvard

[5] After October 25, 2004, Kmart remitted to Harvard payments totaling $26,587.30 towards these charges.

was able to terminate the Lease because of Kmart's alleged default, Harvard would be entitled to assert a damages claim against Kmart in an amount exceeding the value of four years of future rent payments. The present adjusted annual minimum rent payable by Kmart to Harvard under the Lease for the period February 1, 2004 through January 31, 2005 is $315,756. See Stollenwerck Affidavit at ¶ 6.

Because of the damages that Harvard had asserted at the time that Kmart removed this Action to this Court, and because of further damages that it may attempt to assert, the jurisdictional amount in controversy exceeds the $75,000 minimum.

**Federal Question Jurisdiction**.

This Court has "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. "It is well settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Chicago v. International College of Surgeons*, 522 U.S. 156, 163 (1997) (citation omitted).

In accordance with the "well-pleaded complaint" rule, this Court must, however, look behind Harvard's characterization of the complaint to ascertain whether a federal question lies at the heart of this matter. *Federated Dept. Stores v. Moitie*, 452 U.S. 394, 397 n.2 (1981) ("[C]ourts 'will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum...the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization.'" (citation omitted)).

Despite Harvard's declaration that this is a case dependent solely on state law, whether Harvard may be granted the relief it seeks under its complaint depends on the resolution of significant federal law questions. When considered in light of the "well-pleaded complaint rule," these federal law issues are raised on the face of Harvard's complaint. In its complaint, Harvard alleges that Kmart was in default under the Lease at the time that the Bankruptcy Court authorized Kmart to assume the Lease. Harvard also alleges that Kmart's option to extend the term of the Lease was null and void prior to the date the Bankruptcy Court authorized assumption of the Lease. Harvard's cause of action necessarily relies on a favorable interpretation of federal bankruptcy law (i.e. that, notwithstanding the Bankruptcy Court's entry of an order allowing Kmart to assume the Lease under 11 U.S.C. § 365, (i) the Lease was somehow terminated prior to its assumption and (ii) that after assumption of the Lease, Harvard can assert, as defaults, the same defaults that purportedly existed prior to the assumption of the Lease). As such, this is a controversy arising under the laws of the United States properly removed to this Court. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983) ("Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court...cases in which a well-pleaded complaint establishes...that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.").

Harvard obscures the fact that this Court has federal question jurisdiction over this matter by misrepresenting Kmart's bases for removing this case to federal court: Harvard claims that Kmart relies on the doctrine of either *res judicata* or collateral

estoppel. Harvard cites to the cases of *Rivet v. Regions Bank*, 522 U.S. 470 (1998) and *Metheny v. Becker*, 352 F.3d 458 (1st Cir. 2003) in support of its contention that federal question jurisdiction does not lie when the basis is merely the preclusive effect of a federal court order. However, as *Rivet* makes clear, "'a plaintiff may not defeat removal by omitting to plead necessary federal questions.'" *Rivet*, 522 U.S. at 475 (citation omitted). *See Metheny*, 352 F.3d at 461 (removal proper if "resolution of the claim 'necessarily' requires resolution of [a substantial] federal issue").

Kmart acknowledges that it has raised *res judicata* and collateral estoppel issues. The inquiry, however, does not end there. In order to pursue its eviction action, Harvard must necessarily still litigate the effect under federal bankruptcy law of Kmart's assumption of the Lease under 11 U.S.C. § 365 on both (i) the extension of the term of the Lease and (ii) on defaults that allegedly existed prior to the assumption of the Lease (under 11 U.S.C. § 365(b)(1), in order to have assumed the Lease, Kmart must have either cured or be deemed to have cured existing defaults). These issues have not yet been adjudicated, and are exclusively federal Bankruptcy Code issues that should not be decided by a state court. By bringing this proceeding under the Massachusetts Summary Process Statute, Harvard seeks to obtain a speedy remedy based on an evaluation of allegations that, on their surface, may normally be cause for eviction under routine circumstances. However, this case does not present the ordinary state law eviction scenario: to prove what it alleges are grounds for eviction, Harvard must show that the Bankruptcy Code has not rendered those allegations moot. Therefore, because matters of federal law are central to this dispute, this case is properly before

this Court pursuant to this Court's federal question jurisdiction. *See San Juan Legal Services, Inc. v. Legal Services Corp.*, 655 F.2d 434, 437-38 (1st Cir. 1981) (removal proper where plaintiff's "claim depends upon the construction given [federal] law, and the [federal law] questions are neither 'wholly insubstantial' nor 'obviously frivolous'").

Because Harvard's Motion should be denied and because Kmart properly removed this proceeding from state court to this Court, Harvard is not entitled to an award of costs and attorney's fees under 28 U.S.C. § 1447(c). Even if this Court should allow Harvard's motion to remand this proceeding, it should not award Harvard its costs and attorney's fees under 28 U.S.C. § 1447(c) because Kmart removed this case in good faith and presented a substantial jurisdictional question. *See Gorman v. Abbott Laboratories*, 629 F.Supp. 1196, 1204 (R.I. 1986) ("Federal courts have shown commendable restraint as to the assessment of...costs where the nonremovability of the case was not obvious,...where the removing defendant acted in good faith,...or where a substantial jurisdictional question was posited..." (internal citations omitted)); Karpowicz v. Blue Cross & Blue Shield, 1996 U.S. Dist. LEXIS 13541, *19 (Mass. 1996) (citing *Gorman* with approval).

**CONCLUSION**

This Court has subject matter jurisdiction over this case based on both diversity

and federal question jurisdiction. Accordingly, Harvard's Motion should be denied in its entirety.

December 16, 2004

KMART CORPORATION
By its attorneys,

/s/ William R. Moorman

William R. Moorman, Jr. (BBO# 548593)
Joseph J. Koltun (BBO# 641117)
Kathleen A. Rahbany (BBO# 654322)
Craig and Macauley
Professional Corporation
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
Phone: (617) 367-9500
Fax: (617) 742-1788