FIRE AND OTHER CASUALTY

10. (A) If the demised premises, or any part thereof, shall be damaged or destroyed by fire or other casualty either required to be insured by Tenant pursuant to Section (C) of this Article 10 or actually insured by Tenant (whether or not the same is so required to be insured), then Tenant shall promptly thereafter repair or restore the demised premises to substantially the same condition they were in immediately prior to the casualty. In the event of any such damage or destruction by fire or other casualty, the insurance proceeds or damages recovered on account of any damage or destruction shall be made available for the payment of the cost of the aforesaid repair or restoration. If said insurance proceeds plus the amount of any "deductible" applicable to said damage or destruction shall be less than Twenty-Five Thousand Dollars ($25,000.00) the same shall be paid over to Tenant, unless the holder of a first mortgage upon the demised premises or the property of which the demised premises are a part shall object, in which event said insurance proceeds shall be held in escrow as hereinafter in this Section (A) provided. If said insurance proceeds plus the amount of any "deductible" applicable to said damage or destruction shall be greater than Twenty-Five Thousand Dollars ($25,000.00), the same shall be posited in escrow with instructions to the escrow holder that the escrow holder shall disburse the same to Tenant as the work of repair or restoration progresses upon certificates of the architect or engineer supervising the repair or restoration that the disbursements then requested, plus all previous disbursements made from said insurance proceeds, plus the amount of said "deductible", do not exceed the costs of the repair or restoration already completed and paid for and that the balance in the escrow fund is sufficient to pay for the estimated cost of completing the repair and restoration. The escrow holder shall be the institutional lender holding a first mortgage upon the demised premises or the property of which the demised premises are a part if there shall be an institutional lender holding such first mortgage and if such institutional lender shall be willing to accept said escrow; otherwise the escrow holder shall be any bank mutually agreeable to Landlord and Tenant. If the insurance proceeds shall be less than the cost of repair or restoration, Tenant shall pay the excess cost. If the insurance proceeds shall be greater than the cost of repair or restoration, the excess shall belong to Tenant. Minimum rent and other payments required to be

-21-

made by Tenant under this lease shall not be suspended or abated on account of any damage or destruction by fire or other casualty except as provided in Section (B) of this Article in the event of a termination of the term of this lease.

(B) Notwithstanding anything in this Article to the contrary, it is agreed and understood that (i) if during the second annual period preceding the expiration of the term of this lease the demised premises shall be damaged or destroyed by fire or other casualty to the extent of twenty-five per cent (25%) or more of their insurable value, or (ii) if during the annual period preceding the expiration of the term of this lease the demised premises shall be damaged or destroyed by fire or other casualty to the extent of twenty per cent (20%) or more of their insurable value, either Landlord or Tenant may, if either shall so elect, terminate the term of this lease by notice to the other within thirty (30) days after such damage or destruction. If Landlord shall give such notice of termination at a time when Tenant shall have the right to exercise an election to extend the term of this lease, and if within fifteen (15) days after Tenant shall receive such notice of termination from Landlord Tenant shall exercise said election, then such notice of termination shall become void and of no force or effect. In the event of any termination of the term of this lease pursuant to the provisions of this Section, the termination shall become effective on the twentieth (20th) day after the giving of the notice of termination, rent and other charges shall be apportioned and adjusted as of the time of termination, Tenant shall not be obligated to repair or restore any damage or destruction caused by fire or other casualty and the insurance proceeds shall belong to Landlord; and Tenant shall pay to Landlord an amount equal to the lesser of (i) the amount of Tenant's then current deductible carried on insurance required to be maintained by Tenant pursuant to the provisions of Section (C) of this Article 10 and (ii) the estimated cost of repairing or restoring any such damage or destruction.

-22-

(C) Tenant agrees that it will maintain at all times during the term of this lease with respect to the demised premises insurance against loss or damage by fire, the so-called extended coverage casualties, vandalism and malicious mischief and sprinkler leakage (if there shall be a sprinkler system), the casualties covered by a so-called "DIC" or "all risk" endorsement and such other casualties as may be reasonably requested by any institutional lender holding a first mortgage upon the property of which the demised premises are a part. Notwithstanding the foregoing provisions hereof, if at any time a so-called "DIC" or "all risk" endorsement shall no longer be available at a reasonable cost, Tenant shall not be required to carry insurance against the casualties which are covered thereby unless Landlord shall reimburse Tenant for the difference between the actual cost of such endorsement and a reasonable cost therefor. Said insurance shall be in an amount not less than the full replacement cost of the demised premises as such cost may from time to time be reasonably estimated by Landlord, and said insurance may be written with a so-called eighty percent (80%) or ninety percent (90%) co-insurance clause, and in such event sufficient insurance shall be carried so that the insured shall not be a co-insurer. Said insurance may be written with a so-called "deductible" in an amount not greater than Ten Thousand Dollars ($10,000.00). If Tenant shall request Landlord's permission to increase the amount of such "deductible", however, Landlord agrees that it will not unreasonably withhold or delay such approval so long as Tenant's request shall be consistent with common practices for fire and casualty insurance upon similar department stores in Eastern Massachusetts. Insurance against any or all of such risks may be maintained under a blanket policy covering the demised premises and other real estate of Tenant and/or its affiliated business organizations (Nothing herein contained, however, shall affect the obligation of Tenant set forth in Section (A) of this Article to repair or restore the demised premises after damage or destruction by fire or a casualty required to be insured by Tenant pursuant to the provisions of Section (C) of this Article or actually insured against by Tenant.) The policies of such insurance shall name Landlord and Tenant as insureds as their interest may appear and, subject to the provisions of Section (A) of this Article, shall be payable in case of loss to the holders of any mortgages upon the property of which the demised premises are a part as their interest may appear, and shall provide that the same shall not be cancelled or amended without at least ten (10) days prior written notice to Landlord. Landlord and Tenant shall jointly adjust with the insurance carriers the amount of the loss upon such policies, except only in the event of a termination pursuant to the provisions of Section (B) of this Article, in which event Landlord shall have the right to adjust with the insurance carriers the amount of the loss. Said insurance shall be written by responsible insurance companies authorized to do business in the state wherein the Shopping Center is located. Tenant agrees that not less than ten (10) days prior to the commencement of the term of this lease and not less than ten (10) days prior to the expiration of each policy of such insurance Tenant will deliver to Landlord certificates of such insurance, or the renewals thereof, as the case may be.

