**EXHIBIT A-2**

RECEIVED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
AUG 2 9 2003
KENNETH S. GARDNER, CLERK
PUBLIC SERVICE COUNTER

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) ) ) ) | Chapter 11 |
| KMART CORPORATION, et al., | ) ) | Case No. 02 B 02474 |
| Debtor | ) ) ) | (Jointly Administered) Honorable Susan Pierson Sonderby |
| | ) ) ) ) ) | Hearing Date: October 21, 2003 2:00 p.m. |

**OPPOSITION OF KMART TO OBJECTION OF HARVARD REAL ESTATE-ALSTON, INC. TO ASSUMPTION OF LEASE (NIBS DOCKET NO. 10044)**

The debtors in the above-captioned case (collectively, "Kmart") hereby respond to the Objection filed by Harvard Real Estate-Alston, Inc. (collectively, "Harvard") on April 4, 2003 (NIBS Docket No. 10044):

### Preliminary Statement

Harvard seeks to deprive Kmart of the benefit of the valuable, multi-million dollar lease that Kmart has enjoyed since 1999, on the grounds that Kmart allegedly failed to pay $54,000 in its common area maintenance ("CAM") charges. It objects to Kmart's assumption of the lease agreement for the premises located in Brighton Mills Shopping Center on the basis that Kmart was in default of its lease obligations at the time it gave notice of renewal of the lease. Harvard's objection fails as a matter of law and should therefore be overruled in its entirety.

Kmart possess the absolute right pursuant to 11 U.S.C. ' 365(b)(1) to cure any alleged defaults of the lease agreement. Assuming, for the sake of the argument, that Kmart did fall behind in its payments and that Kmart was in default of the lease at the time of renewal -- which it disputes -- the law permits the debtor to exercise its option to renew and subsequently assume such a lease. That is the case even where the language of the lease conditions the renewal on the absence of defaults.

The very purpose of the Bankruptcy Code is to protect debtor's assets while it reorganizes itself and provide for equitable payments to creditors upon reorganization. To nullify Kmart's valuable lease because of the relatively minor defaults that will be addressed as part of the comprehensive bankruptcy proceeding, would frustrate these principles. The lease represents an important asset of Kmart that it should be permitted to assume pursuant to Section 365 of the Bankruptcy Code. Moreover, Kmart is in a position to readily cure the alleged defaults now that

2

the Reorganization Plan has been confirmed by the court and Harvard can expect to be imminently accorded its rights along with the other creditors in this proceeding. Accordingly, the Court should summarily overrule Harvard's Objection and permit Kmart to assume its Brighton lease.

## Background

In July 1999, Kmart purchased from The Caldor Corporation the 1978 commercial lease on a one-story premises located in the Brighton Mills Shopping Center. See Objection of Harvard Real Estate--Alston, Inc. to First Amended Joint Plan of Reorganization of Kmart Corporation and its Affiliated Debtors and Debtors-in-possession and "Assumption Objection" of Harvard Real Estate-Alston, Inc. ("Objection") at 1. Harvard, a successor by merger to Harrow Corporation, is the landlord of these premises. Objection at 1; Deposition of Edward B. Reiss, dated August 20, 2003 ("Reiss Dep.") at 25:2-6 Attached as Exhibit C to the Declaration of Victoria F. Maroulis ("Maroulis Decl."). Kmart continues to occupy these premises and operate its Store No. 9424 in the Brighton Center to this day. Objection at 2. At no point during Kmart's occupancy of the Brighton property did Harvard serve Kmart with a notice of default under the lease. See Declaration of Pat Briskey ("Briskey Decl.") & 4; see also Reiss Dep. at 49:14-17 (Maroulis Decl., Exh. C); Faber Dep. at 65:17-20 (Maroulis Decl., Exh. D).

On January 24, 2003, Kmart delivered to Harvard's agent, Beal & Co., a timely and duly executed notice of renewal of the lease for the additional term of five years commencing February 1, 2003, to and including January 31, 2009. Briskey Decl., Ex. A (Renewal Notice); Reiss Dep. at 65:7-14 (Maroulis Decl., Exh. C). Following the receipt of the notice, neither Harvard, nor it managing company, Beal, notified Kmart, orally or in writing, that

they objected to renewal of the notice or that they considered the lease to have expired or terminated. Reiss Dep. at 49:18-53:19 (Maroulis Decl., Exh. C); Faber Dep. at 50:17-53:3 (Maroulis Decl., Exh. D); Briskey Decl. & 4.[1]

On March 28, 2003, Kmart notified Harvard that it seeks to assume the Brighton store lease along with its other unexpired leases. Objection at 3. On April 3, 2003, Harvard filed its Objection to Assumption and Objection to Plan Confirmation.[2] In this Objection, Harvard claims that Kmart was in default at the time of its attempt to extend the lease because Kmart did not fully pay its CAM charges prior to exercising the option to renew. Objection at 3-4. Harvard seeks a declaration by the Court that the lease renewal is void and thus the lease has expired. Harvard also seeks an order requiring Kmart to make immediate payment to Harvard of post-petition lease obligations.

