**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>KMART CORPORATION, et al.,<br><br>        Debtors | Chapter 11<br>Case No. 02-B02474<br>Hon. Susan P. Sonderby<br><br>(Jointly Administered) |

**REPLY OF HARVARD REAL ESTATE-ALLSTON, INC. TO OPPOSITION OF KMART TO OBJECTION OF HARVARD REAL ESTATE-ALLSTON, INC. TO ASSUMPTION OF LEASE (NIBS DOCKET NO. 10044)**

Harvard Real Estate-Allston, Inc. ("Harvard"), in accordance with this Court's Scheduling Order dated July 11, 2003 [Docket No. 13956], submits this Reply (the "Reply") to the "Opposition of Kmart to Objection of Harvard Real Estate-Allston, Inc. to Assumption of Lease (NIBS Docket No. 10044)" (the "Opposition") filed by Kmart Corporation, et al. ("Kmart" or the "Debtor") with the Court on August 29, 2003.

For its Reply, Harvard states:

## BACKGROUND:

1.    On January 22, 2002 (the "Petition Date") the Debtor and certain of its affiliates and subsidiaries commenced these jointly administered reorganization proceedings by filing voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2.    Kmart operates a discount retail store in Brighton, Massachusetts in a shopping center owned by Harvard. Kmart occupies a building of approximately 80,000 square feet in the

shopping center pursuant to a Lease dated January 1978 between Paul A. Faraca and Marvin Shiller, as Trustees, and Caldor, Inc. Mass. (as amended, the "Lease").[1]

3. Kmart has attempted to assume the Lease. On April 4, 2003 Harvard filed the "Objection Of Harvard Real Estate-Allston, Inc. To First Amended Joint Plan Of Reorganization Of Kmart Corporation And Its Affiliated Debtors And Debtors-In-Possession And "Assumption Objection" Of Harvard Real Estate-Allston, Inc." [Docket No. 10044] (the "Assumption Objection"). In its Assumption Objection Harvard noted (i) the Debtor's failure to comply with the mandate of 11 U.S.C. § 365(d)(3), (ii) the Debtor's failure to comply with the Court's order dated March 15, 2002 requiring that the Debtor timely perform all of its obligations under unexpired leases to which it was a party, and (iii) the Debtor's failure to comply with 11 U.S.C. § 365(b)(3).

4. On or about August 29, 2003, Kmart filed the Opposition. Kmart does not deny that it is in breach of its pre-petition or post-petition obligations under the Lease. Instead, it contends that its defaults are *de minimis*, and that notwithstanding virtually all applicable case law to the contrary, federal bankruptcy law determines the parties' substantive property rights with respect to the Lease.[2]

## ARGUMENT:

5. The attempted assumption of a shopping center lease is governed by Section 365(b)(3) of the Bankruptcy Code. That section of the Bankruptcy Code provides that a debtor in possession may not assume an unexpired lease unless at the time of assumption the debtor provides adequate assurance:

---

[1] Harvard had attached to its Assumption Objection a complete and accurate copy of the Lease.

[2] By "Stipulation of the Debtor and Harvard Real Estate-Allston, Inc." ("Objection" dated April 13, 2003 Kmart agreed that any order confirming the Debtors' Amended Joint Plan of Reorganization would not effect an assumption of the Lease. See, Exhibit "A" attached hereto.

(A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

(B) that any percentage rent due under such lease will not decline substantially;

(C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

Kmart has not satisfied the requirements of 11 U.S.C. § 365(b)(3).

6. Kmart has failed to pay common area charges due and owing under the Lease both pre- and post-petition. Kmart's ongoing failure to pay such charges due under the Lease evidences only a future of non-performance of its Lease obligations. The Lease requires the Debtor to pay percentage rent based upon annual sales of $14,000,000.00. Kmart has failed to provide Harvard with any indication of the level of sales that it believes will be achieved following its attempted assumption of the Lease. See e.g. In re Joshua Slocum, Ltd., 922 F.2d 1081 (3rd Cir. 1990) (holding that average sales clause in debtor's lease could not be excised by bankruptcy court). Section 7(D) of the Lease requires Kmart to submit to Harvard a certified statement as to the Gross Sales at the Premises. Kmart has failed to provide such statements to Harvard for the lease years ending January 2002 and January 2003. In short, instead of providing the adequate assurance mandated by 11 U.S.C. § 365(b)(3) Kmart has demonstrated an inability to honor its obligations under the Lease. Its failure to provide any assurance of its

financial stability or that percentage rent will not decline substantially precludes Kmart from assuming the Lease.

