**EXHIBIT I**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


In re:                          )
                                ) No. 02 B 02474
KMART CORPORATION, ET AL.,      )
                                ) Chicago, Illinois
                                ) September 29, 2004
                    Debtors.    ) 2:00 p.m.


EXCERPT (A) OF PROCEEDINGS BEFORE THE
HONORABLE SUSAN PIERSON SONDERBY


APPEARANCES:

MR. WILLIAM BARRETT
MR. DAVID GORDON
on behalf of Kmart Corporation;

MR. ROBERT VORT (TELEPHONICALLY)
on behalf of David Rots;

MR. JEFFREY DAN
on behalf of Gator;

MR. MICHAEL EIDELMAN
on behalf of the Jankowskis;

MR. LAURENCE ABLE
on behalf of Marie Rivera;

MR. ALAN FARNELL
on behalf of Dawn Hawkins.

2

1   * * * * * * * * * * * *

2       THE COURT:  All right.  I will read my oral

3   ruling into the record.

4       This matter comes before the court on

5   the motion of Harvard -- strike that, on the motion

6   of Kmart for preliminary injunction.  Kmart seeks to

7   preliminarily enjoin Harvard Real Estate-Allston,

8   Inc., a landlord, quote, "from evicting Kmart based

9   upon defaults alleged or that could have been

10  alleged in Harvard's pre-confirmation objection to

11  Kmart's assumption of its lease and from violating

12  the discharge injunction and confirmation order,"

13  end of quote.

14      Harvard leases a store located in

15  Brighton, Massachusetts, to Kmart under a certain

16  lease dated January 26th, 1978.  Section 2(B) of the

17  lease provides the tenant -- strike that.

18  Section 2(B) of the lease prohibits the tenant from

19  operating inter alia a grocery, meat, produce, milk,

20  or bakery department in the store.

21      Kmart currently devotes approximately

22  10 percent of the total 80,000 square footage of the

23  store to the sale of certain food items.  The items

24  are displayed on four, 60-foot-long shelving units

25  at the center rear of the store.

3

1    On January 22nd, 2002, Kmart and 37

2  affiliates filed voluntary petitions for

3  reorganization under Chapter 11.   On February 26th,

4  2003, the debtors filed the first amended joint plan

5  of reorganization.

6    On March 28th, 2003, Kmart notified

7  Harvard that it intended to seek authority to assume

8  the lease pursuant to Section 365 of the Bankruptcy

9  Code as part of its plan.   On April 4th, 2003,

10  Harvard filed an objection to the plan, arguing that

11  the lease could not be assumed because Kmart was in

12  default for failure to pay certain CAM charges, real

13  estate taxes and work orders.   Harvard alternatively

14  argued that Kmart's prepetition exercise of an

15  option to extend the lease was ineffective because

16  there were unpaid monetary defaults at the time.

17  According to Harvard, the failed attempt to extend

18  the lease resulted in its termination prior to the

19  petition date.  As such, there was nothing for

20  Kmart, as debtor-in-possession, to assume.

21    The parties agreed to treat the

22  assumption objection separate from the plan

23  confirmation process.   On April 23rd, 2003, this

24  court entered an order confirming the plan.   The

25  effective date of the plan was May 6th, 2003.   The

4

1    parties commenced discovery relating to the

2    assumption objection in July of 2003.

3              Kmart filed a response to the

4    assumption objection and Harvard filed a reply,

5    adding its argument that the ongoing violation of

6    the lease's prohibition against selling groceries

7    precluded Kmart's assumption of the lease.  The

8    court thereafter scheduled an evidentiary hearing on

9    the assumption objection for March 18th and 19th,

10   2004.

11             On January 29th, 2004, Harvard filed a

12   document with the court entitled, quote, "Withdrawal

13   of assumption objection," end of quote.  On

14   February 5th, 2004, Kmart filed a motion to dismiss

15   the assumption objection with prejudice.

16             At that hearing, the parties advised

17   that they had reached an agreement.  The court

18   directed the parties to submit a proposed draft

19   order.  On April 2nd, 2004, the court entered the

20   agreed order they submitted, which provided, in

21   part, quote, "(i), the motion to dismiss is granted

22   as set forth herein, (ii) the objection is dismissed

23   with prejudice as of the effective date of Kmart's

24   joint plan of reorganization, May 6th, 2003, and

25   (iii) Kmart is deemed to have assumed the lease as

5

1    of the effective date," end of quote.   The court

2    will refer to that order as the "assumption order."

