UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-CV-12249-DPW

| | | |
|---|---|---|
| HARVARD REAL ESTATE–ALLSTON, INC., | ) | |
| Plaintiff, | ) | |
| | ) | HARVARD'S REPLY TO |
| v. | ) | KMART'S OPPOSITION TO |
| | ) | AWARDING OF ATTORNEY'S |
| KMART CORPORATION, KMART STORE 9424, | ) | FEES |
| Defendant. | ) | |
| | ) | |

## I.    KMART'S "OPPOSITION" IS PREMATURE, BECAUSE THE COURT HAS NOT YET DETERMINED THE AMOUNT OF ATTORNEY'S FEES TO BE AWARDED.

The Court made clear at the hearing on January 11, 2005 that "attorney's fees are going to be awarded for the improvident resort [to] the removal process [by Kmart]." (See Transcript of Hearing, January 11, 2005, attached hereto as Exhibit "A" and incorporated herein, at 11) ("Transcript"). However, a substantial part of Kmart's "Opposition" disputes the Court's decision to award attorney's fees. (See Opposition, pages 1 through 5). Yet there is no basis in either the removal statute or in the Local Rules for Kmart to ask the Court to reconsider its decision to award attorney's fees. As counsel for both parties have already filed the affidavits requested by the Court, the only matter pending before the Court is the amount and reasonableness of the attorney's fees. Since the Court has not yet decided this issue, Kmart's (unsolicited) "Opposition" is premature. See Rolf v. Access to Adventure, Inc., 54 Fed. Appx. 413, 2002 WL 31718341 (5th Cit. 2002) (order for merely an unquantified amount of costs and attorney's fees, is not a final, appealable order; granting motion to dismiss appeal; because order

1

granted only unquantified amount of costs). Therefore, Harvard respectfully suggests that as

Kmart's "Opposition" is premature, and appears moreover to be directed primarily at the Court's

decision to award attorney's fees, the Court should decide the issue of attorney's fees based upon

the affidavits submitted.

## II.    THE COURT SHOULD DISREGARD KMART'S ARGUMENTS WITH REGARD TO WHETHER IT PROPERLY REMOVED THE CASE, BECAUSE REMAND ORDERS ARE "NOT REVIEWABLE ON APPEAL OR OTHERWISE."

One-half of Kmart's "Opposition" takes issue with the Court's determination that Kmart

improperly removed the case from the state court, arguing that it had a "colorable basis" for

asserting federal jurisdiction (See pages 1 through 5 of Kmart's "Opposition"). However, the

Court clearly found otherwise, as indicated by a transcript of the hearing. (See Section III

below). To the extent Kmart is challenging the remand order itself, as it appears to be doing, this

Court need not consider these arguments. "An order remanding a case to the State court from

which it was removed is not reviewable on appeal *or otherwise* [excepting certain civil rights

cases]." Christopher v. Stanley-Bostitch, Inc., 240 F.3d 95, 99 (1st Cir. 2001); Ballard's Service

Center, Inc. v. Transue, 865 F.2d 447, 448 (1st Cir. 1989) (removal and characterizing state law

counterclaim as federal claim was sanctionable under Rule 11, even if attorney did not possess

objective bad faith) and Gonzalez-Garcia v. Williamson Dickie Manufacturing Co., 99 F.3d 490,

491 (1st Cir. 1996) (Section 1447(d) prohibits review of a remand order based upon lack of

subject matter jurisdiction, *even if the remand order is erroneous*), both citing Thermtron

Products, Inc. v. Hermansdorfer, 423 U.S. 336, 343, 96 S.Ct. 584, 589, 46 L.Ed.2d 542 (1976).

Since the Court has disposed of the jurisdictional issues by its Order for Remand, the

authorities cited by Kmart in pages 1 through 5 of its "Opposition" are clearly beside the point and the Court need not accept Kmart's invitation to consider these removal issues further.

## III.   CLEARLY, UNDER THE REMOVAL STATUTE, THE COURT MAY IN ITS DISCRETION AWARD ATTORNEY'S FEES, EVEN IF THE DEFENDANT'S IMPROPER REMOVAL WAS NOT IN BAD FAITH.

28 U.S.C. §1447(c) provides, in pertinent part:

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.  An order remanding the case may require the payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal."

An award of attorney's fees under Section 1447(c) of the removal statute is within the Court's discretion and may be challenged only on the basis of an abuse of discretion.[1]  Ottenburg v. Vanguard Fiduciary Trust, 344 F.3d 42, 1998 WL 1247108 (1st Cir. 1998). *It was Kmart that attempted to transform what should be a relatively straightforward state law eviction case into a federal removal case raising bankruptcy and jurisdictional issues.*  Kmart's alleged "good faith that this court had both diversity and federal question jurisdiction over this matter" (see Kmart's "Opposition" at 4) is *not* a basis for challenging the Court's decision to award attorney's fees. As the Court pointed out to Kmart's counsel at the hearing, the removal statute does not require the removing party's bad faith for the Court to award attorney's fees:

"Good faith is not a requirement for attorney's fees in the context of improvident removal, although it may favor this.  But I'll be as clear as I can be.  There was not a colorable claim here, your assertions to the contrary notwithstanding."

(Transcript at 14).

---

[1]    *See* "Removal, Remand and Reimbursement Under 28 U.S.C. § 1447(c)", 87 Marq. L. Rev. 123 (2003), discussing abuse of the Federal Court system by improper removal and arguing for imposition of attorney's fees on that basis to discourage litigants from such improper removal which raises the costs of litigations and wastes resources of the parties and the courts.