UNINSURED CASUALTY (D) If the demised premises or any part thereof shall be damaged or destroyed by a casualty (other than a casualty required to be insured by Tenant pursuant to Section (C) of this Article or a casualty actually insured by Tenant, whether or not the same is required to be insured), then Tenant shall promptly give notice thereof to Landlord and, unless this lease shall be terminated as hereinafter provided, Tenant shall promptly thereafter repair or restore the demised premises to substantially the same condition they were in immediately prior to the casualty. If the demised premises shall be so damaged or destroyed to the extent of ten percent (10%) or more of their insurable value, then Tenant may, if it shall so elect, terminate the term of this lease by notice to Landlord within thirty (30) days after such damage or destruction. If Tenant shall give notice of termination pursuant to the provisions of this Section (D) and if within thirty (30) days after Landlord shall receive such notice of termination from Tenant, Landlord shall give Tenant notice that it elects to pay the cost of repairing or restoring the demised premises as aforesaid, then such notice of termination shall become void and of no force or effect; Landlord shall repair or restore the demised premises as aforesaid; and Tenant shall pay to Landlord upon demand the lesser of (a) ten percent (10%) of the insurable value of the demised premises or (b) the amount expended by Landlord for such repair or restoration. If Landlord or Tenant shall in fact collect any damages from a third party causing such damage or destruction, the amount so collected, but not more than the amount expended by Landlord for such repair or restoration, shall be paid to Landlord and the balance thereof, if any, shall be paid to Tenant.

(E) If any other premises in the Shopping Center shall be damaged or destroyed by fire or other casualty or by a taking by right of eminent domain, then within a reasonable time after receiving the insurance proceeds or eminent domain award with respect thereto Landlord shall repair and restore so much of

-23-                                                                                              -24-

such premises (if any) as Landlord shall elect to repair and restore, and Landlord shall raze the balance of such premises. No election by Landlord to raze all or any part of such premises shall be deemed to prohibit Landlord from thereafter using the area covered thereby for new buildings. Landlord agrees, however, that it shall elect to repair and restore any of such premises as shall be so damaged or taken so long as (a) the insurance proceeds or eminent domain award received by Landlord for such premises shall be sufficient to pay for such repair and restoration, (b) tenants reasonably satisfactory to Landlord shall be willing to enter into leases with Landlord for the repaired and restored premises, such leases to be satisfactory in form and substance to Landlord, and (c) such repairing and restoration of such premises shall be feasible in light of then current conditions applicable to the Shopping Center and/or the economy in general.

EMINENT DOMAIN

11. (A) If after the execution of this lease and prior to the expiration of the term of this lease the whole of the demised premises shall be appropriated by right of eminent domain, then taking of possession by the taking authority, the term of this lease shall cease as of the ~~[struck through]~~ and rent shall be apportioned and adjusted as of the time of termination. Tenant shall have the right at its election to continue to occupy the demised premises, to the extent permitted by law, for all, or such part as Tenant may elect, of the period between the time of such appropriation and the time when physical possession of the demised premises shall be taken, subject to the provisions of this lease insofar as the same may be made applicable to such occupancy by Tenant, but the amount, if any, charged Tenant by the taking authority or its assigns for rent or use and occupancy shall be deductible from the rent paid or payable by Tenant thereunder.

(B) If by right of eminent domain, either

(i) a part of the demised premises shall be appropriated and if as a result thereof the ground floor area of the original demised premises shall be reduced by more than twenty (20) percent, or

(ii) a part of the common areas of the Shopping Center shall be appropriated and if as a result thereof the parking areas shall be reduced so that the number of parking spaces therein for standard sized automobiles of American manufacture shall be reduced to less than eighty (80) percent of the number set forth in Section (A) of Article 2 hereof (it being understood and agreed, however, that in the event such number shall be so reduced and if Landlord shall within sixty (60) days thereafter construct such additional parking areas in the Shopping Center as shall be required to increase said number to at least eighty (80) percent of the number required by said Section (A), the election to terminate this lease hereinafter granted Tenant shall not be exercisable*, or

(iii) the parking areas of the Shopping Center shall cease to have a satisfactory access to Western Avenue, or

(iv) any part of the demised premises shall be appropriated during the last year of the term of this lease,

then Tenant may, if it shall so elect, terminate the term of this lease by giving Landlord notice of the exercise of such election within thirty (30) days after the receipt by Tenant of notice of such appropriation. If by right of eminent domain any part of the demised premises shall be appropriated during the last year of the term of this lease, Landlord may, if it shall so elect, terminate the term of this lease by giving Tenant notice of the

HERE ENDS PAGE

-26-

*Since the number of parking spaces are not set forth in Section (A) of Article 2 hereof, the parties agree that such number shall be deemed to be the number of parking spaces shown on the lease plan.

exercise of such election within thirty (30) days after the receipt by Landlord of notice of such appropriation. If Landlord shall give such notice of termination at a time when Tenant shall have the right to exercise an election to extend the term of this lease and if within fifteen (15) days after Tenant shall receive such notice of termination from Landlord Tenant shall exercise said election, then such notice of termination shall become void and of no force or effect. In the event of a termination under the provisions of this Article, the termination shall be effective as of the time that physical possession of the premises so appropriated shall be taken, and rent and other charges shall be apportioned and adjusted as of the time of termination, but the amount charged by the taking authority or its assigns for rent or use and occupancy between the time of the appropriation and the time of termination shall be deductible from rent paid or payable hereunder. If there shall be an appropriation by right of eminent domain and if the term of this lease shall not be terminated as aforesaid, then the term of this lease shall continue in full force and effect, and Landlord shall, within a reasonable time after physical possession is taken of the premises appropriated, restore what may remain of the demised premises and of the common areas and common facilities to substantially the same condition they, respectively, were in prior thereto, subject to reduction in size thereof. A just proportion of the minimum rent, according to the nature and extent of the injury to the demised premises, shall be suspended or abated until what may remain of the demised premises and the common areas and common facilities shall be restored as aforesaid; and thereafter a just proportion of the minimum rent, according to the nature and extent of the part of the original demised premises, so appropriated, shall be abated for the balance of the term of this lease.

(C) Landlord reserves to itself, and Tenant assigns to Landlord, all rights to damages accruing on account of any taking by eminent domain or by reason of any act of any public authority for which damages are payable. Tenant agrees to execute such instruments of assignment as may be reasonably required by Landlord in any petition for the recovery of such damages, if requested by Landlord, and to turn over to Landlord any damages that may be recovered in any such proceeding. It is agreed and understood, however, that Landlord does not reserve to itself and Tenant does not assign to Landlord any damages payable for moving expenses or for trade fixtures installed by Tenant or anybody claiming under Tenant at its own cost and expense or any so-called special damages which may by law be payable to Tenant, the payment of which does not cause, or result in, a diminution of any damages otherwise payable to Landlord hereunder. Notwithstanding the foregoing provisions of this Section (C), if this lease is terminated during the original term by reason of any such taking, out of fifty percent (50%) of the balance of Landlord's net award remaining after deducting the unpaid balance(s) of the mortgage(s) upon premises of which the demised premises are a part, Landlord shall pay to Tenant the cost to Tenant of the work described in Section (E) of Article 9 hereof (whether or not title thereto shall have passed to Landlord), reduced at the rate of four percent (4%) of such cost for each year of the then expired portion of the original term hereof. In no event shall Tenant be entitled by reason of the immediately preceding sentence to more than fifty percent (50%) of the balance of Landlord's net award remaining after deducting the unpaid balance(s) of said mortgage(s). Notwithstanding the foregoing provisions hereof, it shall be a condition to Tenant's right to receive such payment from Landlord that, at or about the time that said work shall be completed by Tenant, Tenant shall give Landlord notice of the cost to Tenant thereof, and the Landlord shall thereafter have the right to verify said cost.