---

[1] Harvard claims that "[n]otice of failure to pay [portion of CAM charges] was provided to the Debtor by Harvard's property manager, Bean and Companies, Inc. ("Beal"), from May 2001 through December 2001 by virtue of Statements issued to the Debtor." Objection at 4. The only "statements" that Beal provided to Kmart, however, were invoices indicating current charges and balances that nowhere indicated that Kmart was in default or that Harvard considered Kmart's lease to have terminated. See Answers of Harvard Real Estate-Alston, Inc. to Kmart's First Set of Interrogatories, at Answer to Interrogatory No. 6, (Maroulis Decl., Exh. E).

[2] This Opposition addresses only the assumption objection given that the Plan was confirmed by the court on April 23, 2003.

4

## Argument

### I. HARVARD'S OBJECTION FAILS AS A MATTER OF LAW

#### A. Federal Bankruptcy Law Governs The Exercise Of The Lease Renewal Option By A Debtor

As a preliminary matter, Harvard errs in its reliance on the language of the lease. By quoting the provision of the lease that appears to bar the renewal where a tenant is in default, Harvard implies that state contract law governs the terms of the lease and the parties' dispute in this matter. Objection at 4. In the context of a bankruptcy proceeding, however, "federal, not state law, governs the exercise of an offering to extend a lease during the period prior to assumption or rejection." In re Webster Clothes, Inc., 36 B. R. 260, 264 (Bankr. Md. 1984).

It is well settled that the purpose of the assumption provisions of Section 365 of the Bankruptcy Code is to enhance the value of the debtor's estate and provide it an opportunity to reorganize while at the same time protecting the landlord's interests. See In re Circle K Corp., 190 B.R. 370, 376 (9th Cir. 1995) (purpose behind statute governing executory contracts and unexpired leases is to balance state law contract right of creditor to receive benefit of creditor's bargain with the debtor's right under the Bankruptcy Code to attempt to reorganize); In re Bon Ton Restaurant and Pastry Shop, Inc., 53 B.R. 789, 792-83 (Bankr. N.D. Ill. 1985) (AThe aim of the statutory authority to assume a lease is to assist in the debtor=s reorganization effortY the requirement of court approval furthers the policy underlying the Bankruptcy Code of maximizing the value of the estate for the benefit of all creditors, while preserving certain rights of parties to contracts with the debtor.

Kmart is thus entitled to the full opportunity that federal law provides for debtors to reorganize and to maximize their economic position as they emerge from bankruptcy.

### B. Alleged Pre-Petition Defaults Do Not Prevent Kmart From Exercising Its Option To Renew The Lease, Irrespective Of The Failure To Cure Or Magnitude Of Default

Harvard contends that Kmart's renewal of the Brighton lease is invalid because, at the time of this renewal, Kmart allegedly failed to pay the pre-petition CAM charges in the amount of $29,224.95. Even if Harvard could prove such outstanding CAM charges -- which it cannot[3] -- it is well established that a debtor can extend its leases without first curing pre-petition defaults in order to preserve its ability to later assume its leases. See In re Circle K, 127 F.3d 904, 909 (9th Cir. 1997) (the Code suspends termination of lease in default once bankruptcy petition is filed and extends debtor's opportunity to cure defaults until decision about assumption); In re Webster, 36 B.R. at 265 (Debtor allowed to assume lease on condition it cure pre-petition default of $5843 within 14 days of order); In re Revco D.S., Inc., 111 B.R. 626, 629 (Lessee can still exercise lease renewal option even though in default for pre-petition percentage rent without assuming lease, if lessor has not requested court order to compel assumption or rejection).

---

[3] At their 30(b)(6) depositions, Harvard's representatives were unable to substantiate this number: they could neither articulate how this number was arrived at, nor could they specify what Kmart's common area maintenance charges were at any given point in time. Reiss Dep. at 33:21-34:5 (Maroulis Decl., Exh. C); Faber Dep. at 27:24-28:13 (Maroulis Decl., Exh. D).

The Circle K Court reasoned that requiring a debtor to first cure defaults in order to renew its lease would thwart the basic purpose of Section 365. In re Circle K, 127 F.3d at 909. In that case, a pre-petition monetary default of almost $5,000 did not dissuade the court from permitting the debtors to extend the lease without first curing the defaults. Id. at 909. Similarly, the pre-petition default of $29,224.95 in this case should not preclude Kmart from validly exercising its option to renew the lease. A finding to the contrary would deprive Kmart of its option to assume the lease, a key protection feature of Chapter 11. Moreover, were Kmart required to cure the pre-petition default prior to renewing and then were to reject the lease, such cure would have resulted in a preference to Harvard over other creditors, thus contravening a central tenet of bankruptcy law to maximize the value of the estate for equitable distribution to creditors and discourage favorable treatment. Id. at 910.