7.  Kmart bears the burden of providing Harvard with assurances that its use of the demised premises will conform to the Lease's restrictions. Section 365(b)(3) of the Bankruptcy Code compels a debtor-tenant's compliance with 'radius, location, use or exclusivity provisions' in a lease. The Lease restricts the Debtor's use of the demised premises and prohibits the sale of groceries at the demised premises. See, Lease Section 2(B). Despite the prohibition, Kmart sells (or sold as recently as September 2003) groceries at the demised premises. Kmart's on-going violation of the terms of the Lease and its failure to adequately assure Harvard of its future performance under the Lease should preclude it from assuming the Lease.

8.  Massachusetts law governs the substantive property rights of the parties. See In re Beatrice, 277 B.R. 439 (Bankr. D. Mass. 2002) *citing* Butner v. United States, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding"). The landlord-tenant relationship is based on state contract principles. Berman & Sons, Inc. v. Jefferson, 379 Mass. 196, 199 (1979). A right to terminate a lease contract does not depend upon any default, but is instead a right possessed by one or both parties to the lease by virtue of its terms to end the contract. Williston on Contracts, 4th Ed. Vol. 19, Section 53:41 (2001). Where the parties have negotiated the terms, provisions and conditions of a contract "courts should not undertake to be wiser than the parties." Kobayasho v. Orion Ventures, Inc., 42 Mass. App. Ct. 492, 501 (1997) *(citation omitted)*.

9. From April 2001 through the Petition Date the Debtor failed to pay Harvard common area maintenance charges, real estate taxes and other invoices payable and owing under the Lease, totaling $29,224.95. Kmart's failure to pay such pre-petition charges constitutes a default under the Lease. Section 13.(A)(i) of the Lease provides:

> If Tenant shall default in the payment of any rent or any other sum of money payable by Tenant to Landlord, and if tenant shall fail to cure said default within fourteen (14) days after receipt of notice of said default from Landlord . . . then . . . without waiving any claim for breach of agreement Landlord may send written notice to Tenant of the termination of the term of this lease, and, on the fifth day next following of the sending of the notice the term of this lease shall terminate, Tenant hereby waiving all rights of redemption.

Invoices, statements and correspondence from the former property manager of the Shopping Center made it clear to Kmart that Kmart was past due on its lease obligations. Indeed, an exchange of correspondence between Beal & Company, Inc. and Joyce DeFalco, Kmart's CAM Account Manager, serves to establish that Kmart knew prior to the Petition Date that it was in default under the Lease. See Exhibits 3, 4 and 5 from September 25, 2003 Briskey deposition attached hereto as Exhibits "B", "C" and "D". At the latest, the Lease terminated five days after the receipt by Kmart of the Beal correspondence. Once a lease is terminated the lessee becomes a tenant at sufferance. Staples v. Collins, 321 Mass. 449, 451 (1947); see also Lowell Housing Authority v. Sav-Mor Furniture Stores, Inc., 346 Mass. 426 (1963). A tenant at sufferance has no protectable property interest in continued possession of the premises. In re Saulk Steel Company, Inc., 133 B.R. 431, 438 (Bankr. N.D. Ill. 1991).

10. Section 541(a) of the Bankruptcy Code provides that upon the filing of a petition for relief the Debtor's estate is comprised of, inter alia, "all legal or equitable interests of the debtor in property *as of the commencement of the case.*" 11 U.S.C. § 541(a)(1) (emphasis

added). Section 541(b) of the Bankruptcy Code *excludes* from the debtor's estate "any interest of the debtor as a lessee of nonresidential real property that has terminated at the expiration of the stated term of such lease *before the commencement of the case under this title.*" 11 U.S.C. § 541(b)(2) (emphasis added). Congress did not intend for the rights of landlords of nonresidential real property to be usurped in a bankruptcy proceeding filed after the termination of a lease. See In re Egyptian Brothers Donut, Inc., 190 B.R. 26, 31 (Bankr. D. N.J. 1995) (the accepted rule is that a debtor cannot assume an executory contract or a lease which was terminated prior to the institution of the bankruptcy proceedings). Kmart's pre-petition defaults under the Lease and its failure after notice to cure those defaults in effect terminated the Lease. Kmart did not hold any interest in the Lease or the Premises as of the Petition Date and therefore cannot assume the Lease.