3              On April 23rd, 2004, less than a month

4    after the entry of the assumption order, Harvard

5    issued a, quote, "notice to vacate, slash, notice of

6    termination," end of quote, to Kmart.  The notice

7    states, inter alia, that Kmart was in default due to

8    its continuing sale of grocery items.  Harvard

9    advised that if Kmart did not voluntarily vacate the

10   store within 30 days of receipt of the notice,

11   Harvard would commence state court eviction

12   proceedings.

13             On May 5th, 2004, Kmart filed this

14   adversary complaint.  In Count I, Kmart seeks the

15   entry of an order declaring that Harvard is, quote,

16   "precluded from attempting, on the basis of defaults

17   that were or could have been raised in the

18   assumption objection and that were resolved by the

19   order dismissing the assumption objection and the

20   confirmation order, to terminate the lease or to

21   evict Kmart," end of quote.

22             In Count II Kmart seeks a declaration

23   that Harvard, quote, "has no further right in this

24   or any other court to assert defaults alleged in the

25   course of the assumption objection that were known

6

1    or should have been known when Kmart gave notice

2    that it would assume the lease subject only to those

3    monetary claims asserted in Harvard's cure claim and

4    a ruling that Harvard's notice of default and the

5    commencement of any eviction proceeding based

6    thereon constitute a violation of the discharge

7    injunction contained in the confirmation order," end

8    of quote.

9              Kmart alleges in the complaint that

10   this court has subject matter jurisdiction over the

11   entire proceeding.  Although Harvard denies that

12   allegation in its answer, the parties did not

13   further address the issue of jurisdiction.  The

14   court must nonetheless determine as a threshold

15   matter whether it has subject matter jurisdiction

16   over this proceeding.  See In re Federated

17   Department Stores, Inc., 240 B.R. 711.

18             Subject matter jurisdiction is

19   generally defined as, quote, "the court's authority

20   to hear a given type of case," end of quote, citing

21   U.S. v. Morton, 104 Supreme Court 2769.  Quote, "The

22   jurisdiction of bankruptcy courts, like that of

23   other federal courts, is grounded in, and limited

24   by, statute," end of quote, citing Celotex Corp.

25   versus Edwards, 514 U.S. 300.  Section 1334(b) of

7

1   Title 28 of the United States Code is the source of

2   bankruptcy court jurisdiction, giving district

3   courts original but not exclusive jurisdiction over

4   all civil proceedings arising under Title 11 or

5   arising in or related to cases under Title 11.   Id.

6   The district courts may, as they have in this

7   district, refer those proceedings to bankruptcy

8   judges.  Id.

9          In Celotex, the Supreme Court agreed

10  with the view that, quote, "Congress intended to

11  grant comprehensive jurisdiction to the bankruptcy

12  courts so that they might deal efficiently and

13  expeditiously with all matters connected with the

14  bankruptcy estate," end of quote.  Id. at 308

15  quoting Pacor Inc. versus Higgins, 343 (sic) F.2d

16  984.  Quote, "related to," end of quote,

17  jurisdiction, encompasses more than proceedings

18  involving the property of the debtor or the estate.

19  Id.  Such jurisdiction, however, is not boundless.

20  Id.  In the Seventh Circuit, related to jurisdiction

21  is limited to dispute whose resolution, quote,

22  "affects the amount of property available for

23  distribution or the allocation of property among

24  creditors," end of quote, citing Home Insurance

25  Company versus Cooper & Cooper, Limited, 889 F.2d

8

1    746.

2              Bankruptcy subject matter jurisdiction

3    is sharply reduced following confirmation of a

4    Chapter 11 plan, citing In re Spiers Graff Spiers,

5    190 B.R. 1001, citing Pettibone Corp. versus Easley,

6    935 F.2d 120.  The Seventh Circuit in Zerand-Bernal

7    Group, Inc., versus Cox observed that while the

8    language of Section 1334(b) is broad enough to

9    encompass matters such as the post-confirmation

10   injunction sought in that case, the section should

11   not be read so broadly, 23 F.3d 159.  Rather, it

12   should be construed in light of the purposes of its

13   enactment.  Id.  The purpose of a bankruptcy

14   reorganization that is dealing efficiently and

15   expeditiously with all matters connected with the

16   bankruptcy estate is certainly diminished after

17   confirmation.  See In re Cary Metal Products, Inc.,

18   152 B.R. 927.  Indeed, the Seventh Circuit has

19   repeatedly observed that the confirmed debtor must

20   come out from under bankruptcy court tutelage and

21   therefore, quote, "may not come running to the

22   bankruptcy judge every time something unpleasant

23   happens," end of quote, citing Pettibone, 935 F.2d

24   at 122.  Simply put, bankruptcy does not last

25   forever.  See Id. at 120.