3

Moreover, throughout the hearing the Court rejected the arguments of Kmart's counsel that the U.S. District Court had diversity and federal question jurisdiction. It was evident that the Court had read the parties' briefs regarding all of the jurisdictional issues, and moreover had read the transcript of the hearing in which the Bankruptcy Court refused to enjoin Harvard from bringing a state court eviction against Kmart, and informed Kmart that it should raise any federal bankruptcy defenses to eviction in the state court. (Exhibit 6 to Memorandum in Support of Harvard's Motion to Remand).

The Court clearly disagreed with Kmart's incredible assertion that: "It's absolutely uncontroverted that the amount in controversy is met. There's no dispute that diversity is met."[2] To this the Court responded: "No. There is a dispute. And it's one that I'll address directly by telling you that there isn't. *This is a case about occupancy, plain and simple, not dollars, occupancy*." (Transcript at 12; see also p. 5) (Emphasis supplied). Since the summary process case was brought solely to obtain possession of the commercial premises, diversity jurisdiction was lacking, "[e]lse, every summary process involved with a commercial lease in Massachusetts and diverse party would come into Federal Court." (Transcript at 7). The Court then asked: "Is there any summary process case that has been permitted to go on this basis [diversity jurisdiction based upon a "below-market" lease?" Kmart's counsel replied: "Not that I'm aware of." In fact, as the Court pointed out, other federal courts had clearly not allowed removal to the federal courts of summary process-type cases. (Transcript at 8).

---

[2]    The assertion is rather stunning because Harvard in fact devoted substantial portions of its Motion to Remand and its Reply Brief refuting Kmart's assertions of diversity jurisdiction based amount alleged amount in controversy.

Similarly, the Court rejected Kmart's continued assertions that federal question jurisdiction was present because "there are serious bankruptcy law issues." As the Court emphasized: "The reference to bankruptcy [issues as a basis for federal question jurisdiction] is just a red herring." (Transcript at 13).   Throughout the hearing, the Court had to remind Kmart's counsel that the Bankruptcy Court (Judge Sonderby) had clearly stated in her order denying Kmart an injunction to stop Harvard from bringing the summary process action, that any bankruptcy defenses of Kmart could be brought in the Massachusetts state court: "She anticipated that this would be interpreted in a Massachusetts State Court proceeding.  Now, the fact that it was removed doesn't bootstrap that into some determination that Federal Court has to decide it."  (Transcript at 7).

Furthermore, the Court rejected Kmart's assertions that its counterclaims or purported counterclaims to the summary process action, purportedly based upon federal law, "get transformed so that the Federal Court broadens the jurisdiction."  (Transcript at 9).  In rejecting federal jurisdiction based upon Kmart's counterclaims the Court concluded:

> "The short of it is we have a Massachusetts [summary process] procedure, very narrowly defined, that's meant to provide a prompt resolution of the question of occupancy.  And what's happened here is that it's been frustrated by a process of tugging it into another court under circumstances that, frankly, I view as not even colorable."

(Transcript at 10).

For these reasons, the Court properly exercised its discretion, as permitted by the removal statute, because Kmart failed to establish even a colorable claim for federal court jurisdiction.

**IV.    ATTORNEY'S FEES ARE APPROPRIATE AND JUSTIFIED BECAUSE THE COURT CLEARLY FOUND THAT KMART LACKED ANY COLORABLE CLAIM TO SUBJECT MATTER JURISDICTION; MOREOVER, THE COURT DID NOT IN ANY WAY SUGGEST THAT IT WAS MERELY ABSTAINING FROM EXERCISING JURISDICTION.**

As shown by the foregoing excerpts from the transcript, throughout the hearing the Court made it very clear that it did not accept Kmart's arguments for either diversity or federal question jurisdiction. Clearly, the Court remanded the case because Kmart failed to establish any colorable claim for removal jurisdiction, either based upon diversity jurisdiction or upon federal question jurisdiction. Despite the record to the contrary, Kmart makes the following unsupported assertions on page 4 of its "Opposition":

> " . . . [I]t appears that the Court's articulated rationale for remanding the case most strongly supports a conclusion that the Court should abstain from hearing the case rather than there was a procedural defect in removal of the case or that the Court lacks subject matter jurisdiction over it."

(Opposition at 4). Nowhere in the record is there any indication that the Court thought that it had subject matter jurisdiction over the removed action but that it merely declined to exercise that jurisdiction. In fact, nowhere does the Court use the term "abstain" or "abstention" nor indicate in any way that it was merely abstaining from the exercise of jurisdiction. On the contrary, the Court determined on multiple bases that it did not have subject matter jurisdiction over this improperly removed summary process case. The Court explicitly rejected Kmart's all of Kmart's arguments that it had satisfied the requisite amount in controversy for diversity jurisdiction, as encapsulated by the following:

> THE COURT " . . . [T]his has no place whatsoever in the Federal Court . . . This is about summary process. It's not about dollars . . . It's clear that they have not asked for money." (Transcript at 4-5). "This is a case about occupancy, plain and simple, not dollars, occupancy." (Transcript at 12).

Moreover, the Court explicitly rejected all of Kmart's arguments that federal bankruptcy issues

from a collateral bankruptcy proceeding provided federal question removal jurisdiction, as

exemplified by the following:

> THE COURT:  ". . . [S]ummary process cannot . . . be moved to this Court.  And
> that is plain and simple.  The reference to bankruptcy is just a red herring."
> (Transcript at 13).

In light of these excerpts and the colloquy throughout the transcript, it is clear that Kmart's

suggestion that the Court had merely "abstain[ed] from hearing the case" is a complete

fabrication.