INDEMNI-
FICATION

12. (A) Tenant agrees to save Landlord harmless from, and indemnify Landlord against, any and all injury, loss or damage or claims for injury, loss or damage, of whatever nature, to any person or property caused by or resulting from any act, omission or negligence of Tenant or any subtenant or any such claim occurring in the demised premises or from concessionaire of Tenant or any employee or agent of Tenant or any subtenant or concessionaire of Tenant. If Tenant or anyone claiming under Tenant or the whole or any part of the property of Tenant or anyone claiming under Tenant shall be injured, lost or damaged by theft, fire, water or steam or in any other way or manner, whether similar or dissimilar to the foregoing, no part of said injury, loss or damage is to be borne by Landlord unless the same shall be caused by or result from the act, omission or negligence of Landlord or its employees or agents.

-27-        -28-

INITIALED FOR IDENTIFICATION

CRANCE      (B)  During such periods of time that Landlord shall be performing the common area maintenance obligations pursuant to the provisions of this lease, Landlord agrees to save Tenant harmless from, and indemnify Tenant against, any and all injury, loss or damage or claims for injury, loss or damage, of whatever nature, to any person or property in the common areas of the Shopping Center caused by or resulting from any act, omission or negligence of Landlord or its employees or agents.

(C)  Tenant shall maintain with respect to the demised premises throughout the term of this lease a policy or policies of public liability insurance in a single-limit amount of not less than One Million Dollars ($1,000,000.00) per occurrence and $250,000.00 property damage. ~~[redacted]~~ such policies of insurance to be issued by insurance companies authorized to do business in the state wherein the Shopping Center is located. Such coverage may be provided by a basic policy of lesser liability provided an adequate "umbrella policy" is written for the deficiency. Tenant agrees that said insurance, including any umbrella policy, will name Landlord as an additional insured. Tenant shall deliver such policies to Landlord at least fifteen (15) days prior to the commencement of the term of this lease, and each renewal policy at least fifteen (15) days prior to the expiration of the policy it renews. Tenant may maintain such insurance under a blanket policy affecting the demised premises and other premises of Tenant or any business organization affiliated with Tenant. In lieu of delivering any policy of insurance to Landlord, Tenant may deliver to Landlord a certificate of the company issuing such policy certifying such independent insurance or certifying the existence of a blanket policy showing the coverage, that the coverage includes the demised premises and that Landlord is named as an additional insured. All such insurance policies shall provide that such policies shall not be cancelled or amended without at least ten (10) days prior written notice to Landlord. If Tenant shall elect to

INITIALED FOR
IDENTIFICATION

-29-

carry greater amounts of liability insurance than the amounts set forth above, ~~[redacted]~~ Landlord ~~[redacted]~~ shall have the benefit of such greater amounts of liability insurance for so long as Tenant shall carry the same.

13.  (A) (i) If Tenant shall default in the payment of any rent or any other sum of money payable by Tenant to Landlord and if Tenant shall fail to cure said default within fourteen (14) days after receipt of notice of said default from Landlord or (ii) if Tenant shall default in the performance or observance of any other agreement or condition on its part to be performed or observed and if Tenant shall fail to cure said default within thirty (30) days after receipt of notice of said default from Landlord (or if said default shall reasonably require longer than thirty (30) days to cure, if Tenant shall fail to commence to cure said default within a reasonable time after receipt of notice thereof and prosecute the curing of the same to completion with due diligence), (iii) if any person shall levy upon, or take this leasehold interest or any part thereof upon execution, attachment or other process of law, or (iv) if Tenant shall make an assignment of its property for the benefit of creditors; or (v) if Tenant shall be declared bankrupt or insolvent according to law, or (vi) if any bankruptcy or insolvency proceedings shall be commenced by Tenant, or (vii) if a receiver, trustee or assignee shall be appointed for the whole or any part of Tenant's property and shall not be discharged within sixty (60) days of such appointment or (viii) if any bankruptcy or insolvency proceedings shall be commenced against Tenant and the same shall not be dismissed within sixty (60) days of the commencement thereof, then in any of said cases and without waiving any claim for breach of agreement Landlord may send written notice to Tenant of the termination of the term of this lease, and, on the fifth day next following the date of the sending of the notice the term of this lease shall terminate, Tenant hereby waiving all rights of redemption. If there shall be a guarantor of Tenant's

-30-

obligations hereunder, then the word "Tenant" as used in subdivisions (iv) through (viii), inclusive, of the immediately preceding sentence shall be deemed to mean such guarantor as well as the tenant named herein. After any assignment of Tenant's interest in this lease made in accordance with the provisions of Article 17 hereof, the word "Tenant" as used in subdivisions (iv) through (viii), inclusive, of the first sentence of this Section (A) shall be deemed to mean the tenant in possession rather than the tenant named herein and the provisions of the immediately preceding sentence shall be deemed applicable to a guarantor of the obligations of the tenant in possession, if any, and not of the tenant named herein. Notwithstanding anything to the contrary herein contained, the provisions of the immediately preceding sentence shall only be applicable if at the time of the assignment in question:

(a) The assignee shall have a net worth (determined in accordance with generally accepted principals of accounting) at least as large as that of the guarantor of Tenant's obligations hereunder; or

(b) The obligations of such assignee shall have been guaranteed to Landlord by a corporation whose net worth (determined as aforesaid) shall be at least as large as that of the guarantor of Tenant's obligations hereunder.

It is expressly understood and agreed, however, that any notice of termination given pursuant to subdivisions (iv) through (viii) above must be given not later than sixty (60) days after the final court order terminating the proceeding in question.

(B) In case of any such termination, Tenant will indemnify Landlord against all loss of rent and other payments provided herein to be paid by Tenant to Landlord between the time of termination and the expiration of the term of this lease. It is understood and agreed that at the time of the termination or at any time thereafter Landlord may rent the demised premises, and for a term which may expire after the expiration of the term of this lease, without releasing Tenant from any liability whatsoever; that Tenant shall be liable for any expenses incurred by Landlord in connection with obtaining possession of the demised premises and in connection with any reletting, including, but without limitation, reasonable remodelling expenses, reasonable attorneys' fees and reasonable brokers' fees, and that any monies collected from any reletting shall be applied first to the foregoing expenses and then to payment of rent and all other payments due from Tenant to Landlord. However, Landlord is to be entitled to and may sue for each month payment as provided herein the day after the same remains unpaid, or at any later time, at Landlord's option, as if no termination had occurred.