Importantly, the amount of the monetary default does not factor into a court's decision about lease renewal. "The exact nature and extent of the defaults is immaterial because . . . we conclude that the bankruptcy court had the power to permit the debtors to extend the leases without first curing the defaults." In re Circle K, 190 B.R. at 909. Even if this Court were to consider the nature and scope of the default, given the amount of overall lease obligation at issue (see section I.C. infra), the pre-petition default here is properly characterized as minimal.

Because pre-petition defaults do not preclude debtors from exercising their options to renew leases, Harvard's Objection should be summarily overruled with respect to its pre-petition aspects.

### C. Alleged Post-Petition Defaults Do Not Automatically Preclude Kmart From Exercising Its Renewal Option And The Court Should Exercise Discretion To Permit The Assumption

Harvard's claim that Kmart's alleged post-petition defaults prevent Kmart from assuming the lease at issue similarly fails. Courts have recognized that post-petition defaults do not automatically preclude a debtor from exercising a contractual option to renew a lease post-petition. In re The Leisure Corp., 234 B.R. 916 (9th Cir. 1999). Instead, courts balance such factors as the nature and causes of the post-petition defaults, the purpose of the bankruptcy statute, and protection of the landlord's right to current payment. Id. at 923. In the Leisure case, for example, a debtor's post-petition default of $6,200 did not invalidate the debtor's post-petition renewal of the lease. Id. at 924. The Leisure Court found that it had discretion to decide whether the "scope of the default, the cause of the default, and any subsequent cure of the default, and the significance of the lease to the reorganization are sufficient to outweigh the policy of section 365(d)(3) that the landlord has a right to timely payment postpetition." Id. at 924.[4]

Here the alleged post-petition defaults are minimal when compared to the overall value of the lease and the amounts that Kmart has undisputedly been paying to Harvard through the duration of the lease. Kmart pays more than $23,000 in rent and other expenses every month

---

[4] The case that Harvard relies on for the proposition that Kmart's alleged failure to perform its obligation under the lease requires immediate payment and prevents Kmart from renewing and assuming the lease, is inapposite. Objection at 5. In In re J.T. Rapps, Inc., 225 B.R. 257 (D. Mass. 1998), the Court held that Section 365(d)(3) does not entitles lessor to automatic payment of post-petition charges when the estate representative fails to timely perform post-petition rent obligations. Specifically, the court stated that "[t]he current dispute relates only to whether that [administrative expense] claim is entitled to immediate payment . . . with priority over Chapter 7 administrative claims and other Chapter 11 administrative claims, where the estate is administratively insolvent." Id. at 261. The court did not consider, let alone rule on, the issue of whether a debtor must may renew and assume the lease while in default of the lease.

8

for the Brighton premises which is a substantially higher amount than the portion of the CAM charges which Harvard alleges Kmart failed to pay. Briskey Decl. & 5.

Moreover, Harvard cannot substantiate the alleged defaults. Kmart has been paying the CAM charges in the amount of $4,379.89 since the beginning of Kmart's occupancy in 1999. Briskey Decl. & 6; Ex. B (Rental Payment Change Form); see also Beal Memorandum, dated May 2, 2000 (Maroulis Decl., Ech. B). Kmart has been paying these charges in good faith even though the Lease does not obligate Kmart to pay CAMs on monthly basis. Briskey Decl. & 7, Ex. C at 7A (Lease). Harvard has never formally increased or otherwise altered that initial amount. Briskey Decl. & 8. To the extent that Harvard argues that it increased the CAM charges by sending CAM invoices for a different, larger, amount, such invoices did not alter Kmart's obligation as they lacked the financial backup and Harvard did not secure Kmart's agreement to those increases. Briskey Decl. & 8; see generally Reiss Dep. at 38:8-42:24 (Maroulis Decl., Exh. C); Faber Dep. at 39:2-19 (Maroulis Decl., Exh. D) (professing ignorance of the current and past CAM charges).

Finally, Harvard has never sent a notice of default or notice of termination to Kmart and has been unable to produce one to date. Briskey Decl. & 4; see Reiss Dep. 49:14-17 (Maroulis Decl., Exh. C); Faber Dep. 50:17-51:10 (Maroulis Decl., Exh. D). Harvard's allegation that its invoices constitute notices of default and termination simply does not find support in under law. Walker v. Ford Leasing Development Co., 1995 WL 498866 (E.D. LA.) In Walker, the court found "[w]hile the Lease does not mandate that the notice of default actually contain the term "default," such a notice must somehow put the tenant on notice that it is in

9

default of an obligation under the lease. No reading of Plaintiff's . . . letter can transform it into such a notice".