11. The Court should not look beyond the terms of the parties' lease contract to revise, resurrect or reinstate the Lease. "[W]here an executory contract has been terminated in accordance with its terms prior to bankruptcy, Section 365(e)(1) does not authorize the Bankruptcy Court to reach beyond the veil of the petition to reinstate the contract." In re COMP III, Inc. et al, 136 B.R. 636 (Bankr. S.D.N.Y. 1992); see also In re Claremont Acquisition Corporation, Inc. v. General Motors Corporation (In re Claremont Acquisition Corporation, Inc.), 113 F. 3d 1029 (9th Cir. 1997).

12. Even if the Court finds that the Lease was not terminated prior to the Petition Date, Kmart should not be authorized to assume the Lease. Harvard has notified Kmart of several non-monetary post-petition defaults under the Lease. Not only has Kmart violated the lease terms by selling food products at the demised premises, but is has maintained storage trailers at the Shopping Center and failed to provide Harvard with evidence of insurance

covering the premises. (Although at her September 25, 2003 Rule 30(b)(6) Patricia Briskey testified that she believed that Kmart was self-insuring the demised premises, the Lease requires that "insurance shall be written by responsible insurance companies authorized to do business in the state wherein the Shopping Center is located." Lease, pp. 24, Section 10(B)). As of September 30, 2003 Kmart has not cured its various post-petition defaults under the Lease. Even assuming, *arguendo*, that the Lease did not terminate pre-petition, Kmart's failure to cure its post-petition defaults may cause the post-petition termination of the Lease. Kmart should not be authorized to assume the Lease.

WHEREFORE, Harvard Real Estate-Allston, Inc. prays that the Court finds that the Debtor may not assume the Lease, and that the Court grant Harvard Real Estate-Allston, Inc. such other further relief as is proper and just.

HARVARD REAL ESTATE-ALLSTON, INC.
By its attorneys,

Richard A. Sheils, Jr. (BBO#457290)
Adrea S. Marshall (BBO# 652505)
Bowditch & Dewey, LLP
311 Main Street
P.O. Box 15156
Worcester, MA 01601-0156
Tel: (508) 791-3511
Fax: (508) 929-3047

and

Michael S. Terrien, Esq.
Jenner & Block, LLC
One IBM Plaza
Chicago, Illinois 60611
Tel: (312) 222-9350
Fax: (312) 527-0484

Dated: September 30, 2003

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | Case No. 02-B02474 |
| KMART CORPORATION, et al., ) | Hon. Susan Pearson Sonderby |
| ) | |
| Debtors. ) | |
| ) | (Jointly Administered) |

## STIPULATION OF THE DEBTORS AND HARVARD REAL ESTATE-ALLSTON, INC. ("OBJECTOR")

WHEREAS, Objector filed an "Objection of Harvard Real Estate-Alston, Inc. To First Amended Joint Plan of Reorganization of Kmart Corporation and its Affiliated Debtors and Debtors-In-Possession and "Assumption Objection" of Harvard Real Estate-Alston, Inc." dated as of April 4, 2003 (Docket No. 10044) (as the same may be supplemented or amended, the "Objection");

WHEREAS, the hearing on confirmation of the Debtors' Plan is set for April 14-15, 2003;

WHEREAS, the Objection is set for hearing on April 14-15, 2003;

WHEREAS, the Debtors and the Objector have conferred and agree that it is in the best interest of efficiency and economy for the Objection to be heard on a date other than the hearing on confirmation of the Debtors' Plan set for April 14-15, 2003;

NOW, THEREFORE, the parties agree as follows:

1. The Debtors and the Objector agree that the Objection may be heard on a date other than the originally scheduled dates of April 14-15, 2003, subject to Order of the Court.

2. The Objector agrees that it will not assert the fact that the Objection may be heard post-confirmation as a basis for its Objection, and the Debtors agree that they will not assert the fact that the Objection may be heard post-confirmation as a basis for their opposition to the Objection.

3. The entry by the Court of an order confirming the Debtors' Plan shall not be construed as authorizing or effecting the assumption by Kmart of the Lease (defined in the

{J:\CLIENTS\ban\082302\0116\00351580.DOC;2}

Objection) or otherwise acknowledging Debtors' compliance with 11 U.S.C. §365(b) or (d) (3) with respect to the Lease.