9

1    However, quote, "whether emanating

2  from the general power of courts to enforce their

3  decrees or from specific bankruptcy code sections,

4  there exists a residue, albeit limited, of

5  bankruptcy court authority over a confirmed plan

6  Chapter 11 case," end of quote, citing In re Kewanee

7  Boiler Corp., 198 B.R. 519.

8    There are a number of possible sources

9  for this residual authority, see Id.  First Section

10  105 of the Code empowers bankruptcy judges, quote,

11  "to issue any order, process, or judgment that is

12  necessary or appropriate to carry out the

13  provisions," end of quote, of the Code and to sua

14  sponte take any action or make any determination,

15  quote, "necessary or appropriate to enforce or

16  implement court orders or rules or to prevent an

17  abuse of process," end of quote.  11 U.S.C. Section

18  105(a).

19    Importantly, Section 105 is an aid to

20  jurisdiction, not a source of jurisdiction, citing

21  In re Sybaris Clubs International, Inc., 189 B.R.

22  152.  Moreover, the Section 105 power, quote, "must

23  and can only be exercised within the confines of the

24  Bankruptcy Code," end of quote, citing Norwest Bank

25  Worthington versus Ahlers, 485 U.S. 197.

10

1    Another possible source of statutory

2 power that may survive confirmation is found at

3 Section 1142(b) of the Code.  That section empowers

4 a court inter alia to direct the debtor and any

5 other necessary party to reform acts, quote,

6 "necessary for the consummation of the plan," end of

7 quote.

8    Yet another source of power is found

9 at Federal Bankruptcy Rule 3020(d), which provides,

10 quote, "Notwithstanding the entry of the order of

11 confirmation, the court may issue any other --"

12 strike that, "any order necessary to administer the

13 estate," end of quote.

14    After confirmation of the plan,

15 bankruptcy judges usually only invoke the powers

16 given to them, whether under Sections 105 or 1142(b)

17 or Bankruptcy Rule 3020(d) to, quote, "ensure that

18 reorganization plans are implemented and to protect

19 estate assets devoted to implement the confirmed

20 plan," end of quote, citing In re Schwinn Bicycle

21 Company, 210 B.R. 747.  Indeed, a bankruptcy judge's

22 powers are limited to take only those actions that

23 aid its jurisdiction, which, as noted before, is

24 sharply reduced post-confirmation.  See Kewanee, 270

25 B.R. 912, which holds that, quote, "bankruptcy

11

1   judges are not ombudsmen licensed to adjudicate

2   every post-confirmation problem affecting a debtor

3   or its creditors.  They can only decide matters

4   after confirmation within their more narrow

5   jurisdiction," end of quote, and Cunningham versus

6   Pension Benefit Guarantee Corp., 235 B.R. 609, that

7   held, quote, "Section 105 is only meaningful to the

8   extent that the matter arises under core or related

9   jurisdiction," end of quote.

10          One final point about bankruptcy court

11   jurisdiction and bankruptcy court power.  The

12   Seventh Circuit has held that, quote, "discharge

13   brings into existence a perpetual injunction, making

14   the bankruptcy proceeding a continuous, ongoing

15   proceeding as to anyone bound by the injunction,"

16   end of quote, citing matter of Hendrix, 986 F.2d

17   195.  Therefore, a bankruptcy court has jurisdiction

18   over post-confirmation matters concerning

19   modification of the discharge injunction, id., or

20   violation of the discharge injunction, citing

21   Kewanee Boiler, 270 B.R. at 921.

22          In this matter, this court's

23   jurisdiction over Count I, which seeks a declaration

24   concerning the res judicata effect of the assumption

25   order, is questionable at best.  For one thing,

12

1    Kmart, who has the burden, has not demonstrated that

2    this court's determination of the preclusive effect

3    of the assumption order would affect the amount of

4    property available for distribution or the

5    allocation of property among creditors.  Even if one

6    of those effects was demonstrated, there remains the

7    question of whether the court would invoke the power

8    to interpret the preclusive effect of the assumption

9    order given that such an analysis hardly appears

10   necessary to ensure the implementation of the plan

11   or to protect an estate asset devoted to the plan.

12            Moreover, as pointed out by the

13   Seventh Circuit in Pettibone, the res judicata

14   effect of an order entered in the first case is

15   usually for the judge presiding in the second case

16   to decide, citing Pettibone 935 F.2d at 123.

17   Reorganized Kmart is certainly free to raise res

18   judicata as a defense in the state court.  After

19   confirmation, the reorganized firm is like any other

20   business that protects its interests by pleading

21   appropriate defenses to actions, Id.

22            While jurisdiction over Count I is

23   therefore doubtful, jurisdiction over Count II,

24   which concerns the possible violation of the plan

25   discharge injunction, is fairly clear.  Finding

13

1   jurisdiction over at least one of the counts, the

2   court will therefore proceed to address the motion

3   seeking preliminary injunctive relief.