As the Court clearly remanded the case based upon Kmart's improper removal of the case

and its failure to establish any colorable basis for subject matter jurisdiction, accordingly, a

discretionary award of attorney's fees was entirely proper and justified under 28 U.S.C. §

1447(c).

## V.    HARVARD'S FEES WERE REASONABLE AND NOT EXCESSIVE, CONSIDERING THE RANGE OF JURISDICTIONAL ISSUES ASSERTED BY KMART, KMART'S VOLUMINOUS FILINGS, THE STAKES INVOLVED IN THE CASE, AND OTHER FACTORS.

By its improper removal of this summary process case, Kmart "has made its bed and now

will have to lie in it."  *See* <u>Standard Accident Ins. Co. v.  Doiron</u>, 170 F.2d 206, 210 (1st Cir.

1948) (defendant must accept the consequences of its decision to remove the case).  Kmart has

no grounds to complain of Harvard's attorney's fees. *It was Kmart that attempted to transform*

*what should be a relatively straightforward state law eviction case into a federal  case by*

*raising numerous spurious bankruptcy and jurisdictional issues.*  Harvard had to thoroughly

respond to all of Kmart's filings beginning with the Notice of Removal.  Moreover, the Affidavit

7

of Kmart's counsel show that Kmart itself is being billed almost $25,000.00, after excluding

numerous items.[3]  The fact that Kmart even now continues to try to litigate the jurisdictional

issues, post-remand order and despite the Court's clear rejection of its arguments, is a good

indication of the need for Harvard's counsel to expend considerable time and energy refuting

Kmart's multiple, misguided arguments in the first place.  The fact that the Court found that

Kmart's jurisdictional claims lacked even a colorable basis does not mean that Harvard was not

required to expend considerable time and effort to thoroughly respond to the issues raised by the

Kmart's "improvident resort [to] the removal process".[4]   (Transcript at 11).

The "lodestar" cases and the factors set forth on pages 5-6 of Kmart's "Opposition" are

not necessarily the only cases and factors to be considered under circumstances of the present

case; however, they provide a reasonable set of general factors.[5]  Thus, the Plaintiff will apply

those factors to the present remanded summary process case.

### The customary fee

"Although it is not dispositive, the attorney's actual billing rate is the starting point . . . "

In Re 1095 Commonwealth Avenue Corp., 204 B.R. 284, 290 (Bankr. D. Mass. 1997); Ackerley

Communications of Massachusetts, Inc. City of Somerville, 901 F.2d 170, 171 n.4 (1990).  The

---

[3]    The fact the Defendant's Attorney's Fees Affidavit states that it excluded numerous
items from its billing suggests that the amounts actually expended by Kmart's as a result of its
removal of the case were much higher than $25,000.00.

[4]    " . . . [T]his Court appeared to hold the view that the jurisdictional questions
presented by Kmart's notice of removal were simple." (Opposition at 6).

[5]    In re 1095 Commonwealth Avenue Corp., 204 B.R. 284, 290 (Bankr. D. Mass. 1997),
citing Hensley v. Eckerhart, 461 424, 433-434 (1983) and Johnson v. Georgia Express, Inc., 488
F.2d 714, 717-719 (5th Cir. 1974).

hourly billing rate of Plaintiff's counsel of $195.00 per hour in this case is quite modest and reasonable.

### The time and labor required

In response to Kmart's Notice of Removal, Counterclaims, and other documents seeking to justify its removal of the case, Harvard's counsel had to expend extensive time and labor in briefing the jurisdictional issues raised by Kmart with regard to diversity jurisdiction, federal question jurisdiction, and the ability to bring counterclaims in a removed summary process case. Extensive research and briefing of the issues were necessary particularly due to Kmart's voluminous filings and its misleading statement of facts and the case law. This included the facts and case law set forth by Kmart in its Notice of Removal; Answer and Counterclaims; Opposition to Harvard's Motion to Remand; and Opposition to Harvard's Motion to Dismiss Counterclaims. To clarify and thoroughly discuss the issues raised by Kmart, Harvard had to address all of the following:

- Kmart's misleading Notice of Removal, in which though it asserted federal diversity and federal question jurisdiction, Kmart cited no legal authority whatever to justify removal, even though it was Kmart's burden to establish the basis for removal jurisdiction. Therefore, Harvard researched and set forth the case law regarding burden of proof and issues with regard to federal-state comity to show why Kmart could not establish subject matter jurisdiction;

- While Kmart purported to premise federal question jurisdiction on prior orders of the Bankruptcy Court, it failed to disclose to the Court that it had raised substantially identical claims in the pending Adversary Proceeding; moreover, it failed to inform the Court that the Bankruptcy Court had directed Kmart to raise any bankruptcy defenses in the state court. Therefore, Harvard had to apprise the Court of this factual information and the law allowing state courts to decide the res judicata effects of prior federal court orders. during the hearing on remand. During the remand hearing, the Court accepted Harvard's reasoning, alluding several times to Judge Sonderby's Bankruptcy Court order and the ability of the state court to decide these legal issues.

9

- In response to Kmart's filings, Harvard in both its Motion to Remand and its Reply Brief had to discuss the unique statutory scheme for summary process actions and why such actions are not appropriately in federal court. The transcript of the hearing indicates that the Court adopted the reasoning of this discussion, including that of other federal courts.

- Developing the facts in its Memoranda in Support of its Motion to Remand and Motion to Dismiss Counterclaims, Harvard had to explain the nature of its claim for possession and the pertinent lease sections involved. Due to Kmart's misleading statements, Harvard had to emphasize the significance of the fact that only the issue of occupancy and not rent or other damages was at issue in this case. An understanding of this issue was obviously central to the Court's finding the alleged amount in controversy was not relevant to Harvard's claims.