-31-

16. (A) If Tenant shall default in the performance or observance of any agreement or condition in this lease contained on its part to be performed or observed other than an obligation to pay money and shall not cure such default within thirty (30) days after notice from Landlord specifying the default (or shall not within said period commence to cure such default and thereafter prosecute the curing of such default to completion with due diligence), Landlord may, at its option, without waiving any claim for breach of agreement, at any time thereafter cure such default for the account of Tenant, and any reasonable amount paid or any reasonable contractual liability incurred by Landlord in so doing shall be deemed paid or incurred for the account of Tenant, and Tenant agrees to reimburse Landlord therefor or save Landlord harmless therefrom; provided that Landlord may cure any such default as aforesaid prior to the expiration of said waiting period but after notice to Tenant, if the curing of such default prior to the expiration of said waiting period is reasonably necessary to protect the real estate or Landlord's interest therein, or to prevent injury or damage to persons or property. If Tenant shall fail to reimburse Landlord upon demand for any amount paid for the account of Tenant hereunder, said amount shall be added to and become due as a part of the next payment of rent due hereunder.

(B) If Landlord shall default in the performance or observance of any agreement or condition in this lease contained on its part to be performed or observed, or shall default in the payment of any tax or other charge which shall be a lien prior to the lien of this lease upon the demised premises or in the payment of any installment of principal or interest upon any mortgage which shall be prior in lien to the lien of this lease (unless the holder thereof shall have entered into a recognition agreement with respect to this lease) and if Landlord shall not cure such default within thirty (30) days after notice from Tenant specifying the default (or shall not within said period commence to cure such

-32-                    NEXT PAGE IS PAGE -32A-

default and thereafter prosecute the curing of such default to completion with due diligence. Tenant may, at its option, without waiving any claim for damages for breach of agreement, at any time thereafter cure such default for the account of Landlord, and an reasonable amount paid or any reasonable contractual liability incurred by Tenant in s doing shall be deemed paid or incurred for the account of Landlo

HERE ENDS PAGE

-32A-

and Landlord agrees to reimburse Tenant therefor or save Tenant harmless therefrom; provided that Tenant may cure any such default as aforesaid prior to the expiration of said waiting period, but after said notice to Landlord, if the curing of such default prior to the expiration of said waiting period is reasonably necessary to protect the real estate or Tenant's interest therein or to prevent injury or damage to persons or property.

Provided that if the institutional holder of any mortgage covering the demised premises shall have given written notice to Tenant that it is the holder of said mortgage, and provided such notice includes the address to which notices to such mortgagee a to be sent, Tenant agrees that in the event it shall give notice Landlord to correct a default of Landlord as provided for in thi Section, Tenant shall give similar notice to said mortgagee. Tenant agrees that any such mortgagee may correct or remedy such default within the time permitted to Landlord pursuant to this Section.

WAIVER OF SUBROGATION

15. (A) Each of Landlord and Tenant hereby releases the other to the extent of its insurance coverage, from any and all liability for any loss or damage caused by fire or any of the extended coverage casualties or any other casualty insured against, even if such fire or other casualty shall be brought about by the fault or negligence of the other party, or any persons claiming under it, provided, however, this release shall be in force and effect only with respect to loss or damage occurring during such time as releasor's policies of fire and extended coverage insuran shall contain a clause to the effect that this release shall not affect said policies or the right of the releasor to recover ther under. Each of Landlord and Tenant agrees that its fire and extended coverage insurance policies will include such a clause so long as the same is obtainable and is includible without extra co or if such extra cost is chargeable therefor, so long as the othe party pays such extra cost. If extra cost is chargeable therefor

-33-

such party will advise the other thereof and of the amount thereof, and the other party, at its election, may pay the same but shall not be obligated to do so.

(B) Except as provided in Section (A) of this Article, neither Article 26 of this lease nor anything else in this lease contained shall be deemed to release either party hereto from liability for damages resulting from the fault or negligence of said party or its agents.

MORTGAGE SUBORDINATION 16. Tenant agrees that upon the request of Landlord in writing it will subordinate this lease and the lien hereof, from time to time, to the lien of any present or future mortgage to a bank, insurance company or similar financial institution, irrespective of the time of execution or time of recording of any such mortgage or mortgages, provided that the holder of any such mortgage shall enter into an agreement with Tenant, in recordable form, that in the event of foreclosure or other right asserted under the mortgage by the holder or any assignee thereof, this lease shall continue in full force and effect; insurance proceeds on account of damage or destruction to the demised premises by fire or other casualty and awards on account of a taking of any part of the demised premises by eminent domain payable to such mortgagee shall be applied to the repair or restoration of the demised premises in accordance with the terms of this lease; and this lease shall not be terminated or disturbed except in accordance with the provisions hereof. Tenant agrees that if requested by the holder of any such mortgage it will be a party to said agreement and will agree in substance that, if the mortgagee or any person claiming under the mortgagee shall succeed to the interest of Landlord in this lease, it will recognize said mortgagee or person as its landlord under the terms of this lease. Tenant agrees that it will, upon the request of Landlord, execute, acknowledge and deliver any and all instruments necessary or desirable to give effect to or notice of such subordination. The word "mortgage" as used herein includes mortgages, deeds of trust or other similar instruments and modifications, consolidations, extensions, renewals, replacements and substitutes thereof.

-34-

ASSIGNMENT AND SUBLETTING 17. (A) Tenant agrees that it will not at any time between the date hereof and the third (3rd) anniversary of the rent day assign this lease or any interest therein, or sublet the whole or any part of the demised premises, without obtaining on each occasion the prior written consent of Landlord. Tenant shall give Landlord notice of the person or business organization to which any intended assignment or subletting after such third (3rd) anniversary date is to be made and the terms of such intended assignment or subletting. If (a) such notice shall be given to Landlord at any time after the twentieth (20th) anniversary of the rent day, or (b) the net worth of the business organization to which such assignment or subletting is intended to be made is less than the net worth of Caldor, Inc. (determined in accordance with generally accepted principals of accounting), Landlord shall have the right, exercisable within sixty (60) days after the receipt of such notice by Landlord from Tenant, to give notice to Tenant that it elects to terminate the term of this lease as of the intended date of said assignment or subletting, in which event the term of this lease shall terminate upon such date as if such intended date were the date originally fixed for the termination hereof. If within fifteen days after its receipt of Landlord's notice of termination, Tenant shall give Landlord notice that it has elected not to make such assignment or subletting, however, then Landlord's notice of termination shall be null and void and of no further force or effect, and this lease shall continue in full force and effect. Nothing herein contained shall be deemed to limit in any way the right of Tenant to have concessionaires operate leased departments in the demised premises. Notwithstanding the provisions of this Section (A) Tenant may at any time during the term of this lease (i) assign its interest in the same to Caldor, Inc., a Delaware corporation, or any wholly owned subsidiary of Caldor, Inc., or (ii) assign its interest in this lease to any business organization having a net worth (determined in accordance with generally accepted principals of accounting) greater than that of Caldor, Inc., if such business organization shall purchase all of the retail store operations of Caldor, Inc. and its wholly owned subsidiaries (including Tenant), or (iii) sublet not more than twenty-five percent (25%) of the aggregate square footage of ground floor area of the demised premises (but not for the operation of any business that will be in competition with any other then existing tenancy in the Shopping Center), in each case without giving Landlord any right to terminate this lease.