Clearly, an invoice that merely contains some unexplained and unsupported figures and that does not advise that the tenant is in default, does not fulfill the function of such notice. These multiple factors taken together and added to the purpose of the bankruptcy law -- to assist the debtor in successful reorganization -- outweigh the section 365(d)(3) policy of timely post-petition performance.[5] Thus, both law and equity support overruling Harvard's objection with respect to post-petition interest as well.

### D. The Bankruptcy Code Provides For Cure Of Defaults Upon The Assumption

The Bankruptcy Code provides that at the time of assumption, a debtor must cure any defaults or provide adequate assurance that it will promptly cure, compensate lessor or provide adequate assurance that it will promptly compensate for any actual pecuniary loss resulting from such default, and provide adequate assurance of future performance under the lease. 11 U.S.C. ' 365(b)(1). Additional requirements also exist to adequately assure performance of shopping center leases. 11 U.S.C. ' 365(b)(3); see also In re Webster, 36 B.R. 260 (assumption conditioned on debtor's curing of the default). Accordingly, the Bankruptcy Code provides sufficient protections to ensure any creditor of both prompt cure of defaults and

---

[5] In Leisure, the court did not take up the issue of a threshold amount of a post-petition default necessary to invalidate a lease renewal. Similarly, here the court need not consider the amount of any alleged postpetition default but rather should simply weigh the factors articulated by the Leisure court in making its decision.

assurance of future performance of any lease obligations. Like other creditors, Harvard need only prosecute its cure claim for its concerns to be resolved.[6]

## Conclusion

For the foregoing reasons, Kmart respectfully requests that Harvard's Objection be overruled in its entirety and that Kmart be permitted to assume the Lease.

---

[6] Of course, Harvard is not concerned about the $50,000 dollars that Kmart allegedly owes to Harvard. Instead, it wants to repurchase the lease back in order for potential redevelopment of the Brighton Mills property. Reiss Dep. at 56:17-57:2 (Maroulis Decl., Exh. C). Thus, Harvard is improperly using the assumption process as a leverage in negotiating a better deal at Kmart's expense.

DATED: August 29, 2003               KMART CORPORATION

By /s/ William J. Barrett
William J. Barrett (ARDC No. 6206424)
Local Counsel for Service:
BARACK, FERRAZZANO, KIRSCHBAUM,
PERLMAN & NAGELBERG
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 629-5170

Jon R. Steiger (ARDC No. 6219648)
Victoria F. Maroulis (N.D. Ill. No. 90785643)
QUINN EMANUEL URQUHART OLIVER
 & HEDGES, LLP
865 South Figueroa Street, Tenth Floor
Los Angeles, California 90017
(213) 624-7707

Attorneys for Debtor
Kmart Corporation

## CERTIFICATE OF SERVICE

I, Mark R. Mackowiak, a paralegal in the law firm of Barack Ferrazzano Kirschbaum Perlman & Nagelberg LLC, certify that I have this 29th day of August, 2003, caused to be served, via messenger delivery or overnight delivery as indicated below, a copy of the (i) **OPPOSITION OF KMART TO OBJECTION OF HARVARD REAL ESTATE-ALSTON, INC. TO ASSUMPTION OF LEASE (NIBS DOCKET NO. 10044);** (ii) **AFFIDAVIT OF VICTORIA F. MAROULIS IN SUPPORT OF OPPOSITION OF KMART TO OBJECTION OF HARVARD REAL ESTATE-ALSTON, INC. TO ASSUMPTION OF LEASE (NIBS DOCKET NO. 10044);** and (iii) **AFFIDAVIT OF PAT BRISKEY IN SUPPORT OF OPPOSITION OF KMART TO OBJECTION OF HARVARD REAL ESTATE-ALSTON, INC. TO ASSUMPTION OF LEASE (NIBS DOCKET NO. 10044),** to the parties on the following Service List.

_/s/ Mark R. Mackowiak_
Mark R. Mackowiak

State of Illinois   )
County of Cook   )

Sworn to before me and subscribed in my presence by Mark R. Mackowiak this 29th day of August, 2003.

_Notary Public_

OFFICIAL SEAL
THERESA ANN JURCA
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1-6-2007

## SERVICE LIST

Richard Sheils, Esq.
Bowditch & Dewey, LLP
311 Main Street
P.O. Box 15156
Worcester, MA 01601-0156
(served via overnight, next business day delivery)

Michael S. Terrien, Esq.
Jenner & Block, LLC
One IBM Plaza
330 N. Wabash, 38th Fl.
Chicago, IL 60611
(served via messenger delivery)

190806_1