Respectfully submitted,

| KMART CORPORATION, | HARVARD REAL ESTATE-ALLSTON, INC. |
|---|---|
| By: _____ | By: _____ |
| Charles F. Smith | Richard A. Sheils, Jr. |
| Skadden, Arps, Slate, | Bowditch & Dewey, LLP |
|   Meagher & Flom (Illinois) | 311 Main Street, P.O. Box 15516 |
| 333 West Wacker Drive, Suite 2100 | Worcester, MA  01615-0156 |
| Chicago, IL  60606 | 508-926-3432 |
| 312 407-0700 | |

April 13, 2003

{J:\CLIENTS\ban\082302\0116\00351580.DOC;2}

Objection) or otherwise acknowledging Debtors' compliance with 11 U.S.C. §365(b) or (d) (3) with respect to the Lease.

Respectfully submitted,

| KMART CORPORATION, | HARVARD REAL ESTATE-ALLSTON, INC. |
|---|---|
| By:_____ | By: /s/ Richard A. Sheils, Jr. |
| Charles F. Smith | Richard A. Sheils, Jr. |
| Skadden, Arps, Slate, | Bowditch & Dewey, LLP |
| Meagher & Flom (Illinois) | 311 Main Street, P.O. Box 15516 |
| 333 West Wacker Drive, Suite 2100 | Worcester, MA  01615-0156 |
| Chicago, IL  60606 | 508-926-3432 |
| 312 407-0700 | |

April 13, 2003

{J:\CLIENTS\ban\082302\0116\00351580.DOC;2}

# Beal.

Property Management
Beal and Company, Inc., 177 Milk Street, Boston, Massachusetts 02109-3410
617 451-2100   Telecopier 617 451-1801



January 23, 2002

Kmart Corporation
Attn: Joyce DiFalco, Lease Administrator
Resource Center
3100 West Big Beaver Road
Troy, MI 48084-3163

Re: <u>Kmart # 9424 – Brighton, MA</u>  Reply to Letter dated 12/11/01 re: Common Area Maintenance Charges (CAM C)

Dear Ms. DiFalco

I have reviewed your comments regarding certain expense items included in the CAMC reconciliation invoice for the period June 1, 2000 – May 31, 2001. Following are explanations of the expenses that you have disputed and why they are to be included in CAMC. I have removed the Water & Sewer charges and the Roof Repair costs and have explained why.

Enclosed is a revised CAMC invoice.

<u>Maintenance Labor</u>
The items of payroll taxes, group insurance, WC and pension plan contributions are all direct and necessary costs of employment of staff, either by law or common practice, which employment is for the purpose as stated in the Lease "…. keep in repair all common areas of the Shopping Center and the lighting system and drainage system serving said common areas…. that it will keep all common areas reasonably free of refuse and obstruction and reasonably free of snow and ice…."   Article 2 Section (D).

<u>Rubbish Removal</u>
This charge does not include any costs for the disposal of Kmart or another Tenant's rubbish. The container is required for the sole purpose of holding the daily pickup of litter left in the Parking Lot and Common Areas by customers of the Shopping Center. The other charges are for the pickup and disposal of large items, such as household appliances and furniture and other items, left in the parking lot and common areas by unknown persons. There is no basis for reducing this cost by 50%.

<u>Electricity Parking Lot & Common Areas</u>
The Parking Lot and Common Area illumination is controlled by photo cells. The period of time the lights are on varies by calendar season. The Parking Lot and Common Areas must be illuminated during evening hours for security reasons and not for extended hours of any Tenant's business hours. There is no basis for reducing this cost by 50%.

# Beal.

January 23, 2002   Page 2

Re: Kmart # 9424 – Brighton, MA  Reply to Letter dated 12/11/01 re: Common Area Maintenance Charges (CAM C)

### Water & Sewer
A connection and meters were installed several years ago for the use in the planter areas and common areas. The City has not yet billed for this usage. When it is billed, by the City, the CAMC will include charges from the beginning of service. The Water & Sewer costs have been removed from the CAMC expenses on the Revised Invoice.

### Common Area Repairs
The Roof repair costs of $1,806.00 have been removed from CAMC expenses on the Revised Invoice. All the other expenses in this category are either costs related to the communications, employment, and repairs required in accomplishing the provisions of Article 2 Section (D).

### Security
The security requirements are always under review and at this time there is a continuing need for security at this site.