4           In the motion's prayer for relief,

5   Kmart asks the court to, quote, "preliminarily

6   enjoin Harvard from evicting Kmart based upon

7   defaults alleged or that could have been alleged in

8   the assumption objection and from violating the

9   discharge injunction and the confirmation order,"

10  end of quote.  That request essentially raises two

11  alternative grounds for injunctive relief.

12          The request for a preliminary

13  injunction to enforce a discharge injunction, which

14  may be more appropriately considered as a motion to

15  hold Harvard in contempt for violating the discharge

16  injunction, was not developed after the perfunctory

17  reference in the motion's prayer for relief.  For

18  example, the request was not discussed at the

19  hearing or in the post-trial briefs.  Accordingly,

20  the court will not consider it, see United States

21  versus Lanzotti, 205 F.3d 951 and Head Start Family

22  Education Program, Inc., versus Cooperative

23  Educational Service, 46 F.3d 629.

24          The second ground for preliminary

25  injunctive relief is based on principles of res

14

1  judicata.  Specifically, Kmart is asking for a

2  preliminary injunction to prevent Harvard from using

3  the defaults that were purportedly resolved by the

4  assumption order as a predicate for an eviction

5  proceeding or for termination of the lease.

6           The Seventh Circuit has noted, and

7  Kmart correctly contends, that a request for an

8  injunction meant to protect the court's jurisdiction

9  does not require proof of all four, quote,

10  "traditional," end of quote, injunctive relief

11  factors, citing Fisher versus Apostolou, 155 F.3d

12  876.  The movant need only demonstrate likelihood of

13  success on the merits and lack of harm to the public

14  interest.  Id.  See also Klay versus United

15  Healthgroup, Inc., 376 F.3d 1092, distinguishing

16  between traditional, statutory and all-writs types

17  of injunction relief.

18           What Kmart seeks here is an

19  injunction, quote, "to protect the effectiveness of

20  this court's orders," end of quote, see Kmart's

21  proposed findings and conclusions at page 8.  Kmart

22  prefers to have this court rule on the preclusive

23  effect of the assumption order rather than allowing

24  the issue to be adjudicated through the ordinary

25  methods of defensive pleading in the context of an

15

affirmative res judicata defense in state court.  As previously noted, however, the Seventh Circuit has stated that, quote, "disputes about the effect of a decision in one case on the prosecution of another are for the judge presiding in the second case.  In the law of preclusion, the second court normally determines the effects of the first judge's order," end of quote, citing Pettibone 935 F.2d at 123.

It is true that an injunction to protect the preclusive effect of an order may, in certain instances, be warranted.  Quote, "Res judicata injunctions are most easily justified to protect against a clear demonstration that vexatious, multiplicitous, and harassing litigation of the same claim has not been deterred effectively by ordinary methods of defensive pleading," end of quote, citing Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction 2nd, paragraph -- strike that, Section 4405.

An injunction to protect the preclusive effect of an order may also be justified where, quote, "the particularly tangled nature of the controversy will require the second court to invest great effort in becoming sufficiently familiar with the underlying dispute to make an

16

1    intelligent preclusion ruling," end of quote.   Id.

2              Again, while under those circumstances

3    an injunction based on res judicata may be

4    appropriate, it is ordinarily to be avoid because

5    the, quote, "first court should not lightly usurp

6    the jurisdiction of a second court to dispose a

7    pending litigation," end of quote.   Id.

8              Here, there is no evidence of

9    vexatious, multiplicitous or harassing litigation of

10   the same claims.   Indeed, Harvard has not even filed

11   a lawsuit in state court.   Moreover, the factual and

12   procedural history leading to entry of the

13   assumption order is relatively straightforward and

14   will not cause significant duplication of effort

15   should the dispute eventually reach a state court

16   judge.

17             For all of these reasons, Kmart's

18   request for a preliminary injunction is denied.

19             Counsel for Harvard, would you give me

20   a minute order, please, for reasons cited on the

21   record, entering the relief entered.

22             All right.   We need a status then on

23   the complaint.

24        MR. BARRETT:   I would suggest

25   December 14th.

17

1    THE COURT: December 14th it is, 10:00 a.m.

2         Anything else?

3    MR. BARRETT: Nothing else today.  Thank

4  you.

5         (End of excerpt (A) had in the
         above-entitled cause, September
6         29, 2004.)

7

8  I, GARY SCHNEIDER, CSR, RPR, DO HEREBY CERTIFY THAT
   THE FOREGOING IS A TRUE AND ACCURATE EXCERPT (A) OF
9  PROCEEDINGS HAD IN THE ABOVE-ENTITLED CAUSE.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25