- Harvard in both its Motion to Remand and its Reply Brief thoroughly discussed Kmart's burden of proof with regard to diversity jurisdiction in removal actions, as well as why federal courts have remanded cases alleging collateral and/or speculative damages where possession is at issue.

- In response to Kmart's filings, Harvard had to explain the case law that Kmart could not premise federal question jurisdiction on prior orders of the Bankruptcy Court; even after Harvard did so, Kmart continued to insist in its Oppositions that the prior orders of the Bankruptcy Court provided federal question jurisdiction. The Court, accepting the case law developed in Harvard's briefs, pronounced this misguided emphasis by Kmart a "red herring".

- In response to Kmart's filings, Harvard had to review and reply to Kmart's Opposition in which it attached the lengthy Rahbany Affidavit by Kmart's attorney accompanied by voluminous filings from the Bankruptcy Court Adversary Proceeding, requiring Harvard to expend considerable time and energy to review these filings and to further review the case law. These filings consumed over two hundred pages.

- In response to Kmart's filings, Harvard had to address Kmart's irrelevant claim and the documents attached to the Rahbany Affidavit pertaining to common area maintenance charges, which have nothing whatever to do with the summary process case. The Court at the remand hearing made clear that such charges could be addressed in some other forum, but not in this summary process case for possession only;

- Kmart's numerous misleading citations to the law in its attempt to secure jurisdiction in this Court required Harvard to extensively research and refute its claims for federal question jurisdiction, even though the absence of federal jurisdiction should have been apparent to Kmart. For instance, Kmart in its Opposition cited misleading case law from the inapplicable areas of federal preemption and "federal ingredient" jurisdiction.

- In response to Kmart's filings, Harvard had to refute Kmart's use of counterclaims to try to secure federal jurisdiction by discussing the cases law illuminating the differences between substantive and procedural law under the federal "Erie doctrine";

- In response to Kmart's filings, Harvard had to review and research the case law contained in Kmart's "Surreply" Brief, a brief which the Court indicated was completely unnecessary ("Surreply? Please ....": Transcript at 11).

**In response to Kmart's filings, Harvard reasonably incurred substantial attorney's fees to refute Kmart's attempt to secure remand jurisdiction on the basis of its counterclaims.**

Although Kmart continues to insist that it "was compelled to assert certain counterclaims, or to forfeit them, upon removal to this Court", the Court at the hearing clearly rejected this alleged basis for remand because the applicable state statute clearly prohibits them. Once asserted by Kmart, however wrongly, the issue was joined and Harvard had to expend considerable time and effort to refute Kmart's claimed jurisdictional basis for removal. Once Kmart asserted its counterclaims in the removed case, Harvard was forced to respond to the counterclaims, since (1) state law clearly does not permit counterclaims in a commercial eviction case; (2) such counterclaims do not transform the federal court's jurisdiction to entertain them (as the Court emphasized); and (3) Harvard could not risk possible waiver of this important issue if it did not respond at the outset.

Kmart argues that Harvard could have avoided incurring attorney's fees if it had deferred filing its Motion to Dismiss Counterclaims by stipulating with Kmart that the Court first consider the Motion to Remand. ("Opposition" at 7). But Kmart never offered to extend time for Harvard to respond to its counterclaims; instead, Kmart proceeded to actively litigate this issue. Harvard could not fail to respond to active counterclaims filed by Kmart after its removal of the

11

case. Moreover, Kmart's argument ignores the fact that Kmart itself was attempting to secure removal jurisdiction on the basis of its purported counterclaims, which in turn raised the "red herring" (see Transcript at 13) of the bankruptcy litigation. The counterclaims were based entirely on the issues raised in the pending Bankruptcy litigation brought by Kmart. Yet it was Kmart which failed to inform the Court that it even had pending bankruptcy litigation raising substantially the same claims. The absence of jurisdiction over the counterclaims, the basis for Harvard's Motion to Dismiss, was inseparable from the absence of remand jurisdiction. Necessarily, Harvard was required to dispute that the counterclaims provided remand jurisdiction. Then, in its Opposition to Harvard's Motion to Dismiss, Kmart raised a host of new issues to try to justify jurisdiction under the Erie doctrine, which Harvard was forced to discuss in its Reply Brief. The Court clearly rejected these arguments by Kmart, and, in fact, the lack of federal jurisdiction based upon the counterclaims appears to be a key rationale for the Court's decision to remand. (See Transcript at 9-10).

### The novelty and difficulty of the questions involved

Another factor the Court can consider is the novelty and difficulty of the questions involved in the case. Kmart's filings required Harvard to respond to a substantial range of jurisdictional and other issues, including the following:

- diversity jurisdiction based upon alleged amount in controversy;

- federal question jurisdiction based upon federal bankruptcy issues and alleged res judicata issues;

- the defendant's burden of proof to justify removal;

- state summary process law and policy;

- federal-state comity issues;

- federal preemption cases, including the complete preemption doctrine;

- federal preemption cases, including the "federal ingredient" doctrine;

- federal abstention doctrine(s);

- the <u>Erie</u> doctrine governing federal procedure vs. substantive state law;

Certainly, Kmart's claim that a Federal Court has jurisdiction over a summary process eviction in which no rent or damages is claimed is a novel one, to say the least, where such cases appear to rarely, if ever, are removed to courts in the First Circuit. Yet, as this Court noted, the implications of following Kmart's logic would mean that "every summary process involved with a commercial lease in Massachusetts and diverse party would come into Federal Court." (Transcript at 7). Harvard necessarily had to refute Kmart's logic by researching the law and discussing the serious implications of Kmart's position for federal-state comity. Despite the fact that it was one of its central arguments, Kmart was forced to admit at the remand hearing that it was not aware of a single case that held that a summary process case could be removed to Federal Court on the basis of an alleged "below-market lease." Harvard, however, produced federal case law, referred to by the Court, clearly holding that summary process cases could <u>not</u> be removed to federal courts. The result in this case is, arguably, quite instructive to other litigants who improperly seek to remove state summary process cases to federal courts on such grounds.