-35-                    NEXT PAGE IS PAGE -35A-

(B) Notwithstanding any assignment of Tenant's interest in this lease or any subletting of the whole or any part of the demised premises, Tenant shall remain primarily liable for the performance of all agreements of Tenant hereunder, and, unless Landlord shall specifically consent to a different use, the use of the demised premises by such assignee or subtenant shall be subject to the limitations set forth in Sections (B) and (C) of Article 2 hereof. It shall be a condition of any assignment of Tenant's interest in this lease (whether or not the consent of Landlord to such assignment shall be required hereunder) that the assignee of Tenant's interest in this lease shall execute and deliver to Landlord on or before the intended date of such assignment an instrument in recordable form wherein such assignee agrees with Landlord that such assignee shall, as of the date of such assignment, be primarily liable for the performance of all agreements of Tenant hereunder.

HERE ENDS PAGE
-35A-

18. It is agreed that if any provision of this lease or the application of any provision to any person or any circumstance shall be determined to be invalid or unenforceable, then such determination shall not affect any other provisions of this lease or the application of said provision to any other person or circumstance, all of which other provisions shall remain in full force and effect; and it is the intention of the parties hereto that if any provision of this lease is capable of two constructions one of which would render the provision void and the other of which would render the provision valid, then the provision shall have the meaning which renders it valid.

19. The words "Landlord" and "Tenant" and the pronouns referring thereto, as used in this lease, shall mean, where the context requires or admits, the persons named herein as Landlord and as Tenant, respectively, and their respective heirs, legal representatives, successors and assigns, irrespective of whether singular or plural, masculine, feminine or neuter. The agreements and conditions in this lease contained on the part of Landlord to be performed and observed shall be binding upon Landlord and its heirs, legal representatives, successors and assigns and shall enure to the benefit of Tenant and its heirs, legal representatives, successors and assigns, and the agreements and conditions on the part of Tenant to be performed and observed shall be binding upon Tenant and its heirs, legal representatives, successors and assigns and shall enure to the benefit of Landlord and its heirs, legal representatives, successors and assigns. If Landlord shall be more than one person, the obligations of Landlord shall be joint and several. Any person or business organization holding Landlord's interest in this lease shall be liable for defaults in

-36-

the terms and conditions in this lease contained to be performed or observed on the part of Landlord only during the time said person or business organization shall hold Landlord's interest in this lease.

If Landlord or any successor in interest or assigns shall be an individual, joint venture, tenancy in common, firm or partnership, general or limited, it is specifically understood and agreed that there shall be no personal liability on such individual or the members of the joint venture, tenancy in common, firm or partnership in respect to any of the terms, covenants, or conditions of this lease, and Tenant shall look solely to the equity of Landlord in the Shopping Center for the satisfaction of the remedies of Tenant in the event of a breach by Landlord of any of the terms, covenants and conditions of this lease to be performed by Landlord or any successor in interest, as aforesaid.

HERE ENDS THIS PAGE

-37-

-37-

INITIALLED FOR IDENTIFICATION

DELAYS    20. In any case where either party hereto is required to do any act (other than make a payment of money), delays caused by or resulting from Act of God, war, civil commotion, fire or other casualty, labor difficulties, general shortages of labor, materials or equipment, government regulations or other causes beyond such party's reasonable control shall not be counted in determining the time when the performance of such act must be completed, whether such time be designated by a fixed time, a fixed period of time or "a reasonable time." In any case where work is to be paid for out of insurance proceeds or condemnation awards, due allowance shall be made, both to the party required to perform such work and to the party required to make such payment for delays in the collection of such proceeds and awards. The provisions of this Article shall not apply to the dates set forth in Article 5 hereof, except to the extent specifically set forth therein.

HOLDING OVER    21. If Tenant or anyone claiming under Tenant shall remain in possession of the demised premises or any part thereof after the expiration of the term of the lease without any agreement in writing between Landlord and Tenant with respect thereto, prior to acceptance of rent by Landlord, the person remaining in possession shall be deemed a tenant at sufferance; and after acceptance of rent by Landlord, the person remaining in possession shall be deemed a tenant from month to month subject to the provisions of this lease insofar as the same may be made applicable to a tenancy from month to month.

WAIVERS    22. Failure of either party to complain of any act or omission on the part of the other party, no matter how long the same may continue, shall not be deemed to be a waiver by said party of any of its rights hereunder. No waiver by either party at any time, express or implied, of any breach of any provisions of this lease shall be deemed a waiver of a breach of any other provision of this

INITIALLED FOR IDENTIFICATION

-38-

DELAYS 20. In any case where either party hereto is required to do any act (other than make a payment of money), delays caused by or resulting from Act of God, war, civil commotion, fire or other casualty, labor difficulties, general shortages of labor, materials or equipment, government regulations or other causes beyond such party's reasonable control shall not be counted in determining the time when the performance of such act must be completed, whether such time be designated by a fixed time, a fixed period of time or "a reasonable time." In any case where work is to be paid for out of insurance proceeds or condemnation awards, due allowance shall be made, both to the party required to perform such work and to the party required to make such payment for delays in the collection of such proceeds and awards. The provisions of this Article shall not apply to the dates set forth in Article 5 hereof, except to the extent specifically set forth therein.

HOLDING OVER 21. If Tenant or anyone claiming under Tenant shall remain in possession of the demised premises or any part thereof after the expiration of the term of the lease without any agreement in writing between Landlord and Tenant with respect thereto, prior to acceptance of rent by Landlord, the person remaining in possession shall be deemed a tenant at sufferance; and after acceptance of rent by Landlord, the person remaining in possession shall be deemed a tenant from month to month subject to the provisions of this lease insofar as the same may be made applicable to a tenancy from month to month.

WAIVERS 22. Failure of either party to complain of any act or omission on the part of the other party, no matter how long the same may continue, shall not be deemed to be a waiver by said party of any of its rights hereunder. No waiver by either party at any time, express or implied, of any breach of any provisions of this lease shall be deemed a waiver of a breach of any other provision of this lease or a consent to any subsequent breach of the same or any other provision. If any action by either party shall require the consent or approval of the other party, the other party's consent to or approval of such action on any one occasion shall not be deemed a consent to or approval of said action on any subsequent occasion or a consent to or approval of any other action on the same or any subsequent occasion. Except as otherwise provided in this lease any and all rights and remedies which either party may have under this lease or by operation of law, either at law or in equity, upon any breach, shall be distinct, separate and cumulative and shall not be deemed inconsistent with each other; and no one of them, whether exercised by said party or not, shall be deemed to be in exclusion of any other; and any two or more or all of such rights and remedies may be exercised at the same time. Without limiting the generality of the foregoing, if any restriction contained in this lease for the benefit of either party shall be violated, said party, without waiving a claim for breach of agreement against the other party, may bring such proceedings as it may deem necessary, either at law or in equity, in its own name or in the name of the other party, against the person violating said restriction.