Should you have any further questions regarding the above please contact me at 617-451-2100.

Please forward payment of the revised net amount due.

Sincerely,

*[signature]*

Stephen N. Faber
Vice President, Property Management



Property Management
Beal and Company, Inc., 177 Milk Street, Boston, Massachusetts 02109-3410
617 451-2100   Telecopier 617 451-1801

<u>R E V I S E D   I N V O I C E</u>
1/22/2002

July 12, 2001                                                                                       Control # 4001-4000

Kmart Corporation
Real Estate Accounting   Store # 9424
3100 West Big Beaver Road
Troy, MI 48084-3163

Re: **Brighton Mills Shopping Center, Brighton, MA 02135**

---

The following is the calculation of your Common Area Maintenance Charges (CAMC) for the period June 1, 2000 - May 31, 2001:

<u>Actual Common Area Maintenance Charges for the FYE 5/31/01:</u>

| | |
|---|---:|
| Actual CAMC 6/1/00 -5/31/01 | $ 223,501.76 |
| Tenant Percentage | X   34.0014% |
| Tenant Share of CAMC | $   75,993.73 |
| Less Previously Invoiced | $  (58,609.92) |
| Revised Amount Due | $   17,383.81 |
| Less paid to date | $  (10,367.41) |
| **AMOUNT DUE** | $    7,016.40 |

Please make your check payable to: Brighton Mills Shopping Center
                                                         c/o Beal and Company, Inc.
                                                         177 Milk Street
                                                         Boston, MA 02109-3410

Beal.

## Brighton Mills Shopping Center
### Revised Schedule of Estimated Common Area Maintenance Charges
### June 1, 2000 - May 31, 2001

### Kmart Corporation

| | |
|---|---:|
| Maintenance Labor | $ 29,848.88 |
| Rubbish Removal | 3,048.90 |
| Electricity - Parking Lot & Common Areas | 26,543.71 |
| Water & Sewer - Common Areas | 0.00 |
| Common Area Repairs | 1,278.12 |
| Security | 39,913.98 |
| Grounds Care | 23,903.13 |
| Parking Lot Maintenance & Control | 26,242.81 |
| Snow Removal | 72,722.23 |
| Insurance | Billed Separately |
| | |
| Total Actual CAMC June 1, 2000 - May 31, 2001 | $ 223,501.76 |

# Beal.

Property Management
Beal and Company, Inc., 177 Milk Street, Boston, Massachusetts 02109-3410
617 451-2100   Telecopier 617 451-1801

VIA FEDERAL EXPRESS

November 13, 2001

Ms Joyce Difalco
KMART Corporation
Real Estate Accounting Store #9424
3100 West Big Beaver Road
Troy, Michigan 48084-3163

RE:   **Outstanding balance due Harrow Corporation (Brighton Mills Shopping Center, Brighton, MA 02135 Store #0942401)**

Dear Joyce:

Per the attached schedule our records indicate KMART owes Brighton Mills shopping center $34,215.63. For your convenience we have provided you a schedule that shows how we arrived at the outstanding amount. In summary it appears KMART has not adjusted their books to reflect the increase in common area operating expenses (CAM) beginning in August 2000 and 2001, respectively. In addition, CAM expenses were trued up as of May 2001 and you were billed accordingly. Please review the attached documentation and send the property a check for the entire outstanding balance.

If you have any questions please contact Jean Cui at 617-451-2100, Ext 205.

Sincerely,

Alan M. Olans
Controller



Receivable Detail by Charge Code
Brighton Mills Shopping Center (4001)
mm/yy Range: Jan 01 - Sep 01
T-Kmart