In addition, the novelty of removing a summary process case to the federal court on the basis of pending bankruptcy litigation, where the Bankruptcy Court has expressly told Kmart to raise its defenses in state court, required considerable time and effort on the part of Harvard's

13

counsel. The Court also accepted Harvard's position that these bankruptcy issues had no place in federal court.

### Time limitations imposed by the client or the circumstances and nature and length of the professional relationship with the client.

Plaintiff's attorneys have had an ongoing, long-term professional relationship with Harvard in many matters over a period of approximately six (6) years. The result in this matter was very important to the client, and it was therefore important to the client that Plaintiff's counsel thoroughly research the law, carefully analyze Kmart's filings, and present the highest quality briefing to the Court. It was important to decisively refute Kmart's arguments, however misguided, in this action for possession of the commercial premises. Harvard should not be faulted for thoroughly responding to Kmart's frequently erroneous factual statements and misstatements of the law in its briefs. In fact, Harvard's task was more difficult and time consuming for that reason.

### The experience, reputation, and ability of the attorneys, and the skill requisite to perform the legal services properly.

Successfully obtaining remand of this case required an understanding and exposition of both state law summary process law and policy, and somewhat arcane and broad issues of federal jurisdiction raised by Kmart's attorneys. Harvard's counsel have experience, reputation and ability in the area of state law summary process and other areas of litigation. They also have experience, though to a lesser extent, in analyzing federal jurisdictional issues. The skill and ability of Harvard's attorneys led to the successful remand of the case, as indicated by the Court's references during the hearing to issues raised in Harvard's briefs.

14

**The impact upon other employment by the attorney due to acceptance of the case**

Finally, Harvard's counsel have given substantial priority to this case, spending considerable time refuting Kmart's voluminous filings and the broad range of issues raised by Kmart in its unsuccessful attempt to secure federal jurisdiction of this state summary process case. Some other matters that also would have generated income for Plaintiff's counsel necessarily have had to be deferred during this time.

In summary, to properly and thoroughly respond to the multi-faceted issues raised by Kmart, Harvard's counsel was required to brief the law in a wide range of areas, including: diversity jurisdiction based upon alleged amount in controversy; federal question jurisdiction based upon federal bankruptcy issues and alleged res judicata issues; the defendant's burden of proof to justify removal; state summary process law and policy; federal-state comity issues; federal preemption cases, including the complete preemption doctrine; federal preemption cases, including the "federal ingredient" doctrine; federal abstention doctrine(s); the Erie doctrine governing federal procedure vs. substantive state law.

## <u>CONCLUSION</u>

Kmart's "Opposition" is premature because the Court has not yet awarded any specific amount of attorney's fees. However, assuming that the Court considers the "Opposition" and this Reply in its award of attorney's fees, it should (1) disregard Kmart's complaints about the Court's remand order and the decision to award fees to Harvard because the Court determined the such an award was justified by Kmart's improper removal without any colorable basis for federal subject matter jurisdiction; (2) award Harvard the full amount of its attorney's fees

incurred by Kmart's improper removal, as detailed in the Affidavit of Frank A. Flynn, Esq. And

Randolph C. English, Esq., in the amount of $ 39,882.00.

> Respectfully submitted,
> Plaintiff,
> Harvard Real Estate Allston-Inc.
> By its attorneys,
>
> Frank A. Flynn, Esq. (BBO# 551668)
> Randolph C. English, Esq. (BBO# 628647)
> Downing & Flynn
> 85 Devonshire Street, Suite 1000
> Boston, MA 02109
> (617) 720-3535

January 25, 2005


## CERTIFICATE OF SERVICE

I, Frank A. Flynn, Esquire, Attorney for the Plaintiff, hereby certify that I have served the Defendant this date with a copy of this Harvard's Reply to Kmart's Opposition to Awarding of Attorney's Fees, by mailing a copy of same by first class mail to its counsel of record as follows:

> William R. Moorman, Esq.
> Kathleen A. Rahbany, Esq.
> Craig and  Macauley Professional Corporation
> Federal Reserve Plaza
> 600 Atlantic Avenue
> Boston, MA 02210

this 25th day of January, 2005.

> Frank A. Flynn, Esq.