DISPUTED 23. It is agreed that if at any time a dispute shall arise PAYMENTS as to any amount or sum of money to be paid by one party to the other under the provisions hereof, the party against whom the obligation to pay the money is asserted shall have the right to make payment "under protest" and such payment shall not be regarded as a voluntary payment and there shall survive the right on the part of said party to institute suit for the recovery of such sum, and if it shall be adjudged that there was no legal obligation on the part of said party to pay such sum or any part thereof, said party shall be entitled to recover such sum or so much thereof as it was not legally required to pay under the provisions of this lease; and if at any time a dispute shall arise between the parties he-

INITIALLED FOR IDENTIFICATION

-38-

INITIALLED FOR IDENTIFICATION

-39-

as to any work to be performed by either of them under the provisions hereof, the party against whom the obligation to perform the work is asserted may perform such work and pay the cost thereof "under protest" and the performance of such work shall in no event be regarded as a voluntary performance, and there shall survive the right on the part of said party to institute suit for the recovery of the cost of such work, and, if it shall be adjudged that there was no legal obligation on the part of said party to perform the same or any part thereof, said party shall be entitled to recover the cost of such work or the cost of so much thereof as said party was not legally required to perform under the provisions of this lease.

**QUIET ENJOYMENT** 24. Landlord agrees that, upon Tenant's paying the rent and performing and observing the agreements and conditions on its part to be performed and observed, Tenant shall and may peaceably and quietly have, hold and enjoy the demised premises and all rights of Tenant hereunder during the term of this lease without any manner of hindrance or molestation by Landlord or anyone claiming under Landlord.

**NOTICES** 25. Any notice and other communication given pursuant to the provisions of this lease shall be in writing and shall be given by mailing the same by certified mail or registered mail, return receipt requested, postage prepaid, and, except as may be expressly otherwise provided in this lease, any such notice or other communication shall be deemed given when mailed as in this Article provided. If sent to Landlord, the same shall be mailed to Landlord to The Nugar Group Incorporated, 29 Commonwealth Avenue, Boston, Massachusetts 02116, Attention: Paul A. Fareca, Vice President, and a duplicate copy thereof to Omega Properties, 60 East 56th Street, New York, New York 10022, or at such other address or addresses as Landlord may hereafter designate by notice to Tenant; and if sent to Tenant, the same shall be mailed to Tenant at 20 Glover Avenue, Norwalk, Connecticut, Attention: Vice President - Real Estate, and a duplicate copy thereof shall be sent to Tenant c/o Hanes, Lawrence, Marks & Kuperschmid, 250 Park Avenue, New York, New York 10017, or at such other address or addresses as Tenant may hereafter designate by notice to Landlord. The parties hereto hereby agree that the mailing of duplicate copies of notices pursuant to this Article 25 shall not be a condition of the giving of valid notice under this lease.

**ACT AND SENSE** 26. Wherever in this lease provision is made for the doing of any act by any person, it is understood and agreed that said act shall be done by such person at its own cost and expense unless a contrary intent is expressed.

**IS INSTRUMENT** 27. This lease is transmitted for examination only and does not constitute an offer to lease, and this lease shall become effective only upon execution thereof by the parties thereto. This instrument contains the entire and only agreement between the parties, and no oral statements or representations or prior written matter not contained in this instrument shall have any force or effect. This lease shall not be modified in any way except by a writing subscribed by both parties.

**MARGINAL NOTES** 28. The marginal notes used as headings for the various Articles of this lease are used only as a matter of convenience for reference and are not to be considered a part of this lease or to be used in determining the intent of the parties to this lease.

**TRUST** 29. If all or any part of Landlord's interest in this lease shall be held by a trust, no trustee, shareholder or beneficiary of said trust shall be personally liable for any of the covenants or agreements, express or implied, hereunder. Landlord's covenants and agreements shall be binding upon the trustees of said trust as trustees as aforesaid and not individually and shall be binding upon the trust estate.

30. In any case in which it is provided by the provisions of this lease, and only in such cases, that any matter shall be determined by arbitration, such matter shall be settled by arbitration conducted in the City of Boston, in accordance with the rules then obtaining of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof. Such award shall be final and binding upon Landlord and Tenant. Each party to the arbitration shall pay half of the fees and expenses of the arbitration but each party shall pay its own attorneys' fees.

31. Landlord agrees that prior to the commencement of the term, it will resurface, where necessary, the existing common areas of the Shopping Center, and bring them up to modern Shopping Center standards and will also restripe the same. In addition, there are four (4) existing free-standing industrial buildings located within the Shopping Center. The industrial building closest to Western Avenue is hereinafter referred to as the "First Building", and likewise for the second building (the "Second Building"), the third building (the "Third Building"), and the fourth building (the "Fourth Building"). Landlord agrees that within a reasonable time after the execution of this lease by both parties, Landlord will raze the Third Building and convert the surrounding area, together with such razed area, to common areas, which common areas shall be of the same type and quality (including lighting) as the remainder of the common areas of the Shopping Center. Landlord will use its best efforts to have the work provided for in the foregoing sentence completed prior to the rent day. Within a reasonable time after July 1, 1979, Landlord agrees to raze and convert to common areas, as aforesaid, the First Building. Within a reasonable time after May 31, 1986, Landlord agrees to raze and convert to common areas, as aforesaid, the Second Building; except that if the present occupant does not extend the term of its lease, then Landlord shall perform the same within a reasonable time after May 31, 1981. It is Landlord's present intention that the Fourth Building shall remain in the Shopping Center, but Landlord shall have the right to demolish the same and erect a new building in place thereof. It is also understood that the occupant of the First Building has the right to use certain parking spaces exclusively, and such use shall not be deemed a violation of any of the provisions of this lease.

The Landlord agrees that the "Out Parcel", shown on the lease plan, will be used only for retail (including service and banking) purposes. At Landlord's option, the Out Parcel may be withdrawn from the Shopping Center, in which event such Out Parcel may have rights of access over the driveways

-42-

of the Shopping Center and utilities easements therein. In the event of such withdrawal, the Out Parcel shall not be deemed part of the Shopping Center for any purposes of this lease, it being understood that the building and land area within the Out Parcel shall not be counted for the purposes of (H) and Article 2/(I) and Article 6 (A) of this lease. The "Out Parcel" shall not contain a theatre or bowling alley. The Out Parcel shall contain at least five parking spaces (for standard American size cars) for each 1,000 square feet of so-called selling area contained in the buildings located on the Out Parcel.

In addition, there are two existing buildings presently used for industrial purposes, both of which are shown upon the lease plan, lying easterly of the Shopping Center. It is understood that the occupants of those buildings, and all persons having business with such occupants, shall have the right to use the common areas of the Shopping Center, so long as no part of such buildings, except under existing leases, shall be used and so long as the last sentence of this paragraph shall not be violated. for retail purposes. If any part of such buildings shall be used for retail purposes, except under existing leases, then there shall be provided on said adjacent land easterly of the Shopping Center additional parking spaces if required so that there shall be on such adjacent land and on the Shopping Center five parking spaces (for standard American size cars) for each 1,000 square feet of retail sales area within such buildings and the buildings in the Shopping Center in order for the occupants and persons having business with them to have the right to use the common areas of the Shopping Center. If such retail sales area shall be for a theatre, bowling alley or similar use, then the normal standard, as used by the Shopping Center industry for such use, shall be used in lieu of the foregoing standard of five parking spaces for each 1,000 square feet of retail sales area. If the parties shall be unable to agree on such normal standard, the same shall be decided by arbitration as provided in Article 30. If at any time during the Term the required parking on such adjacent land shall not be so provided, then Landlord agrees upon the written request of Tenant to install a fence or other barrier along such easterly common boundary line of the Shopping Center. If any part of such buildings shall be used for non-retail purposes, then except for rights under existing leases, the occupants of such non-retail space shall only have the right to use nominal portions of the common areas without the prior written consent of Tenant, and in the event of any violation of this sentence, Landlord agrees upon the written request of Tenant to install a fence or other barrier along such easterly common boundary line of the Shopping Center.