| Charge Notes | | Charges | Receipt Date | Paid Check # | Receipt Amount | Balance Due |
|---|---|---|---|---|---|---|
| (Prepayment) | Dec-00 | | 1/1/2001 | Prepaid | $   179.25 | |
| Rent (01/01) | 1-Jan | $ 18,750.00 | 1/2/2001 | # 3472 | 18,750.00 | |
| Common Area Mainte | | 4,884.16 ** | 1/2/2001 | # 3472 | 4,379.82 | |
| | | 23,634.16 | | | 23,309.07 | $   325.09 |
| Rent (02/01) | 1-Feb | 18,750.00 | 2/1/2001 | # 2496 | 18,750.00 | |
| Common Area Mainte | 1-Feb | 4,884.16 | 2/1/2001 | # 2496 | 4,379.82 | |
| 1XRETax3rdQTR'01 | 1-Feb | 57,706.86 | 3/26/2001 | # 1110 | 57,706.86 | |
| | | 81,341.02 | | | 80,836.68 | 504.34 |
| Rent (03/01) | 1-Mar | 18,750.00 | 3/1/2001 | # 7744 | 18,750.00 | |
| Common Area Mainte | 1-Mar | 4,884.16 | 3/1/2001 | # 7744 | 4,379.82 | |
| | | 23,634.16 | | | 23,129.82 | 504.34 |
| Rent (04/01) | 1-Apr | 18,750.00 | 4/2/2001 | # 7186 | 18,750.00 | |
| Common Area Mainte | 1-Apr | 4,884.16 | 4/2/2001 | # 7186 | 4,379.82 | 504.34 |
| RETax 4thQTR'01 | 1-Apr | 57,706.86 | 4/23/2001 | # 1788 | 57,706.86 | |
| 1X W/O-Lomo.C. | 1-Apr | 180.00 | | | - | 180.00 ** |
| | | 81,521.02 | | | 80,836.68 | 684.34 |
| Rent (05/01) | 1-May | 18,750.00 | 5/1/2001 | # 3411 | 18,750.00 | |
| Common Area Mainte | 1-May | 4,884.16 | 5/1/2001 | # 3411 | 4,379.82 | |
| | | 23,634.16 | | | 23,129.82 | 504.34 |
| Rent (06/01) | 1-Jun | 18,750.00 | 6/4/2001 | # 1963 | 18,750.00 | |
| Common Area Mainte | 1-Jun | 4,884.16 | 6/4/2001 | # 1963 | 4,379.82 | |
| | | 23,634.16 | | | 23,129.82 | 504.34 |
| Rent (07/01) | 1-Jul | 18,750.00 | 7/2/2001 | # 8679 | 18,750.00 | |
| Common Area Mainte | 1-Jul | 4,884.16 | 7/2/2001 | # 8679 | 4,379.82 | |
| | | 23,634.16 | | | 23,129.82 | 504.34 |
| Rent (08/01) | 1-Aug | 18,750.00 | 8/2/2001 | # 4795 | 18,750.00 | |
| Common Area Mainte | 1-Aug | 6,476.78 ** | 8/2/2001 | # 4795 | 4,379.82 | 2,096.96 |
| 1X CAM Actual '01 | 1-Aug | 19,111.42 | | | | 19,111.42 ** |
| 1X CAM Estimated 6-7 | 1-Aug | 3,185.24 | | | | 3,185.24 ** |
| RETax '02 1st QTR | 1-Aug | 57,136.23 | 8/7/2001 | # 3439 | 57,136.23 | - |
| | | 104,659.67 | | | 80,266.05 | 24,393.62 |
| Rent (09/01) | 1-Sep | 18,750.00 | 9/4/2001 | # 4058 | 18,750.00 | |
| Common Area Mainte | 1-Sep | 6,476.78 | 9/4/2001 | # 4058 | 4,379.82 | |
| | | 25,226.78 | | | 23,129.82 | 2,096.96 |
| Rent (10/01) | 1-Oct | 18,750.00 | 10/1/2001 | # 8599 | 18,750.00 | |
| Common Area Mainte | 1-Oct | 6,476.78 | 10/1/2001 | # 8599 | 4,379.82 | |
| | | 25,226.78 | | | 23,129.82 | 2,096.96 |
| Rent (11/01) | 1-Nov | 18,750.00 | 11/2/2001 | # 4114 | 18,750.00 | |
| Common Area Mainte | 1-Nov | 6,476.78 | 11/2/2001 | # 4114 | 4,379.82 | |
| | | 25,226.78 | | | 23,129.82 | 2,096.96 |
| | | Total Charged | | | Total Paid | Balance Due As of 11/09/2001 |
| Total | | $ 461,372.85 | | | $ 427,157.22 | $   34,215.63 |