# EXHIBIT A

## TRANSCRIPT OF HEARING
### BEFORE THE HONORABLE
### DOUGLAS P. WOODLOCK
### ON JANUARY 11, 2005

1                    UNITED STATES DISTRICT COURT

2                      DISTRICT OF MASSACHUSETTS

3        * * * * * * * * * * * * * * * *
                                        *
4     HARVARD REAL ESTATE-ALLSTON,      *
          INC.                          *
5                          Plaintiff    *
                                        *
6        VERSUS                         *    CA-04-12249-DPW
                                        *
7     K-MART CORPORATION                *
                           Defendant    *
8                                       *
         * * * * * * * * * * * * * * * *
9
                 BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
10
                 UNITED STATES DISTRICT COURT JUDGE
11
                              HEARING
12
                         JANUARY 11, 2005
13
      APPEARANCES:
14
            FRANK A. FLYNN, ESQ. AND RANDOLPH C. ENGLISH,
15          ESQ., Downing & Flynn, 85 Devonshire Street,
            Suite 1000, Boston, Massachusetts  02109, on
16          behalf of the Plaintiff

17          WILLIAM R. MOORMAN, ESQ., Craig & Macauley, P.C.,
            Federal Reserve Plaza, 600 Atlantic Avenue,
18          Boston, Massachusetts  02210, on behalf of the
            Defendant

19

20                                Courtroom No. 1 - 3rd Floor
                                  1 Courthouse Way
21                                Boston, Massachusetts 02210
                                  2:30 P.M. - 2:45 P.M.
22
                  Pamela R. Owens - Official Court Reporter
23             John Joseph Moakley District Courthouse
                    1 Courthouse Way - Suite 3200
24                     Boston, Massachusetts  02210

25          Method of Reporting:  Computer-Aided Transcription

1                    CA-04-12249-DPW

2                    JANUARY 11, 2005

3          THE CLERK:  Could counsel please identify

4     themselves?

5          MR. FLYNN:  Attorney Frank Flynn for the

6     plaintiff, Your Honor.

7          MR. ENGLISH:  Randolph English also

8     representing the plaintiff.

9          MR. MOORMAN:  Good afternoon, William Moorman

10    from Craig & Macauley on behalf of K-Mart Corporation.

11         THE COURT:  Okay.  Well, let me just take up a

12    housekeeping question first, I guess, for Harvard.

13         We have an obligation to -- or you have an

14    obligation to file a corporate disclosure statement.

15         MR. FLYNN:  Yes, Your Honor, we will file

16    that.  I think we've filed all of our other

17    certifications.

18         THE COURT:  You haven't filed it yet?

19         MR. FLYNN:  Not yet.

20         THE COURT:  Why?

21         MR. FLYNN:  Just, I think, an oversight, Your

22    Honor.

23         THE COURT:  Who are the affiliations?

24         MR. FLYNN:  Pardon me?

25         THE COURT:  What are the affiliations?

3

1          MR. FLYNN:  I would have to inquire with my

2     client, but we can file that this afternoon, Your Honor.

3          THE COURT:  All right.  Now, turning to the

4     question of what you're doing with this summary process --

5          MR. FLYNN:  Yes, Your Honor.

6          THE COURT:  -- as I understand it, you're not

7     seeking any rent.  What's happening in the background?

8     I mean, they are tenants at sufferance, but presumably

9     they're accruing some sort of rental obligation.

10          MR. FLYNN:  Your Honor, the obligation that a

11     tenant has after becoming a tenant at sufferance due

12     to the expiration of a lease is (1) to pay use and

13     occupancy for the premises.  It's no longer one of rent.

14     It's no longer --

15          THE COURT:  All right.  Well, whatever it's

16     called, what's happening to it?

17          MR. FLYNN:  The defendant is paying it.

18          THE COURT:  So they're current as far as

19     you're concerned?

20          MR. FLYNN:  I believe so.  There are some

21     monies in the bankruptcy case that are subject to a cure

22     claim and those are common area maintenance fees from

23     2000, 2001.  That's in the Bankruptcy Court as a cure

24     claim.

25          THE COURT:  Do you have any present intention

1    to bring an action to recover any of the outstanding

2    payments?

3              MR. FLYNN:  No, Your Honor.  This case is

4    simply about paragraph 2(b) of the commercial lease, the

5    right of the commercial landlord to declare the

6    extension null and void because of the impermissible

7    sale of groceries, the continued sale of groceries by

8    K-Mart.

9              THE COURT:  I understand that part.

10             One other thing:  What are your attorney's

11   fees in this?

12             MR. FLYNN:  What are the attorney's fees

13   total?

14             THE COURT:  Yes.  You've asked for attorney's

15   fees.  What are they?  How much?

16             MR. FLYNN:  We would have to total them up.

17   I think they've been quite substantial to this point.

18             THE COURT:  They have.  I mean, it's been

19   overbriefed by both parties, so I suspect they're

20   substantial.  But what's the ball park?

21             MR. FLYNN:  I'd have to consult in my office

22   to get the total, but I know it's probably tens of

23   thousands, Your Honor.

24             THE COURT:  Okay.  So, what do you have to

25   say?  I mean, this has no place whatsoever in the

5

1    Federal Court.  It's a summary process.

2              MR. MOORMAN:  Well, Your Honor, there are

3    several reasons it belongs in this Court.  I can focus

4    on what I think is the most significant reason is this

5    Court has diversity jurisdiction.  There no dispute

6    whatsoever that --

7              THE COURT:  This is about summary process.

8    It's not about dollars.  It's about summary process.

9    It's clear that they have not asked for money.  It has

10   nothing to do with dollars unless everything in the

11   world has something to do with dollars.

12             MR. MOORMAN:  I think that the cases are

13   rather clear, Your Honor, that --

14             THE COURT:  No, they are not.

15             MR. MOORMAN:  -- when you're dealing with a --

16             THE COURT:  They're not.  Let me tell you

17   they're not clear.

18             MR. MOORMAN:  Okay.  Well, I would argue

19   that --

20             THE COURT:  And I simply don't understand what

21   this case is doing here except as a way of foreclosing

22   timely summary process in the state court.

23             MR. MOORMAN:  I'll tell you why.  It is much

24   more than that.  There are very significant bankruptcy

25   code issues here.

1          THE COURT:  And Judge Sonderby in the Northern

2     District of Illinois anticipated that they would be

3     resolved in state court proceedings.  That's what she

4     said, state court proceedings.