-42-

Except for existing tenancies which shall not be counted during the time of their occupancy, if any occupant of such buildings shall have the right to use more than a nominal part of the common areas of the Shopping Center for parking purposes, so much of such building area as shall have such right shall be included within Articles 2 (H) and 2 (I) and clause (b) of Section (A) of Article 6 of this lease, counting industrial and office space at half value and retail space at actual value.

32. It is understood and agreed that the industrial building that may remain in the Shopping Center, pursuant to the provisions of Article 31 and/or office hereof, may always be used for industrial purposes, but Landlord shall have the right to use all or any portion of such building for retail purposes. So much of such building area as shall be used from time to time for industrial purposes or office purposes shall be included for the purposes of Articles 2 (H) and 2 (I) and clause (b) of Section (A) of Article 6 of this lease, but shall be counted at half actual area. Retail space within such building shall be counted at actual area. Notwithstanding the foregoing provisions of this paragraph, the area presently leased to existing occupants shall not be counted for the foregoing purposes during the time of such occupancy.

None of the restrictions contained in Section (B) of Article 2 of this lease shall be applicable to any portion of such industrial building that may remain, except that the same may not be used as a theatre, bowling alley, car wash, or similar use. In addition, no portion of such industrial building shall be leased if such use shall require an inequitable use of the parking areas of the Shopping Center, and if the parties shall be unable to agree on such inequitable use, the same shall be decided by arbitration as provided in Article 30.

33. Tenant shall have a right of first refusal to purchase the whole or any part of the Shopping Center. Landlord may not sell the whole or any part of the Shopping Center at any time or times during the term of this lease without first giving notice to Tenant of the whole or part of the Shopping Center proposed to be sold and the terms of the proposed sale. If Tenant shall within seven (7) days after receipt of notice from Landlord give Landlord notice that it will purchase from Landlord on said terms the whole or part of the Shopping Center proposed to be sold, as the case may be, Tenant and Landlord shall promptly enter into an agreement for such purchase

-44-

and sale upon said terms. If Tenant shall not give Landlord such notice within such time, then Landlord may consummate said sale to a third party at any time thereafter. Landlord may not consummate a sale upon any other terms without reoffering the sale to Tenant in the manner aforesaid. The provisions of this Article shall not restrict in any way the mortgaging of the Shopping Center or any part thereof, and the provisions of this Article shall not be binding upon the holder of any institutional mortgage on the Shopping Center or any part thereof or upon anybody claiming by, through or under such holder and shall in no way restrict a sale upon foreclosure by any mortgagee.

During the term of this lease,
34. Tenant shall have a right of first refusal to lease all or any part of the remaining space in the Building after the new lease with Star Market (or any affiliated company) has expired or has terminated. Landlord may not lease the whole or any part of such remaining space at any time or times during the term of this lease without first giving notice to Tenant of the whole or part of the remaining space proposed to be leased, and the terms of the proposed lease. If Tenant shall within fourteen (14) days after receipt of notice from Landlord give Landlord notice that it will lease from Landlord on said terms the whole or part of the remaining space proposed to be leased, as the case may be, than Tenant and Landlord shall

HERE ENDS THIS PAGE.

-45-    Next page is Signature Page.

EXHIBIT A-1

promptly enter into a new lease for such remaining space upon said terms, which lease shall be executed by the parties within fourteen (14) days after receipt of notice from Tenant. However, if Tenant shall not give Landlord such notice within such time, then Landlord may consummate said lease to a third party at any time thereafter upon the same terms. The provisions of this Article shall not be binding upon the holder of any institutional mortgage on the shopping center or any part thereof or upon anybody claiming by, through or under such holder.

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be executed as of the day and year first above written.

_____
Paul A. Iaracs, as trustee as aforesaid
and not individually

_____
Harold Shiller, as trustee as aforesaid
and not individually

CALDOR, INC. MASS.

By _____ President

Attest _____ Clerk

LEGAL DESCRIPTION

EXHIBIT B

THE PLANS AND SPECIFICATIONS SHALL BE AGREED TO BY A SEPARATE LETTER AGREEMENT BETWEEN LANDLORD AND TENANT.

EXHIBIT C

1. Real estate taxes not yet due and payable.

2. Lease originally with The Turn Style Operating Corporation, as the same has been assigned and amended. Landlord represents to Tenant that nothing contained in said lease, as amended, is inconsistent with the provisions of this lease.

3. Rights and easements for sewerage works taken by the Board of Street Commissioners of the City of Boston dated February 9, 1927, and recorded in Book 4875, Page 504.

4. Other encumbrances, none of which unreasonably interfere with any of Tenant's rights under this lease.

ENCUMBRANCES

## GUARANTEE

WHEREAS, the undersigned, CALDOR, INC., a Delaware corporation, (hereinafter called "the Guarantor") desires to have Paul A. Farace and Marvin Shiller, as Trustee under Declaration of Trust dated June 15, 1977, to be/ recorded with the Suffolk County Registry of Deeds (hereinafter called "the Landlord"), the landlord named in the within Lease dated of even date herewith, of certain premises ("the leased premises") in Boston, Massachusetts enter into said Lease with its wholly-owned subsidiary, Caldor, Inc. Mass., a Massachusetts corporation, (hereinafter called "the Tenant"); and

WHEREAS, the Landlord as a condition precedent of its execution and delivery of said Lease has required that the Guarantor guarantee to it the punctual performance and observance of all tenant obligations thereunder as herein provided;

NOW, THEREFORE, in consideration of the execution and delivery by the Landlord of said Lease, the Guarantor hereby covenants and agrees with the Landlord as follows:

1. The Guarantor hereby guarantees unto the Landlord:

   (a) The punctual and full payment as they accrue and become due of all rents of every kind, additional rents, and all other charges to be paid by the tenant under said Lease, and

   (b) The punctual and full performance and observance of all other tenant obligations contained in said Lease.