** Attached backup

## Receivable Detail by Charge Code
### Brighton Mills Shopping Center (4001)
mm/yy Range: Oct 01 - Nov 01
Sort By: Date

Page 1
11/9/2001
04:17 PM

| Code | Name | Charge Number | Charge Code | Charge Notes | Charge Date | Prior Balance | Current Charges | Receipt Date | Receipt Number | Receipt Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| -Kmart | Kmart Corporation Store#9 | 13900 | CAM | Common Area Mainte | 01/01 | 325.09 | | | | | 325.09 |
| | | 14441 | CAM | Common Area Mainte | 02/01 | 504.34 | | | | | 504.34 |
| | | 14894 | CAM | Common Area Mainte | 03/01 | 504.34 | | | | | 504.34 |
| | | 15498 | CAM | Common Area Mainte | 04/01 | 504.34 | | | | | 504.34 |
| | | 15837 | Work | 1X W/O-Lomo.C. | 04/01 | 180.00 | | | | | 180.00 |
| | | 15916 | CAM | Common Area Mainte | 05/01 | 504.34 | | | | | 504.34 |
| | | 16466 | CAM | Common Area Mainte | 06/01 | 504.34 | | | | | 504.34 |
| | | 17032 | CAM | Common Area Mainte | 07/01 | 504.34 | | | | | 504.34 |
| | | 17398 | CAM | Common Area Mainte | 08/01 | 2,096.96 | | | | | 2,096.96 |
| | | 17772 | CAM | 1X CAM Actual '01 | 08/01 | 19,111.42 | | | | | 19,111.42 |
| | | 17773 | CAM | 1X CAM Estimated 6-7 | 08/01 | 3,185.24 | | | | | 3,185.24 |
| | | 17936 | CAM | Common Area Mainte | 09/01 | 2,096.96 | | | | | 2,096.96 |
| | | 18424 | RentComm | Rent (10/01) | 10/01 | | 18,750.00 | 10/01/01 | 8531 | 18,750.00 | 0.00 |
| | | 18425 | CAM | Common Area Mainte | 10/01 | | 6,476.78 | 10/01/01 | 8531 | 4,379.82 | 2,096.96 |
| | | 18855 | Retx | REtax 2nd Q | 10/01 | | 57,136.24 | 10/15/01 | 8718 | 57,136.24 | 0.00 |
| | | 18893 | RentComm | Rent (11/01) | 11/01 | | 18,750.00 | 11/02/01 | 8865 | 18,750.00 | 0.00 |
| | | 18894 | CAM | Common Area Mainte | 11/01 | | 6,476.78 | 11/02/01 | 8865 | 4,379.82 | 2,096.96 |
| | | | | | | 30,021.71 | 107,589.80 | | | 103,395.88 | 34,215.63 |

**BIG K** ~~SuperK~~  Kmart Corporation

62-35/311
CHECK NUMBER: 011063472

PAY : TWENTY-THREE THOUSAND ONE HUNDRED TWENTY-NINE AND 82/100 DOLLARS

TO THE ORDER OF
HARROW CORPORATION
% THE BEAL COMPANIES
BOSTON    MA

CHECK DATE: 01/02/2001
CHECK AMOUNT: *****23,129.82

THE BANK OF NEW YORK (DELAWARE)
NEWARK, DELAWARE

VOID AFTER 6 MONTHS

AUTHORIZED SIGNATURE (SIGNATURE LINE CONTAINS KMART LOGO)

THIS DOCUMENT IS PRINTED IN BLUE INK AND CONTAINS SECURITY FEATURES ON BOTH SIDES. DO NOT ACCEPT UNLESS THESE SECURITY FEATURES ARE PRESENT.

⑈011063472⑈ ⑆031100351⑆ ⑈0300975174⑈

| | Kmart Corporation | 62-35/311 |
|---|---|---|
| | | CHECK NUMBER: 011092496 |

PAY : TWENTY-THREE THOUSAND ONE HUNDRED ***32/100 DOLLARS
TO THE ORDER OF
HARROLD WORTHINGTON
% THE BEAL COMPANIES
BOSTON               MA

| CHECK DATE | CHECK AMOUNT |
|---|---|
| 02/01/2001 | *****23,129.82 |

THE BANK OF NEW YORK (DELAWARE)
NEWARK, DELAWARE

VOID AFTER 6 MONTHS

AUTHORIZED SIGNATURE   (SIGNATURE LINE CONTAINS KMART LOGO)

THIS DOCUMENT IS PRINTED IN BLUE INK AND CONTAINS SECURITY FEATURES ON BOTH SIDES. DO NOT ACCEPT UNLESS THESE SECURITY FEATURES ARE PRESENT.

⑈011092496⑈ ⑆031100351⑆ ⑈0300975174⑈