5          MR. MOORMAN:  I don't think at that point in

6     time she has spoke whether it would be state or federal.

7          THE COURT:  You mean Judge Sonderby was just

8     kind of whistling in the dark?

9          MR. MOORMAN:  No.  I think what she was

10    thinking about was that it would be resolved in a

11    Massachusetts proceeding.  She was not --

12         THE COURT:  She said state court proceedings.

13    That's her language.

14         MR. MOORMAN:  No, I understand that.  But I

15    don't think she was thinking ahead as to how --

16         THE COURT:  Is your client in the Northern

17    District of Illinois telling her that she doesn't quite

18    understand what it is that she says in open court?

19         MR. MOORMAN:  I don't think that's the issue.

20    I think that her intention was that this be litigated in

21    Massachusetts.  She was not thinking ahead.

22         THE COURT:  Where would I get that out of

23    reading what she had to say?

24         MR. MOORMAN:  I don't think she was thinking

25    ahead of the possibility that this case would be removed

1    to Federal Court.  And I think when you have a case like

2    this where you have a lease --

3         THE COURT:  She anticipated that this would be

4    interpreted in a Massachusetts State Court proceeding.

5    Now, the fact that it was removed doesn't bootstrap that

6    into some determination that Federal Court has to

7    decide it.  She anticipated that her rulings,

8    provisionally and otherwise, are going to be dealt with

9    as they ordinarily would in whatever court has competent

10   jurisdiction over it.

11        MR. MOORMAN:  Correct, and I believe this

12   Court does when you look at this lease.  And to get to

13   what this case is really about, Your Honor, we have an

14   incredibly below-market lease.

15        THE COURT:  I understand all of that, but that

16   doesn't give you summary process jurisdiction in the

17   Federal Court.  Else, every summary process involved

18   with a commercial lease in Massachusetts and diverse

19   party would come into Federal Court.

20        MR. MOORMAN:  Only if you have a lease that is

21   sufficiently below market that the amount in controversy

22   is --

23        THE COURT:  And where would I find in the case

24   law the below-lease rent exception to federal diversity

25   jurisdiction?  Is there one case that says that?

1          MR. MOORMAN:  No, I don't think it's an

2     exception.  I think if you look at the case law, the

3     case law makes it clear that where the plaintiff is

4     seeking some type of injunctive or declaratory relief,

5     something --

6          THE COURT:  Is there any summary judgment

7     process case that has been permitted to go forward on

8     this basis?

9          MR. MOORMAN:  What they are seeking is --

10          THE COURT:  Is there any summary process case

11     that's been permitted to go forward on this basis?

12          MR. MOORMAN:  Is there one that has been

13     permitted to go forward?  Not that I'm aware of.

14          THE COURT:  But there are ones that have not,

15     both by Judge Lavian in this district and by at least

16     two judges in the Southern District in reported

17     decisions and numerous unreported decisions.

18          MR. MOORMAN:  I think if you look at the cases

19     that were cited by both parties --

20          THE COURT:  I have.  With all respect, I have.

21          MR. MOORMAN:  I didn't mean it that way.  But

22     in reviewing the cases that were cited by both parties,

23     it is clear that the case analyzes whether or not the

24     lease was below market and came to the conclusion that

25     there was no evidence the lease was below market.

9

1    There's a clear implication that if there was a

2    determination the lease was below market and that

3    amounts --

4                THE COURT:  So what the Federal Court is

5    supposed to do is not only deal with summary process, a

6    very narrowly defined procedure in Massachusetts, which

7    the case of commercial leases doesn't even permit

8    counterclaims -- you'll agree with me there, won't you?

9                MR. MOORMAN:  Yes, I will.

10               THE COURT:  I mean, that your counterclaims or

11   purported counterclaims simply don't belong here.

12               MR. MOORMAN:  Once you're in Federal Court, I

13   think they do.

14               THE COURT:  Oh, they get transformed so that

15   the Federal Court broadens the jurisdiction; is that it?

16               MR. MOORMAN::  There's a procedural rule,

17   which is what it is in summary process.  You can't bring

18   a counterclaim.  It's clear you can bring a separate

19   action in the state court asserting the claims.  You

20   wouldn't be asserting counterclaims.  Once you get

21   into Federal Court, those counterclaims are perhaps

22   mandatory.

23               THE COURT:  You could not assert those

24   counterclaims if this were in the state court, could

25   you?

1          MR. MOORMAN:  Correct.  That's correct.

2          THE COURT:  So, the short of it is that if you

3     want to bring such an action, you bring a separate

4     action.

5          MR. MOORMAN::  You could do that in state

6     court.  That is correct.

7          THE COURT:  All right.

8          MR. MOORMAN::  Since we were in this Court, we

9     felt it was mandatory that we bring them.

10          THE COURT:  The short of it is we have a

11    Massachusetts procedure, very narrowly defined, that's

12    meant to provide a prompt resolution of the question of

13    occupancy.  And what's happened here is it's been

14    frustrated by a process of tugging it into another court

15    under circumstances that, frankly, I view as not even

16    colorable.

17          MR. MOORMAN:  That's certainly not our goal,

18    Your Honor.  Our goal is that we  --

19          THE COURT:  That was your result.

20          MR. MOORMAN:  We believe there are significant

21    bankruptcy code issues here.

22          THE COURT:  There are always significant

23    issues of a variety of law that different courts get to

24    decide.  And here, it's going to be decided by the state

25    court to the degree that there is some significant

1      bankruptcy issue that's going to be decided there as

2      anticipated by Judge Sonderby, who I think knew what she

3      was talking about.