2. The Guarantor hereby waives notice of default in the punctual and full payment of said rents, additional rents and other charges and of default in the punctual and full performance and observance of said tenant obligations except as may be provided in said Lease, waives all suretyship defenses generally and further covenants and agrees that it shall not be released from the obligations of this Guarantee, nor shall said obligations be diminished or otherwise affected:

   (a) by any extension of time or other favor or indulgence granted to the tenant under said Lease or by any waiver with respect to the payment of rents, additional rents and other charges to be paid by the tenant or with respect to the performance and observance of any other tenant obligations under said Lease, or

   (b) by any assignment of said Lease or any licensing or subletting of all or any portion of the leased premises, or

   (c) by the acceptance by the Landlord of any security for the punctual and full payment of said rents or the punctual and full performance and observance of said tenant obligations, or the release, surrender, substitution or modification of any security from time to time held by the Landlord, or by any act or omission to act by the Landlord with respect to any such security, or

   (d) by any amendment or modification of said Lease, or

   (e) by any other act or omission to act by the Landlord, or

   (f) by any other matter whatsoever whereby the Guarantor would or might be released, it being the intent hereof that the Guarantor shall at all times be and remain liable to the Landlord to the same extent as if it was jointly and severally liable with the Tenant to the Landlord for the performance of all the terms, conditions and provisions in said Lease contained on the part of the Tenant to be performed.

3. The Guarantor further waives any right which it would or might have at law, or in equity or by statute to require that the Landlord, before enforcing the obligations of the Guarantor hereunder, pursue or otherwise avail itself of any rights or remedies which it would or might have against the Tenant or against any security given to the Landlord by reason of any failure punctually to pay rents, additional rents and other charges to be paid under said Lease or punctually to perform and observe all other tenant obligations contained in said Lease.

4. The Guarantor further waives notice of acceptance of this Guarantee by the Landlord and diligence on its part in the enforcement of the obligations of the Guarantor hereunder.

5. The obligations of the Guarantor hereunder shall in no way be released, diminished or otherwise affected by reason of any voluntary or involuntary proceedings by or against the Tenant in bankruptcy or for an arrangement or reorganization or for any other relief under any provision of the Bankruptcy Act as from time to time in effect.

- 2 -

6. The Guarantor further agrees that if any of its obligations hereunder shall be held to be unenforceable, the remainder of this Guarantee and its application of all obligations other than those with respect to which it is held unenforceable shall not be affected thereby and shall remain in full force and effect.

7. The Guarantor agrees that any notice or demand upon it shall be deemed to be sufficiently given or served if in writing and mailed by registered mail, with or without return receipt requested, addressed to the Guarantor at 20 Glover Avenue, Norwalk, Connecticut, Attn: Vice President - Real Estate.

8. The Guarantor hereby represents to the Landlord that it has the corporate authority to enter into this Guarantee, that the execution and delivery of this Guarantee is not in controvention of its charter or by-laws or applicable state laws, and has been duly authorized by its Board of Directors.

9. All of the provisions hereof shall inure to the benefit of the Landlord its heirs, legal representatives, successors and assigns and shall be binding on Guarantor and its successors and assigns.

WITNESS the execution of this instrument as a sealed instrument as of the 26th day of January, 1973.

CALDOR, INC.

By _____
            Vice President

ATTEST:

By _____
            Secretary

(Corporate seal)

---

SIDE AGREEMENT

January 26, 1978

1. Reference is made to lease dated of even date herewith between Paul A. Faraca and Marvin Shiller, as Trustees, under Declaration of Trust dated June 15, 1977, to be recorded with the Suffolk County Registry of Deeds---------------------------------------------------------------------as landlord ("Landlord"), and Caldor, Inc. Mass., a Massachusetts corporation, as tenant ("Tenant"), with respect to premises ("the demised premises") within a shopping center in Boston, Massachusetts.

2. Pursuant to the provisions of Section (B) of Article 9 of said lease, Tenant is to obtain building and other permits in order to modernize and enlarge the demised premises. Tenant hereby agrees that on or before February 15, 1978, it shall have furnished to Landlord's architect sufficient plans for the obtaining of a building permit. For the purposes of said lease, the building permit shall not be deemed to have been obtained until the necessary approval of the City of Boston has also been obtained to the relocation of the existing sewer easement so that no portion of the building, as enlarged, shall be over the sewer easement. Landlord agrees that it will cooperate with Tenant in applying for and obtaining said permits, but the expense of applying for and obtaining the same shall be borne entirely by Tenant. Tenant shall give Landlord prompt notice of the obtaining or denial of any such permit. Landlord shall also have the right to apply for the obtaining of any such permit.

3. In the event that the "Permit Date" (defined in Article 5 (B) of said lease) shall not occur on or before ~~~~~~~~~~, 1978, then at any time within ten days thereafter (but prior to the occurrence of the Permit Day), Landlord shall have the right, at its election, to terminate said lease by giving Tenant notice of such termination on or before the expiration of said ten-day period. In the event of the giving of such notice, said lease shall terminate upon the receipt thereof by Tenant and neither Tenant nor Landlord shall have any claim or cause of action against the other by virtue of said lease or the termination thereof.

4. All notices required or permitted to be given hereunder by one party to the other shall be given in accordance with the requirements of said lease with respect to notices given thereunder.

5. Except as expressly modified herein said lease shall remain unmodified and in full force and effect.

6. This Side Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, the parties hereto have caused this Side Agreement to be executed as a sealed instrument as of the day and year first above written.

_____
         , As Trustee
As Aforesaid And Not Individually

_____
         , As Trustee
As Aforesaid And Not Individually

CALDOR, INC. MASS.

By _____
            Vice President

ATTEST:

By _____
            Secretary

(Corporate Seal)

The provisions of the foregoing Side Agreement are hereby accepted and confirmed:

CALDOR, INC.

By _____
            Vice President

ATTEST:

By _____
            Secretary        (Corporate Seal)

LOT B

containing an area of 236,690 square feet as shown on a plan entitled "Plan of Land, Boston (Brighton), Mass." by HARRY R. FELDMAN, INC., dated May 1, 1978 and revised May 9, 1978.

A certain parcel of land situated on Western Avenue in the City of Boston (Brighton), Massachusetts bounded and described as follows:

Beginning at a point on the northeasterly sideline of Holton Street, said point being S 72°-17'-10" E a distance of 119.52 feet along said northeasterly sideline of Holton Street from the northeast corner and intersection of Holton Street and Antwerp Street;

thence turning and running N 22°-25'-23" E a distance of 817.18 feet by the easterly line of LOT A to a spike at a bend in the southeasterly sideline of Western Avenue;

thence turning and running N 80°-37'-24" E a distance of 248.33 feet along said southeasterly sideline of Western Avenue to a point;

thence turning and running S 17°-46'-25" W a distance of 762.01 feet by the northwesterly line of LOT C to a point of curvature;

thence running by a curve to the right having a radius of 349.11 feet a distance of 172.48 feet again by the northwesterly line of LOT C to a point on the northeasterly sideline of Holton Street;

thence turning and running N 72°-17'-10" W a distance of 245.46 feet along said northeasterly sideline of Holton Street to the point of beginning;

containing an area of 217,186 square feet as shown on a plan entitled "Plan of Land, Boston (Brighton), Mass." by HARRY R. FELDMAN, INC., dated May 1, 1978 and revised May 9, 1978.

EXHIBIT AA

EXHIBIT AA