4              MR. MOORMAN:  Frankly, I don't think she

5      thought about the distinction between the state and

6      federal.  I think she was thinking Massachusetts.  But

7      our view was we had a significant --

8              THE COURT:  She just didn't know the

9      difference between federal and state court?

10             MR. MOORMAN:  No, she certainly did.  I just

11     don't think she was thinking ahead to that level of the

12     possibility of removal.

13             THE COURT:  Well, the short of it --

14             MR. MOORMAN:  But if you look at --

15             THE COURT:  I have looked at this.  And,

16     frankly, as I've indicated, I don't view this as even

17     colorable.  And this is a case in which attorney's fees

18     are going to be awarded for the improvident resort, the

19     removal process.  I want from you an affidavit

20     indicating the attorney's fees -- amount of attorney's

21     fees that you've charged your client in this case for

22     all of the motion practice that's gone on here.  As I

23     said, this is overbriefed by both parties.  Surreply?

24     Please --

25             MR. MOORMAN:  We did that because we had a

1      deadline and we thought that new issues were raised.

2              THE COURT:  Right.

3              MR. MOORMAN:  If I could just stress, Your

4      Honor, we reviewed the cases.  We would not have

5      removed this case if we didn't think it was appropriate.

6      And the cases clearly indicate that if you have a lease

7      at issue -- and these cases were summary proceeding

8      cases which had been removed where the court said if the

9      lease was a below-market lease and the evidence was

10     uncontroverted -- and here the evidence is absolutely

11     uncontroverted.  We're talking about a lease that has a

12     net value in excess of 400,000 a year.  It's absolutely

13     uncontroverted that the amount in controversy

14     requirement was met.  There's no dispute that diversity

15     is met.  And I assume --

16             THE COURT:  No.  There is a dispute.  And it's

17     one that I'll address directly by telling you that there

18     isn't.  This is a case about occupancy, plain and

19     simple, not dollars, occupancy.  And to the degree that

20     there is some dispute about the value of the lease or

21     whether or not you're paying in a timely fashion for

22     your occupancy, whether it's characterized as rental or

23     some sort of use and occupancy fee that you have to pay

24     or your counterclaims to the degree that they are

25     relevant, perhaps they can be brought in this court.

1    But summary process cannot.  It cannot be moved to this

2    Court.  And that is plain and simple.  The reference to

3    bankruptcy is just a red herring.  That a bankruptcy

4    judge's rulings are going to be reviewed in the state

5    court, as she said, seems to me to be -- you know,

6    that's what happens.  Different courts get to review

7    different things.  Bankruptcy courts don't get to say

8    "And I don't want any of my rulings reviewed in the

9    state court."  Of course she didn't say anything like

10   that.

11          So, by the end of business tomorrow, I want an

12   affidavit telling me how much money was spent in this

13   case by your client.

14          MR. MOORMAN:  Okay.  Your Honor, I have not

15   billed him yet, so --

16          THE COURT:  How much the running fees are in

17   this case for your client because your client is going

18   to get to pay your fee and also going to get to pay the

19   fee for Harvard.

20          MR. MOORMAN:  Your Honor, I guess I just don't

21   understand when there was -- this is not a delaying

22   tactic.  This is a belief that there are serious

23   bankruptcy law issues.  This is after reviewing the

24   cases which clearly indicate if there was a below

25   market lease and a summary proceeding, the amount in

1  controversy requirement would be met.  I think this is

2  certainly filed in good faith.

3       THE COURT:  Good faith is not a requirement

4  for attorney's fees in the context of improvident

5  removal, although it may favor this.  But I'll be as

6  clear as I can be.  There was not a colorable claim

7  here, your assertions to the contrary notwithstanding.

8       So, by the end of the day tomorrow, an

9  affidavit of what the billing would have been if it were

10 submitted to your client for this case.  You don't have

11 to provide any more detail than that, simply an --

12      MR. MOORMAN:  An amount.

13      THE COURT:  -- amount.  And from you, you have

14 to give me whatever it is that you think is going to

15 justify reasonable attorney's fees here.  I'm not going

16 to wait to remand this case.  It's going to be remanded.

17 But if there is a dispute about the attorney's fees

18 here, then I'll resolve the question of reasonableness

19 of attorney's fees.  But I'm going to award attorney's

20 fees.

21      MR. FLYNN:  Thank you, Your Honor.

22      MR. MOORMAN:  Do you want information that

23 relates to the removal?  I assume you don't want me

24 getting my retention in the case?

25      THE COURT:  Whatever was necessary for the

1    prosecution of this case, whatever you will bill the

2    client for the prosecution of this case.

3              MR. MOORMAN:   I don't mean to get too

4    detail-oriented, but there was much analysis that went

5    on before removal of the case.

6              THE COURT:   The prosecution of this case from

7    the time period that you filed this lawsuit.

8              MR. MOORMAN:   From the removal you mean?

9              THE COURT:   Yes, brought this lawsuit to this

10   Court.  All right.  Okay.  Anything else?

11             MR. FLYNN:   Thank you, Your Honor.

12             THE COURT:   So this case is remanded to the

13   Brighton District Court.

14             MR. FLYNN:   Thank you.

15                  RECESSED AT 2:45 P.M.

16

17                  C E R T I F I C A T E

18             I, PAMELA R. OWENS, Official Court Reporter,

19   U. S. District Court, do hereby certify that the

20   foregoing is a true and correct transcription of the

21   proceedings taken down by me in machine shorthand and

22   transcribed by same.

23

24              _Pamela R. Owens  1/18/05_

25